1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               WESTERN DIVISION

4   THE HONORABLE CONSUELO B. MARSHALL, SENIOR JUDGE PRESIDING

5

6   GLOBEFILL INCORPORATED,        )
                                   )
7                   PLAINTIFF,     )
            VS.                    )    NO. CV 10-2034-CBM
8                                  )
    ELEMENTS SPIRITS, INC., ET AL., )
9                                  )
                    DEFENDANTS.    )
10  _____)

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14       MOTIONS HEARING AND SCHEDULING CONFERENCE

15               LOS ANGELES, CALIFORNIA

16       WEDNESDAY, OCTOBER 31, 2012; A.M. SESSION

17            PAGES 1 THROUGH 47, INCLUSIVE

18

19

20

21

22

23                              MARY RIORDAN RICKEY
                                OFFICIAL COURT REPORTER
24                              255 EAST TEMPLE STREET
                                ROOM 181-G
25                              LOS ANGELES, CA  90012
                                MARY.USDC@YAHOO.COM

```
 1    APPEARANCES OF COUNSEL:

 2    FOR PLAINTIFF:

 3        BAKER AND HOSTETLER, LLP
          BY:  C. DENNIS LOOMIS
 4        12100 WILSHIRE BOULEVARD, 15TH FLOOR
          LOS ANGELES, CA  90025-7120
 5        310-820-8865

 6        BAKER AND HOSTETLER, LLP
          BY:  KELU L. SULLIVAN
 7        1050 CONNECTICUT AVENUE, SUITE 1100
          WASHINGTON, DC  20036-5304
 8        202-861-1500

 9    FOR DEFENDANT ELEMENTS SPIRITS, INC.:

10        HOLMES WEINBERG, PC
          BY:  STEVEN MARC WEINBERG
11        30765 PACIFIC COAST HIGHWAY, SUITE 411
          MALIBU, CA  90265
12        310-457-6100

13        HOLMES WEINBERG, PC
          BY:  SHARONI FINKELSTEIN
14        30765 PACIFIC COAST HIGHWAY, SUITE 411
          MALIBU, CA  90265
15        310-457-6100

16    FOR DEFENDANT KIM BRANDI:

17        MILLER JOHNSON LAW OFFICES
          BY:  JON B. MILLER
18        427 C STREET, SUITE 410
          SAN DIEGO, CA  92101
19        619-232-0086

20

21

22

23

24

25
```

1

<u>I N D E X</u>

2

**PROCEEDINGS**                                          **PAGE**

3

**COURT DENIES PLAINTIFF'S REQUEST FOR**                    **5**
**PRELIMINARY INJUNCTION**

4

5

**MOTION FOR JUDGMENT ON PLEADINGS**                       **5**

6

**MATTER DEEMED SUBMITTED**                               **33**

7

**SCHEDULING CONFERENCE**                                 **34**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     **LOS ANGELES, CALIFORNIA; MONDAY, OCTOBER 31, 2012**

2                           **10:00 A.M.**

3                            --OOO--

4          **THE CLERK:**  PLEASE REMAIN SEATED AND COME TO

5     ORDER.  THIS DISTRICT COURT IS ONCE AGAIN IN SESSION.

6              CALLING CASE NUMBER CV 10-2034 CBM, GLOBEFILL,

7     INCORPORATED VERSUS ELEMENTS SPIRITS, INC., ET AL.

8              COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

9     RECORD.

10         **MS. SULLIVAN:**  YOUR HONOR, KELU SULLIVAN FOR

11    GLOBEFILL, INCORPORATED.  AND WITH ME AT COUNSEL TABLE IS

12    DENNIS LOOMIS, ALSO FOR GLOBEFILL, INCORPORATED.

13         **THE COURT:**  GOOD MORNING.

14         **MR. WEINBERG:**  GOOD MORNING, YOUR HONOR.

15    STEVEN WEINBERG FOR DEFENDANT ELEMENTS.  AND WITH ME IS

16    SHARONI FINKELSTEIN.

17         **THE COURT:**  GOOD MORNING.

18         **MR. MILLER:**  GOOD MORNING, YOUR HONOR.  DO I WALK

19    OVER THERE?

20         **THE COURT:**  I'LL ALLOW YOU TO STATE YOUR

21    APPEARANCE FROM THERE.

22         **MR. MILLER:**  JON MILLER APPEARING FOR DEFENDANT

23    KIM BRANDI.

24         **THE COURT:**  GOOD MORNING.

25              SO THE MATTER THAT'S ACTUALLY BEFORE THE COURT

1    TODAY, THE MOTION, IS PLAINTIFF'S MOTION FOR JUDGMENT ON THE

2    PLEADINGS.  BUT THE PARTIES HAVE BEEN WAITING FOR THE COURT

3    TO ISSUE ITS ORDER ON PLAINTIFF'S REQUEST FOR A PRELIMINARY

4    INJUNCTION.

5            I THINK IT'S ALMOST READY TO ISSUE.  I WOULD HOPE

6    THAT IT'S GOING TO ISSUE TODAY, BUT I CAN TELL YOU WHAT THE

7    COURT'S RULING IS.

8            SO THE COURT WILL BE DENYING PLAINTIFF'S REQUEST

9    FOR PRELIMINARY INJUNCTION, AND WHAT THE ORDER WILL

10   INDICATE, I DON'T THINK PLAINTIFF HAS MADE THE SHOWING OF A

11   IRREPARABLE HARM.  NOW, THAT COULD CHANGE AS THE CASE

12   PROCEEDS.  AND IF IT DOES, THEN, AS THE PLAINTIFF DEEMS

13   APPROPRIATE, IT COULD RAISE THIS ISSUE WITH THE COURT AGAIN.

14           BUT THAT IS THE COURT'S POSITION AT THIS POINT,

15   AND THE ORDER WOULD BE CONSISTENT WITH THAT.

16           SO LET'S GO NOW TO THE MOTION FOR JUDGMENT ON THE

17   PLEADINGS, AND I HAVE A COUPLE OF QUESTIONS OF BOTH SIDES.

18           SO THE FIRST QUESTION OF THE PLAINTIFF IS WOULD

19   THIS COURT'S ORDERS DISMISSING THE COMPLAINT HAVE BEEN

20   BUT-FOR MATERIAL TO THE TRADEMARK OFFICE'S ANALYSIS OR

21   OUTCOME IF THE NINTH CIRCUIT HAD AFFIRMED RATHER THAN

22   REVERSED?

23           SO THE REASON THAT THE COURT RAISES THIS IS -- IF

24   THE COURT UNDERSTANDS THE DEFENDANT'S FIRST COUNTERCLAIM

25   THAT'S THE SUBJECT OF THIS MOTION -- DEFENDANT SAYS THERE'S

1  FRAUD, THAT PLAINTIFF HAD A DUTY TO REPORT TO THE TRADEMARK

2  OFFICE THE RULING OF THIS COURT AND, I SUPPOSE, THE RULING

3  OF NINTH CIRCUIT AS WELL, AND PLAINTIFF FAILED TO DO THAT

4  AND THAT THAT WAS INTENTIONAL.  IT'S A CONCEALMENT.  IT

5  SUPPORTS FRAUD.

6          SO I'LL SAY TO THE PARTIES I THINK THAT THE

7  ALLEGATIONS ARE FINE.  SO I DON'T LOOK AT THIS AS THERE'S

8  SOMETHING DEFICIENT ABOUT THE WAY THAT THE CLAIM HAS BEEN

9  ALLEGED AS A COUNTERCLAIM AND, THEREFORE, THE COURT SHOULD

10 EITHER DISMISS OR ENTER JUDGMENT.

11         SO THE FOCUS HERE IS WAS THERE A DUTY OR DID THE

12 PLAINTIFF HAVE A RESPONSIBILITY TO DISCLOSE THE ORDERS THAT

13 HAVE BEEN ISSUED.

14         SO THE WAY I PHRASE THIS QUESTION IS:

15         IF THE CIRCUIT HAD AFFIRMED RATHER THAN REVERSED,

16 WOULD THIS COURT'S ORDER HAVE BEEN BUT-FOR MATERIAL TO THE

17 TRADEMARK OFFICE'S ANALYSIS?

18         **MS. SULLIVAN:**  YOUR HONOR, HAD THE NINTH CIRCUIT

19 AFFIRMED THIS COURT'S DECISION, UNDER THE TRADEMARK OFFICE'S

20 RULE, THAT MAY HAVE BEEN BUT-FOR MATERIAL.

21         HOWEVER, THE DEFENDANT HERE DID NOT ACTUALLY

22 PROVIDE ANY BASIS UPON WHICH GLOBEFILL HAD A DUTY TO

23 DISCLOSE AND TO AMEND THE DECLARATION.

24         THE PLEADING THE DEFENDANT ELEMENTS SPIRITS HAS

25 STATED HERE WAS THAT GLOBEFILL HAD A DUTY TO CORRECT ITS

```
1   DECLARATION, WHICH SAID THAT HE OR SHE BELIEVES THE
2   APPLICANT TO BE THE OWNER OF THE TRADEMARK OR SERVICE MARK
3   SOUGHT TO BE REGISTERED; TO THE BEST OF HIS OR HER KNOWLEDGE
4   AND BELIEF, NO OTHER PERSON, FIRM, OR CORPORATION OR
5   ASSOCIATION HAS THE RIGHT TO USE THE MARK IN COMMERCE.
6           HE DID NOT -- THAT IS WHAT HE IS SEEKING, THAT WE
7   DID NOT AMEND THAT DECLARATION.
8           FURTHERMORE, THE FEDERAL CIRCUIT, IN IN RE BOSE,
9   WHICH WAS A FRAUD CASE --
10          THE COURT:  AND I THINK YOUR POSITION IS YOU HAD
11  NO DUTY OR OBLIGATION TO AMEND THE DECLARATION.
12          MS. SULLIVAN:  CORRECT.  WE DON'T BELIEVE WE HAD
13  THAT AFFIRMATIVE DUTY TO MAKE THAT AMENDMENT TO THE
14  DECLARATION.  AND WE BASE THIS ON IN RE BOSE -- THE FEDERAL
15  CIRCUIT'S RULING IN RE BOSE, WHICH WAS A FRAUD CASE IN 2009
16  THAT EMPHASIZED THAT ANY DUTY OWED BY AN APPLICANT FOR
17  TRADEMARK REGISTRATION MUST ARISE OUT OF THE STATUTORY
18  REQUIREMENT OF THE LANHAM ACT.
19          AND THAT HAS NOT BEEN STATED BY ELEMENTS IN ITS
20  PLEADING OR IN ITS BRIEFS TO STATE THAT WE EVEN HAVE AN
21  AFFIRMATIVE DUTY.
22          BUT ON TOP OF THAT, THE NINTH CIRCUIT DID NOT
23  AFFIRM THIS COURT'S DECISION.  IT DID REVERSE THE DECISION.
24  SO THAT'S NOT UP FOR SPECULATION.  AND ONCE THAT DECISION
25  HAS BEEN REVERSED, IT IS NO LONGER MATERIAL TO WHETHER THE
```

```
 1   P.T.O. WOULD HAVE ISSUED GLOBEFILL'S REGISTRATION.

 2           IT, IN FACT, REVERSED.  AND ONCE THAT REVERSAL

 3   DECISION HAS COME OUT, GLOBEFILL'S REGISTRATION WOULD HAVE

 4   ISSUED WITHOUT ANY QUESTION.

 5           THE COURT:  AND SO IT'S CLEAR THAT THE CIRCUIT

 6   DIDN'T AFFIRM, BUT YET MY QUESTION IS WHAT YOUR POSITION

 7   WOULD BE HAD THE DECISION GONE THE OTHER WAY.

 8           MS. SULLIVAN:  HAD THE DECISION GONE THE OTHER

 9   WAY, IT IS ACTUALLY A LITTLE BIT UNCLEAR FROM THE TRADEMARK

10   OFFICE RULES BECAUSE THE WAY THE RULE IS WRITTEN IS THAT

11   UNDER T.M.E.P. 1202.03 --

12           I'M SORRY.

13           -- 716.02 IS THAT THE RESOLUTION OF THE COURT

14   ACTION -- YOU KNOW, THE EXAMINER HAS THE OPTION TO SUSPEND

15   THE PROCEEDING PENDING THE OUTCOME OF AN APPEAL.  HOWEVER,

16   TYPICALLY A MATTER IS NOT CONSIDERED TO BE RELEVANT TO THE

17   REGISTRABILITY OF THE TRADEMARK UNLESS IT WAS A DECISION

18   RELATING TO A CANCELLATION OR SOME SORT OF OPPOSITION IN

19   THAT CASE.  SO IT'S NOT BECAUSE THERE WAS NO ALLEGATION OR

20   COUNTERCLAIM AT THAT POINT IN TIME.

21           THIS COURT'S RULING, IF IT WERE AFFIRMED, IT'S

22   UNCLEAR WHETHER THAT WOULD ACTUALLY BE THEN TRANSLATED TO

23   THE P.T.O. IN TERMS OF DETERMINING WHETHER THAT IS A

24   BUT-FOR MATERIAL AMENDMENT THAT NEEDED TO BE MADE.

25           AND ON TOP OF THAT, FEDERAL CIRCUIT FOLLOWS A
```

1    DIFFERENT SET OF RULES WHEN IT COMES TO UTILITARIAN

2    FUNCTIONALITY.  SO IT --

3          **THE COURT:**  WELL, THAT WAS GOING TO BE MY NEXT

4    QUESTION ABOUT FUNCTIONALITY.  SO WHY DON'T I ASK THAT

5    QUESTION, AND THEN YOU CAN RESPOND.

6          SO YOUR POSITION IS, I BELIEVE, THAT FUNCTIONALITY

7    WAS NOT AN ISSUE BEFORE THE P.T.O.

8          **MS. SULLIVAN:**  CORRECT.

9          **THE COURT:**  AND SO MY QUESTION IS WHY WAS IT NOT

10   AN ISSUE DURING THE EXAMINATION OF THE TRADE DRESS

11   APPLICATION?

12         **MS. SULLIVAN:**  WHEN THE EXAMINING ATTORNEY

13   REVIEWED THE APPLICATION, THE EXAMINING ATTORNEY NEVER

14   RAISED UTILITARIAN FUNCTIONALITY AS AN ISSUE.

15         AND I BELIEVE THIS IS DUE TO TWO REASONS:

16         ONE, THIS COURT'S DECISION IN DISMISSING

17   GLOBEFILL'S COMPLAINT WAS ON THE BASIS OF THE RACHEL CASE,

18   WHICH IS NOT APPLICABLE IN THE FEDERAL CIRCUIT;

19         AND SECOND OF ALL, THE FEDERAL CIRCUIT VIEWS

20   FUNCTIONALITY -- THEY FOLLOW THE SUPREME COURT DECISIONS ON

21   FUNCTIONALITY AS WELL, AND THE EXAMINER DID NOT FEEL THAT A

22   SKULL-SHAPED BOTTLE FOR USE IN ASSOCIATION WITH VODKA SERVES

23   ANY UTILITARIAN FUNCTIONALITY.

24         AND AS A RESULT, THAT WAS NEVER A REJECTION RAISED

25   BY THE EXAMINING ATTORNEY.

```
 1          THE COURT:  ALL RIGHT.  ANYTHING ELSE THAT YOU

 2   WISH TO PLACE ON THE RECORD IN SUPPORT OF THE MOTION?

 3          MS. SULLIVAN:  WOULD YOU LIKE FOR US TO ADDRESS ON

 4   THE ISSUE OF SECONDARY MEANING?

 5          THE COURT:  NO, NOT AT THIS POINT.  I THINK IT'S

 6   BEEN ADDRESSED ADEQUATELY IN THE PAPERS.

 7          SO THESE WERE THE QUESTIONS THAT I FOCUSED ON, BUT

 8   I JUST WANTED TO BE CLEAR WHAT THE PARTIES' POSITIONS WERE.

 9          MS. SULLIVAN:  WE WOULD LIKE TO RESERVE TIME FOR

10   REBUTTAL, IF NECESSARY.  THANK YOU.

11          THE COURT:  SURE.

12          FOR THE DEFENDANTS -- AND CERTAINLY YOU MAY

13   RESPOND, IF YOU WISH, TO THE PLAINTIFF'S RESPONSE TO THE

14   COURT'S QUESTIONS, BUT I DO HAVE A COUPLE OF QUESTIONS FOR

15   THE DEFENDANT AS WELL.

16          SO THE FIRST ONE IS WHAT IS THE SPECIFIC

17   AUTHORITY -- OR WHAT SPECIFIC AUTHORITY HOLDS THAT PLAINTIFF

18   HAD A DUTY TO PROVIDE THIS COURT'S DISMISSAL ORDER TO THE

19   TRADEMARK OFFICE?

20          AND THE SECOND QUESTION IS IS IT YOUR CONTENTION

21   THAT THE NINTH CIRCUIT LEFT OPEN THE POSSIBILITY THAT THE

22   SKULL BOTTLES ARE PRODUCT DESIGN RATHER THAN TRADE DRESS

23   MATERIAL IN THE FORM OF PACKAGE DESIGN?

24          MR. WEINBERG:  THANK YOU, YOUR HONOR.

25          YES, WHY DON'T I ADDRESS THE TWO QUESTIONS THAT
```

```
 1    YOU JUST ASKED ME, AND THEN I CAN ADDRESS THE QUESTIONS THAT

 2    YOU ADDRESSED TO THE PLAINTIFF.

 3            ON THE QUESTION OF WHAT THE SPECIFIC AUTHORITY IS,

 4    WHEN THIS COURT HELD THAT THE TRADE DRESS IN ISSUE, THE SAME

 5    TRADE DRESS THAT WAS BEING CONSIDERED FOR REGISTRATION

 6    BEFORE THE TRADEMARK OFFICE, WAS FUNCTIONAL.  THAT MEANT

 7    THAT AN ARTICLE III COURT, A DISTRICT COURT, THIS COURT, HAD

 8    RULED THAT AS A MATTER OF LAW THE TRADE DRESS DESIGN WAS NOT

 9    PROTECTABLE.

10            AND THE AUTHORITY WE CITE IN OUR BRIEF IS THAT AN

11    ARTICLE III COURT'S DECISION IS ABSOLUTELY AND TOTALLY

12    BINDING ON THE TRADEMARK OFFICE.  IT SAYS SO IN THE

13    T.M.E.P., IT SAYS SO IN THE CASES.

14            AND SO JUST TO PUT THIS IN CONTEXT FOR YOUR HONOR,

15    THE FRAUD THAT'S ALLEGED HERE IS NOT SOME LOW-LEVEL FRAUD.

16    THIS IS A HUGE ISSUE OF FRAUD.  IT'S PROBABLY -- AND I'M NOT

17    EXAGGERATING.  THIS IS PROBABLY THE MOST SIGNIFICANT CASE OF

18    FRAUD THAT HAS BEEN BEFORE THE TRADEMARK OFFICE AND THE

19    COURTS RELATING TO TRADEMARKS IN QUITE SOME TIME.

20            AND BEFORE I SAY THAT, LET ME ALSO SAY ONE OTHER

21    THING.  OH, I'LL GET TO THAT.  I WAS GOING TO SAY THERE IS

22    NO BUT-FOR TEST IN TRADEMARK LAW, AND I'LL GET INTO THAT IN

23    A MOMENT.

24            WHAT HAPPENED HERE IS THAT THIS PLAINTIFF IN THIS

25    CASE WHERE IT WAS SEEKING PROTECTION OF ITS TRADE DRESS FROM
```

```
 1   THIS COURT AND TRYING TO ENFORCE IT AGAINST THIS DEFENDANT,

 2   WENT TO THE TRADEMARK OFFICE LOOKING TO GET REGISTRATION, A

 3   WEAPON, TO USE AGAINST THE DEFENDANTS IN THIS CASE.

 4          IT WAS TOLD BY THE TRADEMARK OFFICE THAT IT WOULD

 5   NOT REGISTER THAT TRADE DRESS BECAUSE IT WAS ORNAMENTAL AND

 6   REQUIRED SECONDARY MEANING.

 7          THEN THIS COURT RENDERED ITS DECISION, HOLDING

 8   THAT THE TRADE DRESS WAS FUNCTIONAL.  AS A MATTER OF LAW,

 9   THAT PUT AN ABSOLUTE BAN AND PROHIBITION ON THIS PLAINTIFF

10   FROM SEEKING FURTHER PROTECTION FROM THE TRADEMARK OFFICE OR

11   FROM THE TRADEMARK OFFICE IN GIVING IT PROTECTION.

12          THEN COUNSEL FOR THE PLAINTIFF HAD A SERIES OF

13   COMMUNICATIONS WITH THE TRADEMARK OFFICE, INCLUDING A PHONE

14   CALL.

15          AND WHAT HAPPENED THEN IS THE TRADEMARK OFFICE ON

16   THAT SAME DAY, FOR WHATEVER REASONS --

17          WE DON'T KNOW BECAUSE IT'S REMAINED A MYSTERY.

18   THAT'S ONE OF THE AREAS OF FACT THAT WE WANT TO SEEK THROUGH

19   DISCOVERY.

20          -- THE TRADEMARK OFFICE SUDDENLY DECIDED THAT IT

21   WAS REGISTRABLE.

22          NOW, WHAT THAT MEANS IS THAT A DISCLOSURE WAS NOT

23   MADE TO THE TRADEMARK OFFICE REGARDING THIS COURT'S BINDING

24   DECISION HOLDING THAT, AS A MATTER OF LAW, THE TRADE DRESS

25   WAS NOT PROTECTABLE.
```

```
1              AND THE JUSTIFICATION, THE ARGUMENT THAT GLOBEFILL

2     GIVES THAT IT HAD A GOOD FAITH BELIEF THAT ITS APPEAL MIGHT

3     WIN IS NOT A JUSTIFICATION AT ALL.  IT'S LIKE SAYING, "I CAN

4     VIOLATE A PRELIMINARY INJUNCTION ORDER THAT I'VE APPEALED

5     BECAUSE I THINK THAT I CAN WIN IT ON APPEAL."

6              WELL, THE FACT OF THE MATTER IS THAT'S NOT

7     JUSTIFICATION, THAT'S CONTEMPT.  AND IT'S NO DIFFERENT HERE.

8              WHATEVER MAY HAVE BEEN THE OUTCOME OF THE NINTH

9     CIRCUIT APPEAL, THE LAW OF THE CASE AS IT AFFECTED THIS

10    TRADE DRESS WAS YOUR DECISION HOLDING THE TRADE DRESS TO BE

11    FUNCTIONAL.

12             AND BECAUSE THAT WAS NOT DISCLOSED TO THE

13    TRADEMARK OFFICE, AS IT SHOULD HAVE BEEN, THE TRADEMARK

14    OFFICE ULTIMATELY ALLOWED THE REGISTRATION TO GO THROUGH;

15    AND THAT REGISTRATION, AS YOU HAVE NOW WITNESSED IN THIS

16    CASE, IS BEING USED JUST AS THAT WEAPON THAT THE PLAINTIFFS

17    WERE AFTER.

18             THEY USED IT ON A PRELIMINARY INJUNCTION HEARING

19    MOTION, AND NOW THEY'RE USING IT NOW SAYING THAT WE HAVE ALL

20    KINDS OF PRESUMPTIONS TO OVERCOME, WHICH IS A MATTER THAT I

21    DON'T HAVE TO ADDRESS BECAUSE IT REALLY AFFECTS THE SECOND

22    PART OF THE CLAIM.

23             SO GETTING RIGHT TO THE POINT AGAIN, THE AUTHORITY

24    IS, IN FACT, THAT THIS IS AN ARTICLE III COURT; IT'S BINDING

25    ON THE TRADEMARK OFFICE --
```

```
 1              THE COURT:  AND THE AUTHORITY, THEN, COMES FROM

 2   CASE LAW?

 3              MR. WEINBERG:  CASE LAW AND --

 4              THE COURT:  RULES AND REGULATIONS OF THE TRADEMARK

 5   OFFICE?

 6              MR. WEINBERG:  YES.

 7              THE COURT:  THAT'S WHAT I WAS LOOKING FOR.

 8              MR. WEINBERG:  YES.  IT'S A RULE AND REGULATION OF

 9   THE TRADEMARK OFFICE, WHICH WE HAVE REFERRED TO IN OUR

10   OPPOSITION BRIEF, AND IT IS ALSO THE LAW THAT -- AND

11   "MCCARTHY ON TRADEMARKS."  I MEAN, IT'S NOT EVEN A DISPUTED

12   LAW.  IT'S ABSOLUTELY THE LAW.

13              IN TERMS OF WHAT THE NINTH CIRCUIT LEFT OPEN OR

14   NOT, AGAIN, YOUR DECISION WAS THE LAW.

15              NOW, THE TRADEMARK OFFICE COULD HAVE DONE ANY

16   NUMBER OF THINGS ONCE IT WAS FACED WITH YOUR DECISION.

17              IT COULD HAVE SAID, "YES, WE FIND THAT IT'S

18   FUNCTIONAL, AND THEREFORE WE CANNOT REGISTER IT," OR IT

19   COULD HAVE SAID, AS COUNSEL JUST SAID, "WE CAN SUSPEND THE

20   CASE AND AWAIT THE DECISION OF THE NINTH CIRCUIT."

21              AND INTERESTINGLY ENOUGH, THE NINTH CIRCUIT

22   DECISION, WHILE IT REVERSED ON FUNCTIONALITY, DOES LEAVE

23   OPEN THE DOOR -- REFERRING NOW TO YOUR SECOND QUESTION --

24   THAT IN FACT WHAT THE TRADEMARK OFFICE DID WAS INCORRECT.

25              AND WHAT THE NINTH CIRCUIT -- THE NINTH CIRCUIT
```

```
 1   DID NOT SAY, YES, THEY'RE ENTITLED TO A REGISTRATION OR,

 2   YES, THEY'RE ENTITLED TO PROTECTION.

 3          ALL THE NINTH CIRCUIT SAID IS THIS IS

 4   FUNCTIONALITY.  YOU KNOW, FUNCTIONALITY IS NO LONGER THE

 5   ISSUE.

 6          THE COURT:  THAT YOU CAN'T DECIDE AS A MATTER OF

 7   LAW.

 8          MR. WEINBERG:  EXACTLY RIGHT.

 9          AND IT HAS TO GO -- AND YOU KNOW, HERE'S WHERE

10   THAT WHOLE WALMART CASE COMES IN BECAUSE THIS IS NOW REALLY

11   CRITICAL.  THE WALMART CASE WAS A SUPREME COURT DECISION

12   THAT ESTABLISHED THE MODERN LAW OF TRADE DRESS PROTECTION.

13          ESSENTIALLY, WHAT THE SUPREME COURT SAID IS -- AS

14   YOU KNOW, IS THAT THERE'S PRODUCT DESIGN WHICH CANNOT BE

15   INHERENTLY DISTINCTIVE, AND THERE IS A PACKAGING DESIGN,

16   WHICH MIGHT BE, BUT YOU HAVE TO PROVE SECONDARY MEANING.

17          IN THE WALMART CASE, WHAT THE COURT SAID IS THAT

18   IN CASES WHERE IT'S NOT CLEAR, ONE MUST DECIDE IN FAVOR OF

19   PRODUCT DESIGN AND FORCE SECONDARY MEANING TO BE PROVEN.

20          AND IN FACT, THE COCA-COLA BOTTLE EXAMPLE THAT WAS

21   USED BY THE SUPREME COURT IN THAT CASE IS EXACTLY RIGHT ON

22   FOR WHAT HAPPENED HERE.

23          THE SUPREME COURT HAS SAID THAT IF YOU HAVE A

24   BOTTLE DESIGN WHERE PEOPLE ARE COLLECTING THEM AND TRADING

25   THEM AND, ESSENTIALLY, BUYING THE BOTTLE BECAUSE IT HAS THIS
```

1    WHOLE OTHER PRODUCT USE OTHER THAN JUST HOLDING A CONTAINER,

2    THEN IT SHOULD BE FOUND TO BE PRODUCT DESIGN, AND SECONDARY

3    MEANING WOULD BE REQUIRED.

4           IT'S NO DIFFERENT THAN THE SITUATION WE HAVE HERE.

5    WE NOT ONLY HAVE ALL THE EVIDENCE THAT WE PUT IN ON THIS

6    MOTION AND THE PRELIMINARY INJUNCTION SHOWING ALL OF THESE

7    OTHER USES; BUT IN FACT MR. AYKROYD, WHO IS THEIR PRINCIPAL,

8    AS WE'VE NOTED IN OUR BRIEF, HAS SAID ANY NUMBER OF TIMES

9    THAT IT'S VERY NICE THAT PEOPLE ARE BUYING THE BOTTLE FOR

10   THE BOTTLE, BUT WE WOULD LIKE THEM TO TASTE THE VODKA.

11          AND SO IN THIS CASE WHERE THE TRADEMARK OFFICE

12   DENIED REGISTRATION ORIGINALLY ON THE GROUNDS OF

13   ORNAMENTATION AND REQUIRING SECONDARY MEANING, IN LIGHT OF

14   WHAT THE WALMART COURT SAID ABOUT BOTTLE DESIGNS OF THE KIND

15   OF COCA-COLA AND THE ONE HERE, IN LIGHT OF THE FACT THAT THE

16   NINTH CIRCUIT STATED THAT FROM ITS POSITION, THE BOTTLE

17   DESIGN WAS PURE ORNAMENTATION, I THINK THAT ADDING ALL OF

18   THAT TOGETHER, IT CERTAINLY DOES LOOK LIKE THE NINTH CIRCUIT

19   LEFT OPEN THE QUESTION OF WHETHER OR NOT THIS IS PRODUCT

20   DESIGN OR IT'S PACKAGING DESIGN.

21          AND FRANKLY, JUST ON THE BASIS OF THE WALMART CASE

22   ALONE AND THE EVIDENCE THAT WE PUT BEFORE YOUR HONOR, I

23   BELIEVE YOU CAN GRANT US SUMMARY JUDGMENT ON THAT ISSUE.

24          **THE COURT:**  SINCE I DON'T HAVE SUMMARY JUDGMENT

25   BEFORE ME AT THIS POINT.

1        **MR. WEINBERG:**  RIGHT.

2            NOW, AS TO THE QUESTIONS THAT WERE ASKED OF

3    COUNSEL BEFORE, AS I NOTED, THE BUT-FOR STANDARD IS A PATENT

4    CONCEPT.  BUT-FOR MATERIALITY DOES NOT EXIST IN TRADEMARK.

5            THE ONLY CASE THEY CITE IN FAVOR OF THAT PRINCIPLE

6    IS THE THERASENSE CASE AND THE MORE RECENT FIRST MEDIA CASE,

7    WHICH ARE PATENT CASES.

8            PATENTS AND TRADEMARK, EVEN THOUGH THEY SHARE THE

9    SAME OFFICE IN WASHINGTON, D.C., ARE ENTIRELY DIFFERENT

10   CREATURES; PATENT COMING FROM THE CONSTITUTION, TRADEMARKS

11   FROM THE COMMON LAW AND THE LANHAM ACT.  AND ONE DOES NOT

12   APPLY THOSE STANDARDS TO THE SAME KINDS OF CASES.

13           WE LOOKED THROUGH ALL THE TRADEMARK CASES,

14   INCLUDING IN RE BOSE AND NEUROVISION, THE MOST RECENT

15   NINTH CIRCUIT CASE.  THERE IS NO MENTION OF A BUT-FOR TEST.

16   THERE IS NO MENTION OF INEQUITABLE CONDUCT.  THERE'S NO

17   MENTION OF ANY OF THESE PATENT CONCEPTS WHICH THE PLAINTIFFS

18   HAVE HAD A LOT OF FUN MIXING UP AND SORT OF DOING AN APPLES

19   AND ORANGES ROUTINE HERE.

20           THE FACT OF THE MATTER IS ALL WE HAVE TO SHOW IS

21   THAT THERE WAS AN INTENTIONAL MISREPRESENTATION OR OMISSION

22   THROUGH THE TRADEMARK OFFICE THAT WAS FRAUDULENT BECAUSE,

23   HAD THE TRADEMARK OFFICE HAD THAT INFORMATION, IT WOULD NOT

24   HAVE ISSUED THE REGISTRATION.

25           AND IT DOESN'T HAVE TO INVOLVE THE APPLICATION.

```
 1   THERE IS A CASE THAT WAS NOT CITED IN OUR BRIEF, AND IF I
 2   MIGHT, I MIGHT CITE IT TO YOU BECAUSE IT'S A TRADEMARK
 3   OFFICE CASE THAT SAYS JUST THIS.
 4             THE COURT:  AND WHY WAS IT NOT CITED IN THE BRIEF?
 5             MR. WEINBERG:  WE DIDN'T FIND IT IN TIME IS THE
 6   HONEST ANSWER.  IT'S A U.S.P.Q. CITE, AND WE DIDN'T FIND IT
 7   UNTIL RECENTLY.
 8             IT'S SPACE BASE, INC., V. STADIS CORPORATION,
 9   17 USPQ,2D 1216.  AND WHAT THE BOARD SAYS IN THIS DISCUSSION
10   IS THAT IF AN APPLICANT WILLFULLY AND DELIBERATELY FAILED TO
11   INFORM THE TRADEMARK EXAMINER OF AN INACCURACY, THEN
12   CANCELLATION SHOULD FOLLOW AND -- OR THERE SHOULD BE A
13   SUSPENSION UNTIL THE FULL FACTS ARE IN.
14             THAT'S WHAT HAPPENED HERE.  WHAT WE REALLY HAVE
15   HERE IS A SITUATION WHERE A PARTY WAS ETHICALLY AND LEGALLY
16   BOUND TO TELL THE TRADEMARK OFFICE THAT AN ARTICLE III COURT
17   HAD SAID THIS DESIGN IS FUNCTIONAL.  THEY DIDN'T DO IT.
18             AND NOT DOING IT IS NOT LIKE "I FORGOT TO DO IT."
19   ONE DOES NOT FORGET ABOUT A DISTRICT COURT DECISION HOLDING
20   THE VERY TRADE DRESS THAT'S INVOLVED IN THE CASE TO BE
21   UNPROTECTABLE.
22             SOME INTENTIONAL DECISION WAS MADE NOT TO MAKE
23   THAT DISCLOSURE.  AND BY NOT MAKING THAT DISCLOSURE AND
24   ALLOWING THAT REGISTRATION TO ISSUE AND NOW TRYING TO USE IT
25   AS A SWORD IN THIS CASE IS ABSOLUTELY A FRAUD.  AND THERE IS
```

1   A DUTY TO DISCLOSE BECAUSE IT'S A BINDING DECISION.  IT'S

2   LIKE IF YOU --

3           **THE COURT:**  AND I THINK COUNSEL HAS ARGUED.  I

4   UNDERSTAND WHAT YOUR POSITION IS.

5           **MR. WEINBERG:**  THANK YOU.

6           **THE COURT:**  SO ARE YOU SATISFIED THAT YOU

7   ADEQUATELY ADDRESSED THE RESPONSES GIVEN BY PLAINTIFF'S

8   COUNSEL?

9           **MR. WEINBERG:**  YEAH, I DO, BECAUSE A LOT OF THE

10  RULES THEY SAY EXIST DON'T EXIST IN THE TRADEMARK LAW.

11          I MEAN, THE TRADEMARK LAW OF FRAUD IS VERY SIMPLE.

12  INTENTIONAL MISREPRESENTATION OR OMISSION THAT IF THE

13  TRADEMARK HAD KNOWN THE FACTS, WOULD HAVE RESULTED IN A

14  DIFFERENT DECISION, AND THAT'S ALL WE HAVE TO PROVE.

15          AND BY THE WAY, THE ONLY PRESUMPTION THAT'S

16  INVOLVED HERE IS A REBUTTABLE ONE, AND WE BELIEVE WE HAVE

17  ABSOLUTELY REBUTTED THAT.

18          **THE COURT:**  LET ME ASK JUST A QUESTION ABOUT THE

19  NEW CASE THAT YOU CITED.

20          SO WHILE THAT CASE WAS NOT CITED IN THE BRIEFS,

21  DID YOU CITE OTHER CASES THAT HAVE SIMILAR HOLDINGS?

22          **MR. WEINBERG:**  WELL, NEUROVISION, WHICH IS THE

23  NINTH CIRCUIT CASE, DOES SAY THAT MISREPRESENTATIONS ARE NOT

24  NECESSARY.  IT CAN BE AN OMISSION.  AND IN FACT, THE CASE

25  WAS REVERSED ON THE BASIS OF THE JURY INSTRUCTION DID NOT

```
 1    PROPERLY INSTRUCT ABOUT THERE BEING AN INTENTIONAL OMISSION.

 2              THE COURT:  AND THAT IS A CASE THAT WAS CITED.

 3              MR. WEINBERG:  YES, BY BOTH PARTIES.

 4              "MCCARTHY ON TRADEMARKS," THAT'S SORT OF THE

 5    LEADING TREATISE, ALSO DISCUSSES THE ISSUE OF OMISSIONS.

 6              THESE CASES DON'T COME UP THAT OFTEN, FRANKLY.

 7              THE COURT:  I RAISE THE QUESTION JUST TO GET YOUR

 8    POSITION AS TO HOW SIGNIFICANT IS THE NEW CASE.  SINCE IT

 9    WASN'T CITED IN THE PAPERS THEN, OF COURSE, THE PLAINTIFFS

10    HAVE NOT HAD AN OPPORTUNITY TO RESPOND TO IT.  AND SO

11    SOMETIMES, WHEN THESE CASES COME UP, AT THIS STAGE AT THE

12    ORAL ARGUMENT, EITHER SIDE MAY ASK THE COURT TO GIVE THEM AN

13    OPPORTUNITY TO COMMENT FURTHER ON THE CASE.

14              IF IT IS A CASE THAT DOESN'T REALLY CHANGE THE

15    LAW, THEN THE COURT PROBABLY NEEDS NO FURTHER BRIEFING, AND

16    SO THAT'S WHY I RAISED IT.

17              SO IT SOUNDS LIKE YOUR RESPONSE IS WHILE IT'S A

18    NEW CASE, THERE ARE OTHER CASES THAT WERE CITED IN THE

19    PAPERS THAT STAND FOR THE SAME POSITION OR NOT.

20              MR. WEINBERG:  LET ME BE REALLY CLEAR.

21              THERE HAVEN'T BEEN MANY CASES -- AS FAR AS I KNOW,

22    THERE HAVEN'T BEEN ANY CASES OTHER THAN THE STADIS CASE AND

23    THE NEUROVISION CASE WHICH SPECIFICALLY ADDRESS FRAUD IN THE

24    CONTEXT OF DEALING DIRECTLY WITH A TRADEMARK EXAMINER.

25              SO TO THE EXTENT THAT YOUR HONOR FEELS THAT THAT
```

1 ISSUE NEEDS TO BE FURTHER BRIEFED, I'M OBVIOUSLY OPEN TO

2 THAT. IT CLARIFIES RATHER THAN CHANGES IS REALLY THE RIGHT

3 ANSWER.

4     **THE COURT:** ALL RIGHT. THANK YOU.

5     PLAINTIFF'S COUNSEL, WHY DON'T WE START WITH THE

6 NEW CASE. IT MAY BE A CASE OF WHICH YOU ARE AWARE EVEN

7 THOUGH IT'S NOT CITED IN THE PAPERS. YOU MAY BE PREPARED TO

8 ADDRESS IT HERE. I WOULD LIKE TO HEAR YOUR COMMENTS.

9     **MS. SULLIVAN:** WITH REGARD TO THE NEW CASE, WE

10 WOULD LIKE TO HAVE AN OPPORTUNITY TO REVIEW THE DECISION

11 CITED BY ELEMENTS' COUNSEL AND REQUEST FURTHER BRIEFING IF

12 WE BELIEVE IT IS NECESSARY.

13     **THE COURT:** ARE YOU FAMILIAR WITH THE CASE?

14     **MS. SULLIVAN:** I AM NOT, AT THIS POINT, FAMILIAR

15 WITH THE CASE.

16     **THE COURT:** ALL RIGHT.

17     **MS. SULLIVAN:** SO THE NEXT POINT I WOULD LIKE TO

18 ADDRESS IS THIS BUT-FOR MATERIALITY REQUIREMENT THAT COUNSEL

19 BELIEVES DOES NOT APPLY IN TRADEMARK CASES.

20     IN FACT, IN RE BOSE, THE FEDERAL CIRCUIT STATED

21 THAT ABSENT THE REQUISITE INTENT TO MISLEAD THE P.T.O., EVEN

22 A MATERIAL REPRESENTATION WOULD NOT QUALIFY AS FRAUD.

23     SO IN THE IN RE BOSE CASE, THERE ARE SEVERAL

24 INSTANCES WHERE, IN FACT, AS TO THE FACTOR OF SCIENTER, THE

25 MATERIAL REPRESENTATION WAS NOT A MAJOR FACTOR IN THAT

1    PARTICULAR CASE.

2           BUT ON THE POINT OF INTENT TO DECEIVE, IN RE BOSE

3    DID STATE THAT THE CASE LAW SUPPORTING PATENT SCIENTER LAW

4    OR ANALYSIS APPLIES WITH EQUAL FORCE IN TRADEMARK LAW.

5           THEREFORE, THERE'S NOT THIS CLEAR DISTINCTION THAT

6    ELEMENTS WISHES FOR THIS COURT TO BELIEVE THAT THERE IS THIS

7    COMPLETELY SEPARATE SET OF LAW BETWEEN EQUITABLE CONDUCT OR

8    FRAUD ON THE PATENT OFFICE AND EQUITABLE CONDUCT ON THE

9    TRADEMARK OFFICE.  IN FACT, SOME OF THOSE STANDARDS AND

10   ANALYSES ARE USED INTERCHANGEABLY, AND THERE IS A

11   REQUIREMENT FOR FRAUD ON THE TRADEMARK OFFICE TO HAVE A

12   MATERIAL -- A BUT-FOR MATERIAL REPRESENTATION.

13          SO THE NEXT POINT I WOULD LIKE TO ADDRESS IS

14   RELATED TO THAT MATERIAL, BUT-FOR MATERIAL REQUIREMENT AND

15   THAT THAT -- THIS OMISSION THAT ELEMENTS' COUNSEL SEEMED TO

16   WISH THIS COURT TO BELIEVE THAT IT CAN BE AN AFFIRMATIVE

17   STATEMENT OR AN OMISSION.

18          IN NEUROVISION, WHAT REALLY HAPPENED WAS THE

19   APPLICANT IN THAT CASE HAD SOME KNOWLEDGE OF PRIOR RIGHTS OF

20   OTHER PARTIES IN THEIR TRADEMARK.  AND WHEN THEY FILED THE

21   TRADEMARK APPLICATION, THEY MADE THAT STATEMENT -- THE

22   DECLARATION THAT WE DISCUSSED EARLIER THAT SAYS THAT HE OR

23   SHE BELIEVES THAT APPLICANT SHOULD BE THE OWNER OF THE

24   TRADEMARK OR SERVICE MARK SOUGHT TO BE REGISTERED TO THE

25   BEST OF HIS OR HER KNOWLEDGE AND BELIEVE NO OTHER PERSON,

```
 1   FIRM, CORPORATION, OR ASSOCIATION HAS THE RIGHT TO USE THAT

 2   MARK IN COMMERCE.

 3          WHEN THEY SIGNED THAT PARTICULAR DECLARATION, IT

 4   WAS INCORRECT OR POSSIBLY INCORRECT BECAUSE THEY HAD SOME

 5   KNOWLEDGE OF A SUPERIOR RIGHT.  BUT THAT KNOWLEDGE IS

 6   COMPLETELY SUBJECTIVE.

 7          THE COURTS AND THE T.T.A.B. HAVE SAID EVEN IF YOU

 8   KNOW OF PRIOR RIGHTS -- AND THIS IS WHAT THE NINTH CIRCUIT

 9   HAS SAID IN NEUROVISION, TOO -- YOU HAVE TO HAVE A

10   SUBJECTIVE BELIEF THAT THIRD PARTIES', OTHER PARTIES'

11   REGISTRATIONS OR USE OF THE TRADEMARK IS SUPERIOR TO YOURS.

12          SO EVEN IN THOSE CIRCUMSTANCES, YOU SIGN THAT

13   DECLARATION, AND THEREAFTER THAT DECLARATION CAN BE

14   CONSIDERED TO BE FRAUD IF THAT'S WHAT LED TO THE ULTIMATE

15   REGISTRATION.

16          AND ON TOP OF THAT, WHAT ELEMENTS REALLY IS ASKING

17   THIS COURT TO DO HERE IS TO SAY THAT DURING THAT WINDOW OF

18   TIME WHEN THIS COURT'S DISMISSAL ORDER WAS ON APPEAL THAT

19   GLOBEFILL HAD THIS AFFIRMATIVE DUTY TO AMEND THAT

20   DECLARATION.  AND EVEN IF GLOBEFILL DID, IN FACT, AMEND THAT

21   DECLARATION, ONCE THE NINTH CIRCUIT'S DECISION CAME DOWN,

22   GLOBEFILL'S REGISTRATION WOULD HAVE ISSUED ANYWAY.  THAT IS

23   NOT A QUESTION ANYMORE.

24          AND ON TO THIS POINT ABOUT --

25          THE COURT:  YOU MEAN AS A RESULT OF THE
```

```
1    NINTH CIRCUIT'S DECISION.

2              MS. SULLIVAN:  RIGHT.

3              THE COURT:  SO I THINK THE ARGUMENT HERE IS WAS

4    THERE A DUTY TO DISCLOSE WHEN THIS COURT RULED?

5              AND THEN AGAIN WAS THERE A DUTY TO DISCLOSE WHEN

6    THE NINTH CIRCUIT RULES ON SOMEBODY'S PART?

7              MS. SULLIVAN:  RIGHT.  AND ON TOP OF THAT, IN

8    ORDER TO MEET THE BUT-FOR MATERIALITY TEST, ELEMENTS REALLY

9    HAS TO ALLEGE THAT GLOBEFILL'S TRADEMARK APPLICATION WOULD

10   HAVE NEVER ISSUED.

11             BUT THAT'S NOT THE CASE BECAUSE ACCORDING TO

12   TRADEMARK EXAMINING RULES, ACCORDING TO SECTION 1217, A

13   FINAL DECISION IS REQUIRED.

14             SO WHEN THIS COURT'S DECISION WAS ON APPEAL, THE

15   EXAMINING ATTORNEY MAY HAVE ISSUED A SUSPENSION ORDER BUT --

16   IT'S IN THEIR DISCRETION TO DO SO, BUT THEY DON'T HAVE TO

17   REJECT AND OUTRIGHT DENY GLOBEFILL'S APPLICATION ALTOGETHER.

18             WHAT THEY WOULD HAVE DONE WAS HAVE WAITED FOR THE

19   NINTH CIRCUIT'S DECISION TO COME DOWN, AND ONCE THAT

20   DECISION CAME DOWN AND REVERSED THE DISMISSAL ORDER, THE

21   REGISTRATION WOULD HAVE MOVED FORWARD BECAUSE ALL OTHER

22   ISSUES WERE RESOLVED, WHICH LEADS ME TO THIS ARGUMENT ABOUT

23   THE NINTH CIRCUIT'S COMMENT ON ORNAMENTATION.

24             AS WE ADDRESS IN OUR BRIEF, WE BELIEVE ELEMENTS

25   HAS COMPLETELY MISUNDERSTOOD THE LAW AND THE WAY THE WORD
```

1    "ORNAMENTATION" IS USED IN THE NINTH CIRCUIT AS OPPOSED TO

2    THE WAY IT IS USED IN THE FEDERAL CIRCUIT.

3              IN THE NINTH CIRCUIT, THE WAY IT'S BEEN USED AND

4    ALWAYS HAS BEEN USED IS TO ADDRESS THE ISSUE OF

5    FUNCTIONALITY, NOT DISTINCTIVENESS.

6              IN THE NINTH CIRCUIT, AS IN THE MEMORANDUM ISSUED

7    BY THE NINTH CIRCUIT IN THIS PARTICULAR CASE, IT SAID THAT

8    IT IS PURELY ORNAMENTAL AND THEREFORE SERVES NO UTILITARIAN

9    PURPOSE.  AND LATER IN THE DECISION IT SAYS, "IT IS A PURELY

10   ORNAMENTAL CONTAINER FOR ITS VODKA," ADDRESSING PURELY ON

11   THE ISSUE OF ORNAMENTATION.

12             THIS LANGUAGE CAME FROM THE SUPREME COURT IN THE

13   TRAFFIX DEVICES V. MARKETING DISPLAYS CASE AND ALSO THE

14   NINTH CIRCUIT DECISION IN SECALT V. WUXI.

15             SO THE WAY THE NINTH CIRCUIT USES ORNAMENTATION IS

16   PURELY IN THE AREA OF FUNCTIONALITY.  AND THE REASON FOR

17   THIS IS BECAUSE THE FEDERAL CIRCUIT FOLLOWS A DIFFERENT SET

18   OF RULES FOR DETERMINING DISTINCTIVENESS IN TRADE DRESS

19   CASES VERSUS DISTINCTIVENESS IN TRADEMARK CASES, WHEREAS THE

20   NINTH CIRCUIT FOLLOWS THE ABERCROMBIE SPECTRUM OF

21   DISTINCTIVENESS TEST FOR BOTH TRADEMARK AND TRADE DRESS.

22             IN THE FEDERAL CIRCUIT, THE WORD "ORNAMENTATION"

23   REALLY COMES FROM THE TEST FOR DISTINCTIVENESS, WHICH WAS

24   THE SEABROOK TEST, WHICH ASKS THE EXAMINING ATTORNEY AS WELL

25   AS THE COURT -- THE FEDERAL CIRCUIT AND COURT TO DECIDE

```
1    WHETHER THE TRADE DRESS CLAIMED IS A COMMON SHAPE OR DESIGN,

2    UNIQUE OR UNUSUAL IN A PARTICULAR FIELD, A MERE REFINEMENT

3    OF A COMMONLY ADOPTED AND WELL-KNOWN FORM OF ORNAMENTATION

4    FOR A PARTICULAR CLASS OF GOODS VIEWED BY THE PUBLIC AS A

5    DRESS OR ORNAMENTATION FOR THE GOODS.

6           AND THEN FINALLY, THERE'S A FOURTH FACTOR, WHETHER

7    IT'S CAPABLE OF CREATING A COMMERCIAL IMPRESSION DISTINCT

8    FROM THE ACCOMPANYING WORDS.

9           SO THE WAY THE FEDERAL CIRCUIT USES

10   "ORNAMENTATION" IS REALLY IN DETERMINING WHETHER OR NOT THIS

11   DESIGN OR PACKAGING -- IS IT CAPABLE OF BEING A SOURCE

12   INDICATOR, OR IS IT VIEWED MERELY AS ORNAMENTATION FOR A

13   PARTICULAR CLASS OF GOODS OR DESIGN.

14          AND IN GOING THROUGH THIS TEST, THE EXAMINING

15   ATTORNEY DECIDED THAT GLOBEFILL'S TRADE DRESS IS NOT ONLY

16   PRODUCT PACKAGING, IT IS ALSO INHERENTLY DISTINCTIVE PRODUCT

17   PACKAGING.

18          AND THERE IS NO MYSTERY AS TO THAT TELEPHONE

19   CONVERSATION THAT OCCURRED BETWEEN US AND THE EXAMINING

20   ATTORNEY THAT ALLOWED OUR APPLICATION TO PROCEED.

21          IN FACT, THE EXAMINING ATTORNEY ENTERED A NOTE IN

22   THE RECORD, WHICH THEY HAVE PRODUCED IN ASSOCIATION WITH

23   THIS MOTION, THAT STATED THAT THEY WITHDRAW THE REQUIREMENT

24   FOR ORNAMENTATION AS A RESULT OF A T.T.A.B. DECISION IN RE

25   WELDEBRAU.
```

1          IN THAT PARTICULAR CASE, THE T.T.A.B. FOUND A BEER

2     BOTTLE WITH A BUMP IN THE NECK TO BE INHERENTLY DISTINCTIVE

3     PRODUCT PACKAGING.

4          AS A RESULT OF THAT RECENT DECISION AND IN LIGHT

5     OF THAT DECISION, THE EXAMINER WAS INFORMED OF THAT DECISION

6     BY US.  AND THE EXAMINER LOOKED AT IT AND SAID THAT WELL, IF

7     THAT IS INHERENTLY DISTINCTIVE PRODUCT PACKAGING, THEN A

8     SKULL-SHAPED BOTTLE FOR VODKA, WHICH IS THE ONLY ONE OF ITS

9     KIND AT THE TIME -- IT'S CLEARLY PRODUCT PACKAGING THAT'S

10    INHERENTLY DISTINCTIVE.  AND THAT IS THE REASON THE

11    EXAMINING ATTORNEY WITHDREW THE MERELY ORNAMENTAL DECISION.

12         AND EVEN IF IT IS CONSIDERED MERELY ORNAMENTAL, IF

13    THE PRIMARY PURPOSE OF THE PRODUCT -- TRADE DRESS IS TO

14    INDICATE SOURCE, WHICH IS WHAT GLOBEFILL'S BOTTLE DOES, THEN

15    IT CAN STILL BE INHERENTLY DISTINCTIVE EVEN IF IT HAS SOME

16    NOTION OF ORNAMENTATION.

17         SO WHAT ELEMENTS CITES TO AS THE NINTH CIRCUIT'S

18    OPENING THE DOOR OF REJECTING GLOBEFILL'S REGISTRATION ON

19    THE BASIS OF ORNAMENTATION IS COMPLETELY UNFOUNDED, AND IT'S

20    JUST A MISUNDERSTANDING AND MISSTATING OF THE LAW AND TRYING

21    TO CONFUSE THE TWO AREAS OF TRADE DRESS LAW, FUNCTIONALITY

22    AND DISTINCTNESS, AND TRYING TO MESH THEM TOGETHER WHEN THEY

23    DO NOT APPLY.

24         **THE COURT:**  AT THIS TIME I'M JUST GOING TO ASK IF

25    THE DEFENSE, SINCE IT'S A DEFENSE MOTION, HAS ANYTHING

```
 1    FURTHER THAT YOU WOULD LIKE TO PLACE ON THE RECORD.

 2              AND AS FAR AS THE NEW CASE IS CONCERNED, IF THE

 3    COURT FEELS THAT FURTHER BRIEFING IS NEEDED, THEN I'LL

 4    ADDRESS THAT AND GIVE THE PARTIES AN OPPORTUNITY TO DO SOME

 5    FURTHER BRIEFING.

 6              AT THIS POINT, I'M NOT FAMILIAR WITH THE CASE.

 7    AND I DON'T KNOW IF I FEEL THAT ANY FURTHER BRIEFING WILL BE

 8    NEEDED IN LIGHT OF THE CASE.  SO I'LL JUST REVIEW THE CASE

 9    AND MAKE THAT DECISION.

10         MS. SULLIVAN:  YOUR HONOR, IF I MAY, I JUST WANTED

11    TO ADDRESS ONE MORE POINT THAT COUNSEL MADE, WHICH WAS ON

12    THE SECONDARY MEANING OF THE COCA-COLA BOTTLE EXAMPLE THAT

13    HE PROVIDED FROM THE WALMART CASE.

14              THE WALMART CASE DOES TALK ABOUT THE DISTINCTION

15    BETWEEN PRODUCT DESIGN AND PRODUCT PACKAGING; BUT WHEN IT

16    COMES TO THE COCA-COLA BOTTLE, AS YOU SEE IN OUR BRIEF, WE

17    DON'T BELIEVE THAT WALMART APPLIES, GIVEN THAT IT IS FOR

18    DETERMINING, YOU KNOW, WHEN THE EXAMINING ATTORNEY FIRST

19    RECEIVES AN APPLICATION TO DETERMINE WHETHER IT'S IN.

20         THE COURT:  I THINK IT'S YOUR POSITION THAT

21    NOTHING COUNSEL HAS SAID HERE WOULD CAUSE YOU TO CHANGE YOUR

22    POSITION ON THAT.

23         MS. SULLIVAN:  NOTHING THAT WOULD MAKE US CHANGE

24    OUR POSITION ON THIS.  AND THE COCA-COLA BOTTLE EXAMPLE

25    DOESN'T APPLY WHEN IT'S ON PREMISES.  WHEN PEOPLE GO TO A
```

1    BAR AND SEE OUR BOTTLE ON THE BACK BAR AND SAY, "I WANT THE

2    VODKA FROM THAT BOTTLE BECAUSE I KNOW THAT'S CRYSTAL HEAD,"

3    THAT'S NOT AT ALL ADDRESSED.  AND THIRD-PARTY TRADING OF IT

4    AFTER THE FACT DOES NOT AT ALL DETERMINE WHAT WAS THE

5    CUSTOMER MOTIVATION OR WHAT THE CUSTOMER SEES WHEN THEY

6    FIRST SEE THE BOTTLE, WHETHER IT'S A SOURCE INDICATOR OR

7    NOT.

8           SO WE DON'T BELIEVE THAT'S SUFFICIENTLY PLEADED

9    AND THAT IT CAN BE SUFFICIENTLY PLEADED.

10          **THE COURT:**  THANK YOU.

11          DEFENSE.

12          **MR. WEINBERG:**  WELL, YOUR HONOR, I BELIEVE YOU

13   MISSTATED THAT THIS WAS THE DEFENDANT'S MOTION, AND IT'S

14   NOT.  THIS IS THE PLAINTIFF'S MOTION.

15          **THE COURT:**  I'M SORRY.

16          **MR. WEINBERG:**  IT'S OKAY.  I JUST WANTED TO MAKE

17   THE RECORD CLEAR.

18          **THE COURT:**  THEN I SHOULD GIVE THE PLAINTIFF THE

19   FINAL WORD ON IT, BUT DO YOU HAVE SOMETHING FURTHER THAT YOU

20   WISH TO PLACE ON THE RECORD?

21          **MR. WEINBERG:**  WELL, THE PLAINTIFF JUST HAD SO

22   MANY WORDS, IT'S HARD TO KNOW WHERE TO START, BUT LET ME

23   JUST CLARIFY A FEW THINGS.

24          **THE COURT:**  WELL, TO THE EXTENT THAT MUCH OF THIS

25   HAS BEEN ADDRESSED IN THE PARTIES' PAPERS, IT'S NOT

```
 1   NECESSARY TO READDRESS IT HERE.  BUT IF PLAINTIFF DID SAY

 2   SOMETHING TO WHICH YOU FEEL SOME RESPONSE SHOULD BE NEEDED

 3   IN ORDER TO BE CLEAR FOR THE COURT WHAT YOUR POSITION IS,

 4   THEN I GIVE YOU AN OPPORTUNITY TO DO SO.

 5         MR. WEINBERG:  THANK YOU, YOUR HONOR.  I

 6   APPRECIATE IT.

 7         ONE OF THE THINGS IS COUNSEL STATED THAT IN RE

 8   BOSE CORPORATION STATED A BUT-FOR TEST AND THAT IT SAID THAT

 9   PATENT AND TRADEMARK PRINCIPLES ARE INTERTWINED, AND THERE'S

10   NOWHERE IN THE DECISION THAT IT SAYS THAT.

11         SECOND, IN THE NEUROVISION CASE, THE ISSUE -- AND

12   THIS IS EXACTLY -- THIS IS THE NINTH CIRCUIT REVERSED.  IT

13   SAID (READING:)

14       "THE DISTRICT COURT ERRED BY INSTRUCTING THE

15       JURY TO DETERMINE ONLY WHETHER NUVASIVE ADMITTED

16       KNOWLEDGE OF N.M.P.'S PRIOR USE OF THE NEUROVISION

17       MARK.  THE PROPER INQUIRY IS WHETHER NUVASIVE

18       WILLFULLY OMITTED KNOWLEDGE OF A SUPERIOR RIGHT."

19              (END QUOTED MATERIAL.)

20         MR. WEINBERG:  SO WHAT WE'RE SAYING IS THAT WHAT

21   THEY DID IS THE SAME THING.  THERE WAS A WILLFUL OMISSION OF

22   THIS COURT'S DECISION.

23         I WANTED TO CLARIFY THAT.

24         THE COURT:  AND I THINK PLAINTIFF'S COUNSEL HAS

25   JUST FOCUSED THE COURT ON THAT THE BASIS FOR THE MOTION, THE
```

```
 1   ARGUMENT BEFORE THE COURT TODAY IS WHETHER PLAINTIFFS SHOULD

 2   HAVE CORRECTED THE AFFIDAVIT THAT HAD BEEN PROVIDED.

 3           MR. WEINBERG:  IF A FEDERAL COURT SAYS, "YOU'RE

 4   NOT ENTITLED TO TRADEMARK," YOU DON'T HAVE TO CORRECT THE

 5   DECLARATION BECAUSE THE CASE IS THROWN OUT.

 6           SO THAT'S JUST SORT OF TWISTING THINGS A BIT

 7   BECAUSE THERE'S NO NEED TO CHANGE A DECLARATION FOR AN

 8   INVALID APPLICATION.  THAT'S WHAT WOULD HAVE HAPPENED HERE.

 9           AND SO WE'RE NOT ARGUING THAT IT WAS THEIR

10   OBLIGATION TO CHANGE THE APPLICATION.  WHAT WE'RE ARGUING --

11           THE COURT:  THE AFFIDAVIT.

12           MR. WEINBERG:  THE AFFIDAVIT.  WELL, IT'S EITHER

13   AN AFFIDAVIT OR A DECLARATION.  I THINK THEY SUBMITTED A

14   DECLARATION.

15           THE COURT:  COUNSEL DESCRIBED IT AS AN AFFIDAVIT.

16           MR. WEINBERG:  WE'LL GO WITH AFFIDAVIT,

17   YOUR HONOR.

18           THERE'S NO OBLIGATION TO CHANGE AN AFFIDAVIT IF A

19   FEDERAL COURT HAS SAID YOU ARE NOT ENTITLED TO PROTECTION.

20   IT'S JUST OVER.  UNLESS -- AND AS WE AGREE -- THE TRADEMARK

21   OFFICE HAS SAID, "WELL, WE KNOW THAT YOU'VE APPEALED IT, AND

22   SO WE'LL AWAIT SUSPENSION."

23           AND AS TO THE CITATION TO THE REFERENCE IN THE

24   TRADEMARK MANUAL OF EXAMINING PROCEDURE RELATING TO WHETHER

25   OR NOT A FINAL DECISION HAS BEEN RENDERED, IN THE CASES AND
```

```
1   IN THE LAW IT IS CLEAR THAT UNTIL A DISTRICT COURT'S

2   DECISION IS OVERTURNED, THAT IS THE LAW.

3           YOU CAN'T ASK FOR HELP FROM THE TRADEMARK OFFICE

4   IN A CASE WHERE YOU WANT TO USE A REGISTRATION, YOU KNOW,

5   AND THEN NOT TELL THEM THAT THERE HAS BEEN A DECISION BY THE

6   FEDERAL COURT.

7           THE COURT:  AND I THINK COUNSEL'S MADE THAT

8   ARGUMENT BOTH HERE AND IN THE PAPERS.

9           MR. WEINBERG:  THANK YOU, YOUR HONOR.

10          I HAVE NOTHING ELSE.

11          THE COURT:  ANYTHING FURTHER FROM ANYONE BEFORE

12  THE COURT DEEMS THE MATTER SUBMITTED?

13          MS. SULLIVAN:  I JUST HAVE ONE BRIEF POINT, AND I

14  APOLOGIZE.

15          SO COUNSEL EARLIER STATED THAT THIS IS THE BIGGEST

16  TYPE OF FRAUD CASE THERE IS IN THE TRADEMARK AREA OF LAW.

17          THE COURT:  WHETHER IT'S THE BIGGEST OR NOT, I'M

18  NOT SURE THAT THAT'S IMPORTANT HERE.

19          MS. SULLIVAN:  WELL, WHAT I WOULD LIKE TO POINT

20  OUT TO THIS COURT IS THAT SINCE THE IN RE BOSE DECISION CAME

21  OUT IN AUGUST OF 2009, THE T.T.A.B. HAS NOT FOUND A SINGLE

22  CLAIM OF FRAUD AS OF SEPTEMBER 24, 2012.  SO IT'S BEEN OVER

23  THREE YEARS.  AND EVEN THOUGH THIS COURT'S DECISION WAS LAW

24  DURING THE WINDOW OF TIME WHEN IT WAS ON APPEAL, IT WAS NOT

25  GOING TO BE OUTRIGHT REJECTED BY THE TRADEMARK OFFICE.  SO
```

1    WE DON'T THINK THAT POINT REALLY APPLIES HERE.

2              THANK YOU.

3              **THE COURT:**  ALL RIGHT.  THE MATTER IS DEEMED

4    SUBMITTED.

5              AND HOPEFULLY WE'LL GET THE ORDER OUT TODAY ON THE

6    PRELIMINARY INJUNCTION.  BUT AS I INDICATED TO THE PARTIES,

7    THE COURT IS DENYING THAT REQUEST, AND THE ORDER WILL BE

8    CONSISTENT WITH THAT.

9              AS I PREVIOUSLY INDICATED AND THE ORDER WILL

10   INDICATE, I DON'T FIND THAT PLAINTIFFS HAVE MADE THE SHOWING

11   OF IRREPARABLE HARM.

12             THANK YOU.

13             **MR. WEINBERG:**  YOUR HONOR, WE ALSO HAVE A C.M.C.

14   SCHEDULED FOR TODAY.

15             **THE COURT:**  STATUS CONFERENCE?

16             **MR. WEINBERG:**  YEAH.

17             **THE COURT:**  OKAY.  AND DID YOU FILE A REPORT?

18             **MR. WEINBERG:**  WE DID.

19             **THE COURT:**  OKAY.  WHY DON'T YOU JUST BE SEATED,

20   THEN.  I HAVE NOT READ THE REPORT; OR IF I HAVE, I MUST HAVE

21   READ IT EARLIER, AND I DON'T HAVE IT WITH ME ON THE BENCH.

22   SO I'LL FIND IT AND RETURN TO THE BENCH, AND WE CAN HAVE

23   THAT CONFERENCE.  THANK YOU.

24                  *(10:38 A.M., RECESS TAKEN.)*

25

34

**STATUS CONFERENCE**

1

2      **THE COURT:**  OKAY.  WE'LL GO BACK ON THE RECORD.

3          AND THE COURT NOW HAS THE JOINT REPORT OF THE

4   CONFERENCE OF THE PARTIES PURSUANT TO 26(F), AND WE RETURN

5   TO THE RECORD FOR THIS DISCUSSION.

6          I HAVE READ THE REPORT, AND IT'S RECEIVED FOR

7   PURPOSES OF THESE PROCEEDINGS.

8          AND THE PURPOSE FOR THIS HEARING IS JUST FOR THE

9   COURT TO SET THE DATES WHICH WILL GOVERN THE PARTIES AS YOU

10  CONDUCT YOUR DISCOVERY, FILE YOUR MOTIONS, AND HAVE THE

11  SETTLEMENT CONFERENCE THAT'S REQUIRED PURSUANT TO THE

12  COURT'S PROCEDURE.

13          THE COURT WILL JUST INDICATE FOR THE RECORD THAT

14  THERE ARE AN AWFUL LOT OF DEPOSITIONS TO BE TAKEN IN THE

15  CASE.  WHAT I DON'T KNOW IS WHETHER ALL OF THOSE PARTIES TO

16  BE DEPOSED ARE WITHIN THE JURISDICTION OF THE COURT, OUTSIDE

17  THE JURISDICTION, INTERNATIONAL, ET CETERA.  SO I'LL ASK THE

18  PARTIES JUST TO ADDRESS THAT.

19          YOU DO INDICATE, I THINK, INITIAL DISCLOSURE WAS

20  TO TAKE PLACE A DATE IN OCTOBER, AND THAT DATE HAS NOW

21  PASSED.  SO I JUST WANT TO KNOW HAS THAT BEEN DONE.

22          AND MAYBE A BIT MORE GUIDANCE AS TO WHEN THE

23  WRITTEN DISCOVERY WOULD BE PROPOUNDED SO THAT THE COURT

24  COULD BETTER MAKE A DETERMINATION AS TO WHEN THE DISCOVERY

25  SHOULD BE COMPLETED.

```
 1              YOU'VE ADDRESSED THE EXPERTS THAT YOU PLAN TO

 2     CALL.  IT LOOKS LIKE BOTH SIDES WOULD AT LEAST RETAIN A

 3     SURVEY EXPERT AND A DAMAGE EXPERT.  SO THE COURT CONCLUDES

 4     THAT THERE ARE LIKELY TO BE TWO EXPERTS PER SIDE, AND BOTH

 5     SIDES' EXPERT WOULD BE ADDRESSING THE SURVEY AS WELL AS

 6     DAMAGES.

 7              YOUR SUGGESTION IS WHILE THIS IS NOT A COMPLEX

 8     CASE, THAT THE PRETRIAL CONFERENCE BE SET FOR SEPTEMBER OF

 9     NEXT YEAR, SO APPROXIMATELY A YEAR FROM NOW, A LITTLE LESS

10     THAN A YEAR.

11              AND ONE SIDE HAS REQUESTED A JURY TRIAL.  THE

12     OTHER SIDE HAS NOT.  BUT THE TIME ESTIMATE FOR TRIAL IS

13     SEVEN TO TEN DAYS.  AND I'M JUST LOOKING TO SEE WHETHER OR

14     NOT YOU ACTUALLY SUGGESTED A DATE FOR TRIAL.

15              I DON'T THINK YOU DID.  SO THE COURT JUST ASSUMES

16     THAT IF THE PRETRIAL WERE TO TAKE PLACE IN SEPTEMBER, THAT

17     THE TRIAL WOULD PROBABLY BE IN OCTOBER.

18              SO DO THE PARTIES WISH TO EITHER RESPOND TO THE

19     COURT'S INQUIRY OR PUT ANYTHING FURTHER ON THE RECORD THAT

20     THE COURT SHOULD CONSIDER IN SETTING DATES?

21              MR. LOOMIS:  GOOD MORNING, YOUR HONOR.

22     DENNIS LOOMIS, AND I'LL HANDLE THIS PART OF THE PROCEEDINGS.

23              WE DID MAKE OUR INITIAL DISCLOSURES.  THERE ARE A

24     NUMBER OF OTHER WITNESSES WHO ARE IN OTHER STATES.  I

25     BELIEVE THERE'S AT LEAST ONE, DAN AYKROYD, WHO'S A CANADIAN
```

```
 1   CITIZEN, ALTHOUGH I DON'T KNOW THAT HE'S A CANADIAN

 2   RESIDENT.

 3             AS FAR AS THE OTHER EXTRA-TERRITORIAL WITNESSES, I

 4   THINK THERE'S GOING TO BE ISSUES IN THAT REGARD, AND THERE

 5   WILL BE SOME TRAVELING INVOLVED.

 6             AS FAR AS WRITTEN DISCOVERY, OUR INTENTION

 7   CERTAINLY IS TO PROPOUND WRITTEN DISCOVERY AS SOON AS

 8   PRACTICAL, AND IT'S IN PROCESS NOW.

 9             I DON'T THINK WE HAVE ANY OTHER POINTS THAT WE

10   WANT TO ADD TO THE POINTS IN THE SCHEDULING CONFERENCE, BUT

11   WE DO CONCUR A TRIAL DATE IN OCTOBER WOULD CERTAINLY BE

12   WITHIN OUR CONTEMPLATION.

13             **THE COURT:**  ALL RIGHT.  THANK YOU.

14             DEFENSE.

15             **MR. WEINBERG:**  I CONCUR, WE'LL BE GETTING OUT

16   DISCOVERY IF NOT THIS MONTH, CERTAINLY BY THE BEGINNING OF

17   NEXT, AND COUNSEL WAS KIND ENOUGH TO ACCOMMODATE -- I HAVE A

18   TWO-WEEK TRIAL IN ANOTHER DISTRICT WHICH WILL BE GOING

19   FORWARD IN MAY.  I ALSO HAVE MY 30TH ANNIVERSARY, AND I'LL

20   BE GONE PART OF JULY, AND THEY'VE ALSO HELPED ME ACCOMMODATE

21   THAT.  THAT'S WHY WE PICKED THE DATES WE HAVE, AND OCTOBER

22   CERTAINLY WORKS FOR US.

23             **THE COURT:**  BOTH SIDES HAVE INDICATED YOU WOULD BE

24   FILING SUMMARY JUDGMENT MOTIONS AFTER SOME DISCOVERY.

25             SO LET'S HAVE A LITTLE DISCUSSION ON THAT, WHETHER
```

```
 1    YOU REALLY MEAN THAT YOU WOULD THINK IT MORE PRACTICAL TO

 2    COMPLETE ALL DISCOVERY INCLUDING EXPERT DISCOVERY BEFORE

 3    THESE MOTIONS ARE FILED; IS IT LIKELY YOU'LL FILE

 4    CROSS-MOTIONS FOR SUMMARY JUDGMENT, JUST BASICALLY MEANING

 5    THEY ARE DIRECTED TO THE SAME ISSUE, THEY'RE BEING FILED AT

 6    THE SAME TIME, NOTICED FOR HEARING AT THE SAME TIME.

 7             IF THAT'S WHAT YOU'RE THINKING, YOU MAY -- AND I

 8    THINK IT WOULD BE HELPFUL IF YOU HAD A MEET AND CONFER AND

 9    DECIDED HOW TO BRIEF THOSE ISSUES.

10             SO MAYBE INSTEAD OF BOTH SIDES, MOTION,

11    OPPOSITION, AND REPLY; YOU MAY DECIDE TO TRY TO IDENTIFY THE

12    FACTS NOT IN DISPUTE ON WHICH SUMMARY JUDGMENT COULD BE

13    GRANTED AND YOUR BRIEFS COME TO THE COURT ON THOSE ISSUES

14    VERSUS THE FACTS THAT REMAIN IN DISPUTE.

15             I MEAN, I THINK YOUR POSITION WOULD BE THERE ARE

16    NO FACTS IN DISPUTE; SO YOU GET SUMMARY JUDGMENT.  BUT THE

17    OTHER SIDE MAY DISAGREE WITH THAT.

18             SO RATHER THAN HAVE YOU SPEND A LOT OF TIME ON

19    SUMMARY JUDGMENT THAT GETS DENIED BECAUSE THERE ARE MATERIAL

20    ISSUES OF FACT IN DISPUTE, IT WOULD PROBABLY BE MORE

21    BENEFICIAL TO THE COURT AND TO THE CLIENTS IF YOU IDENTIFIED

22    THOSE ISSUES WHERE YOU AGREE ON THE FACTS, AND THEN YOU

23    COULD FILE BRIEFS AS TO THE LAW ON THOSE ISSUES.

24             SO A MEET AND CONFER OF THIS TYPE WOULD BE HELPFUL

25    BEFORE A LOT OF TIME IS SPENT BY YOU AND A LOT OF TIME IS
```

```
 1   SPENT BY THE COURT TO FIND IT WASN'T HELPFUL.

 2           MR. LOOMIS:  YOUR HONOR, I THINK THAT MAKES

 3   EXCELLENT SENSE, AND WE CONCUR WITH THAT IF THE COURT HAS IN

 4   MIND A MEET AND CONFER THAT WOULD BE SPECIFICALLY FOR THE

 5   PURPOSES OF DISCUSSING UNDISPUTED FACTS AND CONFERRING ON

 6   TRYING TO STREAMLINE AND ORGANIZE THE SUMMARY JUDGMENT

 7   PRESENTATION SO THAT WE HAVE IT NARROWED DOWN TO LETTING YOU

 8   DECIDE THOSE THINGS THAT NEED TO BE DECIDED ONCE AS OPPOSED

 9   TO TWICE.

10           THE COURT:  RIGHT.  THAT'S WHAT I'M THINKING IS

11   HELPFUL IN THESE CASE WHERE BOTH SIDES ARE FILING SUMMARY

12   JUDGMENT MOTIONS DIRECTED TO THE VERY SAME ISSUE.

13           IN THIS CASE IN THIS REPORT, YOU IDENTIFIED WHAT

14   THOSE ISSUES ARE, AND THOSE ARE ALL CONSISTENT WITH THE

15   ARGUMENTS THAT WERE MADE THIS MORNING PLUS THE ARGUMENTS

16   THAT HAVE BEEN PREVIOUSLY MADE IN THE CASE.

17           MR. WEINBERG:  FROM A TIME PERSPECTIVE, THE ONLY

18   THING WE MAY DO IS SUMMARY JUDGMENT ON LIABILITY AND NOT

19   HAVE TO SPEND A LOT OF TIME AND MONEY ON THE DAMAGES SIDE OF

20   THE CASE.  BUT WE KNOW EACH OTHER FAIRLY WELL, AND WE'LL

21   WORK THAT OUT.

22           MR. LOOMIS:  YES.

23           THE COURT:  WOULD YOU SAY YOU WOULD COMPLETE ALL

24   OF THE DISCOVERY NECESSARY TO WHATEVER THE ISSUE IS BEFORE

25   THE SUMMARY JUDGMENT MOTIONS ARE FILED?
```

1          **MR. WEINBERG:**  THAT'S WHAT WE'RE THINKING.

2          **MR. LOOMIS:**  I THINK THAT MAKES THE MOST SENSE. I

3     AGREE, YOUR HONOR.

4          **MR. WEINBERG:**  YOUR HONOR, SO IT'S CLEAR FOR THE

5     RECORD, BOTH PARTIES WOULD LIKE A JURY TRIAL.

6          **THE COURT:**  WELL, IT WOULD BE A JURY TRIAL ANYWAY

7     UNLESS THE PARTY WHO REQUESTED THE JURY TRIAL WITHDREW THAT

8     REQUEST.

9          SO HOW ABOUT THE SETTLEMENT.  I DON'T KNOW THAT

10    YOU ADDRESSED WHAT PROCEDURE SHOULD BE USED FOR SETTLEMENT

11    PURPOSES OR NOT AND WHAT YOUR PLANS ARE IN THAT REGARD.

12         SO YOU DO HAVE TO MAKE A CHOICE -- PRIVATE

13    MEDIATION, WHICH COULD INCLUDE THE ATTORNEY SETTLEMENT

14    OFFICERS THAT THE COURT HAS A LIST OF WHO THOSE PERSONS ARE,

15    AND MANY OF THEM HAVE EXPERTISE IN THIS AREA OF THE LAW.  SO

16    THAT'S A CHOICE YOU COULD MAKE AS WELL.

17         WOULD YOU SAY THAT YOU'D WANT TO DO THAT AFTER

18    YOU'VE COMPLETED ALL DISCOVERY?

19         **MR. LOOMIS:**  YES, YOUR HONOR.  IN THIS CASE IN

20    PARTICULAR, WE DO BELIEVE THAT AT THIS POINT THE PROSPECTS

21    FOR SETTLEMENTS WOULD APPEAR BLEAK; AND THEREFORE, WE NEED

22    TO GET THROUGH THE DISCOVERY SO THAT WE HAVE A CLEARER IDEA

23    AND MAYBE A BETTER CHANCE AT THAT.

24         I APOLOGIZE. I AM, FRANKLY, CRESTFALLEN THAT WE

25    DID NOT SPECIFICALLY INCLUDE AN EXPRESS ELECTION OF THE

```
 1   SETTLEMENT OPTION UNDER THE RULES, BUT I BELIEVE WE BOTH

 2   AGREE OUR PREFERENCE WOULD BE FOR A NEUTRAL MEDIATION

 3   THROUGH A THIRD PARTY SERVICE --

 4           MR. WEINBERG:  THAT'S CORRECT, YOUR HONOR.

 5           MR. LOOMIS:  -- TO BE HELD AFTER DISCOVERY IS

 6   COMPLETED.

 7           MR. WEINBERG:  WELL, I DON'T KNOW ABOUT WHEN WE

 8   WOULD HAVE IT, BUT CERTAINLY PRIVATE MEDIATION.

 9           MR. LOOMIS:  WELL, WE COULD ALWAYS DO IT SOONER IF

10   WE WANT.

11           THE COURT:  ARE YOU THINKING THAT YOU WOULD ALSO

12   WANT RULINGS ON THE SUMMARY JUDGMENT MOTIONS BEFORE THE

13   SETTLEMENT PROCEDURE TOOK PLACE?

14           NOW, FOR SOME PARTIES -- AND I AM SURE YOU ALREADY

15   KNOW THIS -- YOU MAY WANT THE SETTLEMENT TO TAKE PLACE

16   BEFORE YOU FILE THOSE MOTIONS FOR SUMMARY JUDGMENT JUST TO

17   SAVE THAT TIME.  OTHER PARTIES FEEL THAT YOU NEED THE

18   BENEFIT OF THE COURT'S RULING BEFORE YOU CAN TALK

19   SETTLEMENT.

20           WHAT'S YOUR POSITION ON THAT?

21           MR. LOOMIS:  YOUR HONOR, IN TERMS OF ESTABLISHING

22   A DEADLINE, I THINK I WOULD PREFER THAT THE COURT SET THE

23   DEADLINE TO FALL AFTER DISCOVERY IS COMPLETED; BUT AS

24   COUNSEL INDICATES, WE DO HAVE A WORKING RELATIONSHIP.

25           IF EITHER OR BOTH OF US REACH A POINT IN THE CASE
```

```
1   WHERE WE THINK IT'S TIME AND THERE'S A PROSPECT TO ACHIEVE

2   SOMETHING BY DOING IT SOONER, WE CERTAINLY COULD DO IT

3   SOONER.  BUT IN CASE THAT DOESN'T ARISE, IT MAKES SENSE TO

4   HAVE THE DEADLINE SET AFTER DISCOVERY SO THAT WE DON'T HAVE

5   TO COME BACK TO THE COURT AND PETITION FOR A CHANGE OF THAT

6   DEADLINE.

7          THE COURT:  HOW ABOUT THE MOTIONS.  SO AFTER

8   DISCOVERY, THAT'S WHAT I ASSUME.  BUT PRIOR TO THE SUMMARY

9   JUDGMENT MOTIONS OR AFTER THE --

10         MR. LOOMIS:  AFTER THE MOTIONS AS WELL.

11         THE COURT:  -- SUMMARY JUDGMENT MOTIONS?

12         MR. LOOMIS:  BY THE SAME REASONING.

13         MR. WEINBERG:  IN TERMS OF SETTING IT, YOUR HONOR,

14   ALTHOUGH IT LIKELY WILL OCCUR EARLIER.

15         THE COURT:  I DON'T RECALL AT THIS MOMENT WHETHER

16   YOU INDICATE A DATE FOR EITHER THE HEARING OR FILING OF THE

17   SUMMARY JUDGMENT MOTIONS.

18         MR. LOOMIS:  NO, WE DID INDICATE THE CONTEMPLATION

19   OF THE MOTIONS AND INDICATE IT WOULD BE -- ELEMENTS SAID

20   THAT THEY INTENDED TO FILE IT AFTER SOME DISCOVERY HAS BEEN

21   CONDUCTED, AND A DATE FOR HEARING WILL BE SET AFTER

22   DISCOVERY COMMENCES.  THAT WAS ELEMENTS' VIEW.

23         THE COURT:  AND THEN THE FACT AND EXPERT DISCOVERY

24   COMPLETION DATE.

25              IN ORDER TO HAVE A TRIAL IN OCTOBER -- SO WE'RE
```

1    KIND OF WORKING BACKWARDS AND SAYING THE PRETRIAL WOULD BE

2    SOMETIME IN SEPTEMBER; THE TRIAL WOULD BE IN OCTOBER; THE

3    SETTLEMENT CONFERENCE WITH THE PRIVATE MEDIATOR PROBABLY IN

4    AUGUST; THE MOTIONS PROBABLY IN JULY -- JUNE OR JULY.  SO

5    THAT WOULD MEAN THAT THE DISCOVERY COMPLETION DATE WOULD

6    HAVE TO BE AROUND APRIL OR MAY.

7            SO IS THAT WHAT YOU WERE THINKING?

8            **MR. LOOMIS:**  WE HAD AGREED ON A NOMINAL OR A

9    TARGET DATE OF JUNE IN THE REPORT, BUT GIVEN THE REVERSE

10   CHRONOLOGY YOU OUTLINED, IT PROBABLY IS MORE REALISTIC AND

11   DOABLE FOR US TO TARGET FOR MAY.

12           IS THAT CONSISTENT WITH YOUR TRIAL CONFLICTS TO

13   LOOK AT A MAY DISCOVERY CUTOFF?

14           **MR. WEINBERG:**  THE ONLY REASON WE'D ASKED FOR JUNE

15   IS BECAUSE I'LL PROBABLY BE COMPLETELY TIED UP THROUGHOUT

16   MAY.  IT'S A VERY LARGE CASE.

17           **THE COURT:**  IN OTHER WORDS, YOU THINK THE

18   NON-EXPERT DISCOVERY COMPLETION DATE SHOULD BE A JUNE DATE

19   RATHER THAN IN MAY?

20           **MR. WEINBERG:**  YES, YOUR HONOR, TOWARD THE MIDDLE

21   OF JUNE.

22           **THE COURT:**  THEN THE EXPERT DISCOVERY COMPLETION

23   ABOUT A MONTH AFTER THE FACT DISCOVERY COMPLETION?

24           **MR. LOOMIS:**  YES, THAT WOULD WORK.

25           **MR. WEINBERG:**  YES.

```
 1              THE COURT:  ALL RIGHT.  THEN THE COURT WOULD SET
 2   THE SCHEDULE AS FOLLOWS:
 3              THE NON-EXPERT DISCOVERY COMPLETION DATE NO LATER
 4   THAN JUNE 15, 2013;
 5              THE EXPERT DISCOVERY COMPLETION DATE JULY 15 -- NO
 6   LATER THAN JULY 15, 2013.
 7              THAT WILL BE FOLLOWED BY THE MOTIONS.
 8              AND I WILL SET A HEARING DATE RATHER THAN A FILING
 9   DATE.  SO THE HEARING DATE, I WOULD PROPOSE AN AUGUST DATE.
10              AND I WOULD ASK THE CLERK TO ASSIST US WITH THE
11   DATE.
12              THE SETTLEMENT PROCEDURE, THEN, WOULD TAKE
13   PLACE -- IT WOULD PROBABLY BE SEPTEMBER.
14              THE PRETRIAL CONFERENCE, THEN, JUST BECAUSE OF THE
15   LOCAL RULES THEMSELVES, THE MEET AND CONFER, AND WHEN THE
16   MEMO OF CONTENTIONS OF FACT AND LAW HAVE TO BE FILED, I
17   THINK PROBABLY AN OCTOBER DATE.
18              THAT WOULD THEN PUT YOUR TRIAL -- AND THE TRIAL
19   COULD STILL BE IN THE LATTER PART OF OCTOBER.
20              SO THAT'S WHAT THE COURT HAS IN MIND.
21              I WOULD ASK THE CLERK TO GIVE US -- AND I'M NOT
22   LOOKING AT A CALENDAR NOW -- A HEARING DATE FOR MOTIONS IN
23   AUGUST.  WE'LL TAKE A MONDAY, AND IT SHOULD BE MID-AUGUST.
24              THE CLERK:  THAT WOULD BE AUGUST 19TH.
25              THE COURT:  THAT WOULD BE AT 10 A.M.
```

```
 1              THE SETTLEMENT CONFERENCE, THEN, SHOULD TAKE PLACE

 2   I WOULD SAY NO LATER THAN ABOUT A MONTH LATER, WHICH I'D SAY

 3   SEPTEMBER 19TH OR 20TH.

 4              IS THAT A WEEKDAY?

 5         THE CLERK:  THAT'S A FRIDAY.

 6         THE COURT:  SEPTEMBER 19TH?

 7         THE CLERK:  SEPTEMBER 19TH IS A THURSDAY.

 8         THE COURT:  OKAY.  SEPTEMBER 19TH.

 9              THE PRETRIAL CONFERENCE WOULD BE IN OCTOBER.  I

10   THINK WE CAN JUST HAVE A WEEK BETWEEN THE PRETRIAL

11   CONFERENCE AND THE TRIAL.  SO MID-OCTOBER.

12         THE CLERK:  OCTOBER 7, AND THEN THE TRIAL COULD BE

13   OCTOBER 22ND.

14         THE COURT:  OCTOBER 7, AND THAT WOULD BE AT 2:30

15   FOR THE PRETRIAL?

16         THE CLERK:  YES.

17         THE COURT:  THEN THE TRIAL WOULD BE OCTOBER --

18              GIVE ME THE DATE AGAIN.

19         THE CLERK:  22ND.

20         THE COURT:  -- THE 22ND.  THAT WOULD BE AT 10 A.M.

21              OKAY.  SO THOSE ARE THE DATES.  I'LL REPEAT THEM.

22              NON-EXPERT DISCOVERY COMPLETION DATE, JUNE 15.

23              EXPERT DISCOVERY COMPLETION, JULY 15.

24              LAST DATE FOR HEARING OF MOTIONS, AUGUST 19.

25   THEY'LL BE NOTICED FOR 10 A.M.
```

```
 1              SETTLEMENT PROCEDURE TO TAKE PLACE NO LATER THAN

 2    SEPTEMBER 19.  YOU CAN CERTAINLY DO IT SOONER, AND YOU CAN

 3    FILE YOUR MOTIONS SOONER AS WELL.

 4              THESE ARE NO-LATER-THAN DATES.

 5              THE PRETRIAL CONFERENCE WOULD BE HELD ON OCTOBER 7

 6    AT 2:30.

 7              AND THE TRIAL OCTOBER 22ND AT 10 A.M.

 8         MR. WEINBERG:  YOUR HONOR, IF I COULD JUST CHECK

 9    ON THE DATES OF THE JEWISH HIGH HOLIDAYS.

10         THE COURT:  THAT'S A GOOD IDEA.

11         MR. WEINBERG:  IT MIGHT BE IN OCTOBER.  I'M JUST

12    NOT SURE YET.

13         THE COURT:  SEPTEMBER, OCTOBER.

14              SO WHY DON'T WE -- I'LL INCLUDE THESE DATES IN THE

15    ORDER BUT GIVE COUNSEL THE OPPORTUNITY TO CONFER ABOUT THE

16    DATES.  IF YOU FEEL THAT DATES NEED TO BE CHANGED IN SOME

17    WAY TO ACCOMMODATE SOMEONE'S SCHEDULE, YOU CAN CERTAINLY

18    FILE A STIPULATION TO THAT EFFECT.

19         MR. WEINBERG:  I'M TOLD BY MY ASSOCIATE THAT WE'RE

20    OKAY.

21         THE COURT:  SO THESE DATES APPEAR TO BE FINE.  WE

22    WILL ISSUE A MINUTE ORDER THAT CONTAINS THE DATES.

23              AND JUST A COUPLE OF OTHER THINGS, THE DATES THAT

24    I HAVE INDICATED ARE NO-LATER-THAN, LIKE THE DISCOVERY

25    COMPLETION, FACT DISCOVERY.
```

```
 1          THAT MEANS THAT IF THERE ARE MOTIONS TO COMPEL --
 2   HOPEFULLY, THERE ARE NONE -- THAT YOU WOULD NEED TO FILE
 3   THOSE MOTIONS, GET A RULING ON THOSE MOTIONS, AND CONDUCT
 4   THAT DISCOVERY SO THAT IT IS COMPLETED NO LATER THAN
 5   JUNE 15TH OF 2013.
 6          MR. LOOMIS:  UNDERSTOOD.
 7          MR. WEINBERG:  THANK YOU, YOUR HONOR.
 8          THE COURT:  ALL RIGHT. THANK YOU.
 9             (11:18 A.M., PROCEEDINGS CONCLUDED.)
10                    --OOO--
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                         CERTIFICATE

2

3           I HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

4    TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

5    CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

6    PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

7    TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

8    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

9

10   DATED THIS 14TH DAY OF MARCH, 2013.

11

12                /S/ MARY RIORDAN RICKEY
                  MARY RIORDAN RICKEY
13                OFFICIAL COURT REPORTER

14

15

16

17

18

19

20

21

22

23

24

25