# EXHIBIT H

Page 1

1             UNITED STATES DISTRICT COURT

2       FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

4  GLOBEFILL INCORPORATED,        )
                                )
5         Plaintiff,            )
                                )
6    vs.                     ) No. 10-CV-2034 CBM (PLAx)
                                )
7  ELEMENTS SPIRITS, INC. AND KIM  )
   BRANDI,                         )
8                               )
        Defendants.           )
9  _____)

10

11

12         DEPOSITION OF BRUCE ISAACSON

13           LOS ANGELES, CALIFORNIA

14           MONDAY, APRIL 22, 2013

15

16

17

18

19

20

21

22  REPORTED BY:
   LESLIE L. WHITE
23  CSR NO. 4148
   JOB NO.: 60554
24

25

Page 2

1
2
3           Monday, April 22, 2013
4               9:54 a.m.
5
6
7       Deposition of BRUCE ISAACSON, held
8   at 12100 Wilshire Boulevard, 15th Floor, Los
9   Angeles, California, before Leslie L. White,
10  CSR No. 4148.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

```
 1    A P P E A R A N C E S:

 2

 3       BAKER & HOSTETLER

 4       Attorneys for Plaintiff

 5          12100 Wilshire Boulevard

 6          Los Angeles, California 90025

 7       BY:  C. DENNIS LOOMIS, ESQ.

 8
              -AND-
 9

10       BAKER & HOSTETLER

11       Attorneys for Plaintiff

12          1050 Connecticut Avenue, N.W.

13          Washington, D.C. 20036

14       BY:  KELU L. SULLIVAN, ESQ.

15

16

17       HOLMES WEINBERG

18       Attorneys for Defendant Elements

19       Spirits, Inc.

20          30765 Pacific Coast Highway

21          Malibu, California 90265

22       BY:  STEVEN M. WEINBERG, ESQ.

23            DAVID TASHROUDIAN, ESQ.

24

25
```

Page 96

1    Q    So what were the results of the Eveready
2  survey you ran?
3    A    There was very little confusion in the
4  Eveready survey.
5    Q    And what question did you ask in the
6  Eveready survey of the respondents that were shown a
7  bottle of the Kah Blanco?
8    MR. LOOMIS:   Now I need -- was your immediately
9  prior question about the Eveready study in this
10 case, not the Monster?
11   MR. WEINBERG:   Yeah, his pilot.
12   MR. LOOMIS:   I thought you were still on
13 Monster Beverage.
14 BY MR. WEINBERG:
15   Q    Just to clarify, what were the results of
16 the Eveready pilot survey that you ran in this case?
17   A    It would be the same as my prior answer.
18 They showed very little confusion with Crystal Head.
19   Q    And what level of confusion was there?
20   A    I don't remember specifically.
21   Q    Did you use a control?
22   A    Yes.
23   Q    And what was the control that you used?
24   A    It would have been one of the controls
25 that I used in this case, and I don't recall which

Page 97

1   one.

2       MR. WEINBERG:  And you have produced, Counsel,
3   all of the documents, including the tabulations in
4   that case?

5       MS. SULLIVAN:  All of them were produced in
6   response to the second Subpoena.  And I think there
7   is one more document that might have either been
8   produced last week by e-mail to you or it's on a
9   disc that is going to come to you today.
10  BY MR. WEINBERG:
11      Q    When was the pilot study run?
12      A    In December of 2012.
13      Q    And with who did you discuss the result of
14  the pilot study at Baker Hostetler?
15      A    With Kelu Sullivan and with John Weber.
16      Q    And as a result of the results in that
17  pilot study, what decisions, if any, were made?
18      A    Well, I recommended that, once we
19  completed the pilot, that something was wrong, and
20  that we shouldn't do any more interviews on the
21  Eveready side.
22      Q    So was the intention to run a full
23  Eveready study, and then kill it if you weren't
24  getting the results that you had hoped for?
25      A    No, that was not the intention.

Page 178

1    visited, can you make a prediction as to what exists
2    in the 40,000-plus liquor stores in the United
3    States?
4        A    I am not interested in the 40,000-plus
5    liquor stores in the United States.  I'm interested
6    in the liquor stores that are most important to
7    Crystal Head.  That was where this was focused, so
8    no.
9        MR. WEINBERG:  Okay, take a break.
10       THE WITNESS:  Thank you.
11           (A recess was taken from
12           2:41 p.m. to 2:47 p.m.)
13   BY MR. WEINBERG:
14       Q    In the scenario that you have posited in
15   paragraph 29 where someone sees a Crystal Head and
16   then encounters a Kah, that scenario includes the
17   situations where people may decide before they get
18   to their tequila that they are going to look at the
19   scotches, they are going to look at cordials, they
20   are going to look at other kinds of spirits that may
21   be on shelves between the Crystal Head and the Kah;
22   is that right?
23       A    I am sorry, what are you asking?
24       Q    Do you understand the question?
25       A    No, I don't understand.  I'm sorry.

Page 179

1   Q   Give it to you in a hypothetical.  It
2   might be easier.
3         I am going to go shopping for premium
4   tequila, okay, and I go into a liquor, and I see a
5   bottle of Crystal Head.  And then I'm also on that
6   shopping trip looking to stock up my bar, and I
7   see -- I buy a vodka right next to that or single
8   malt Scotches, I pick up a single malt Scotch.  I
9   see an after-dinner drink cordial that also would go
10  in my bar, I pick that up, and then I got to Kah
11  tequila.
12        When you say that -- is that kind of
13  situation possible, under the construct that you set
14  up for this survey?
15      MR. LOOMIS:  Under the what?
16  BY MR. WEINBERG:
17      Q   "Construct."
18        Do you understand the question?  I'll make
19  it even easier.
20        Does your survey test someone who has seen
21  Crystal Head and immediately buys Kah tequila or
22  someone who sees Crystal Head and eventually that
23  day or some other day purchases Kah tequila?
24      A   I think what you're asking me is is there
25  an intermediate stimulus between the exposure to

EXHIBIT H

Page 180

1   Crystal Head and the exposure to the line up, and
2   the answer obviously is no to that question.
3       Q    So your situation does not contemplate
4   someone seeing Crystal Head and then shopping for
5   other spirits and then encountering Kah; is that
6   correct?
7       A    I haven't measured that. I don't know
8   what you mean by the word "does not contemplate,"
9   but I don't know whether or not that would be the
10  same or whether or not that would be different to
11  what I measured in my survey.
12      Q    So your survey, as I understand your
13  survey, measures: I see Crystal Head, and then
14  within seconds I counter Kah tequila, amongst other
15  tequilas; is that correct -- amongst other premium
16  tequilas?
17      A    I think you're artificially looking to
18  limit, or the way the statement was phrased -- I
19  don't know if you're looking to do it, but the way
20  the statement was phrased limits in a way that I
21  don't know that I agree with the consumer behavior
22  or the consumer process that we're describing here.
23           We have an exposure to Crystal Head -- in
24  this admittedly simplified version of the universe,
25  we have an exposure to Crystal Head, and then they

Page 181

1  have exposure to a line up that includes Kah, amidst
2  other tequilas.
3      Q    Amidst other premium tequilas.
4      A    Amidst other premium and super premium
5  tequilas; that's correct.
6           And the exposure that I tested, for
7  purposes of simplicity for the survey, was to test a
8  direct exposure of the Crystal Head, then the line
9  up.
10          That doesn't mean that it doesn't
11 contemplate any other scenario, and that doesn't
12 mean that it doesn't not contemplate any other
13 scenario.
14          But there is other line up studies that
15 have been conducted that use this kind of a
16 simplification of real-world events, and I don't
17 want to imply in any way that it doesn't necessarily
18 contemplate these other kinds of scenarios that
19 you're discussing.
20     Q    But you didn't test those other scenarios;
21 is that correct?
22     A    That's correct, I did not test them.
23     Q    And based on materials that you provided
24 to us, it's your understanding that there are
25 consumers who consume tequila and vodka and Scotch

EXHIBIT H

Page 182

1   and cordials and a variety of spirits; isn't that
2   right?
3       A    That's correct.
4       Q    And, for example -- why don't we mark
5   these while we're waiting.  Exhibit 19 is a
6   multi-page document that starts with G323.
7           (Exhibit 19 was marked for
8           identification by the Reporter.)
9       MR. LOOMIS:  Is it consecutive to the end?
10      MR. WEINBERG:  Yes, this is 19.
11      MR. LOOMIS:  But 323, 324, 325?  Got it.
12      MR. WEINBERG:  Let's mark as 20 a multi-page
13  document, starting with 233, ending in 236.
14          (Exhibit 20 was marked for
15          identification by the Reporter.)
16      MR. WEINBERG:  And as 21 let's mark as a
17  multi-page document with consecutive pages,
18  beginning with G12.
19          (Exhibit 21 was marked for
20          identification by the Reporter.)
21  BY MR. WEINBERG:
22      Q    Dr. Isaacson, these exhibits we have just
23  marked 19 to 21 were produced by your counsel as
24  part of the production relating to your Subpoenas.
25          Do you recognize these documents?

EXHIBIT H

```
                                                              Page 302
 1                      *   *   *
 2
 3
 4    I, DECLARE UNDER PENALTY OF PERJURY THAT THE
 5    FOREGOING IS AN ACCURATE TRANSCRIPTION OF MY
 6    TESTIMONY UNDER THE LAWS OF THE STATE OF CALIFORNIA,
 7    EXECUTED ON THE _____ DAY OF _____,
 8    _____.
 9
10
11                              _____
12                                   BRUCE ISAACSON
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 303

```
1              REPORTER'S CERTIFICATE

2                      OF

3          CERTIFIED SHORTHAND REPORTER

4

5              * * * * * * *

6

7

8   I, THE UNDERSIGNED CERTIFIED SHORTHAND REPORTER, IN

9   AND FOR THE STATE OF CALIFORNIA, DO HEREBY CERTIFY:

10  THAT THE FOREGOING PROCEEDINGS WERE TAKEN BEFORE ME

11  AT THE TIME AND PLACE THEREIN SET FORTH, AT WHICH

12  TIME THE WITNESS WAS PUT UNDER OATH BY ME; THAT THE

13  TESTIMONY OF THE WITNESS AND ALL OBJECTIONS AT THE

14  TIME OF THE PROCEEDINGS WERE RECORDED

15  STENOGRAPHICALLY BY ME AND WERE THEREAFTER

16  TRANSCRIBED UNDER MY DIRECTION; THAT THE FOREGOING

17  IS A TRUE RECORD OF THE TESTIMONY AND OF ALL

18  OBJECTIONS MADE AT THE TIME OF THE PROCEEDINGS.

19

20

21  IN WITNESS WHEREOF, I HAVE SUBSCRIBED MY NAME ON:

22
    DATE: April 29, 2013
23

24  _____

25       LESLIE L. WHITE, CSR NO. 4148
```

Page 304

1   NAME OF CASE:   Globefill Incorporated v. Elements Spirits, Inc.

2   DATE OF DEPOSITION:   4/22/13

3   NAME OF WITNESS:   Bruce Isaacson

4   Reason Codes:

5       1.   To clarify the record.
        2.   To conform to the facts.
6       3.   To correct transcription errors.

7

8   Page _____   Line _____   Reason _____

9   From _____ to _____

10  Page_____    Line _____   Reason _____

11  From _____ to _____

12  Page _____   Line _____   Reason _____

13  From _____ to _____

14  Page_____    Line _____   Reason _____

15  From _____ to _____

16  Page _____   Line _____   Reason _____

17  From _____ to _____

18  Page_____    Line _____   Reason _____

19  From _____ to _____

20  Page_____    Line _____   Reason _____

21  From _____ to _____

22

23                                  _____

24                                  BRUCE ISAACSON

25

EXHIBIT H