1
UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
2
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION
3
- - -
4
HONORABLE CONSUELO B. MARSHALL,
UNITED STATES DISTRICT JUDGE PRESIDING
5
- - -
6

GLOBEFILL INCORPORATED, a        )
7  Canadian corporation            )
                                   )   CERTIFIED COPY
8            PLAINTIFF,            )
                                   )   CV 10-2034 CBM
9  VS.                             )
                                   )
10 ELEMENTS SPIRITS, INC., a       )
   California corporation, and     )
11 KIM BRANDI, an individual,      )
                                   )
12           DEFENDANTS.           )
   _____)
13

14

15
TRIAL DAY ONE
REPORTER'S TRANSCRIPT OF PROCEEDINGS
16
TUESDAY, MARCH 14, 2017
A.M. SESSION
17
LOS ANGELES, CALIFORNIA

18

19

20

21
SHERI S. KLEEGER, CSR 10340
22
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 402
23
LOS ANGELES, CALIFORNIA 90012
PH:  (213)894-6604
24

25

1

2

3    APPEARANCES OF COUNSEL:

4    ON BEHALF OF PLAINTIFF:
             BERG & ANDROPHY
5            BY:  DAVID BERG, ESQUIRE
                  ZENOBIA HARRIS BIVENS, ATTORNEY AT LAW
6                 MICHAEL M. FAY, ATTORNEY AT LAW
                  3704 TRAVIS STREET
7                 HOUSTON, TEXAS  77002-9550

8            BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
             LINCENBERG & RHOW, P.C.
9                  BY:  HERNAN D. VERA, ESQUIRE
             1875 CENTURY PARK EAST
10           23RD FLOOR
             LOS ANGELES, CALIFORNIA  90067-2561
11
     ON BEHALF OF DEFENDANT:
12           CRAVATH, SWAINE & MOORE LLP
             BY:  THOMAS G. RAFFERTY, ESQUIRE
13                KEITH R. HUMMEL, ESQUIRE
             825 EIGHTH AVENUE
14           NEW YORK, NY  10019

15           LTL ATTORNEYS LLP
             BY:  JAMES M. LEE, ESQUIRE
16

17

18

19

20

21

22

23

24

25

```
 1          LOS ANGELES, CALIFORNIA; TUESDAY, MARCH 14, 2017

 2                        A.M. SESSION

 3                          -  -  -

 4

 5              (IN THE PRESENCE OF THE

 6              PROSPECTIVE JURY PANEL.)

 7          THE CLERK:  Ladies and gentlemen of the jury,

 8    please rise and raise your right hand.

 9    Do you solemnly swear that you will well and truly try

10    the cause now pending before this Court, and a true

11    verdict therein render according to the evidence and the

12    instructions the Court, so help you God?

13              THE JURORS:  Yes.

14              THE CLERK:  Thank you.  Please have a seat.

15    You may be seated.  Item No. 5, Civil Case 10-2034:

16    Globefill Incorporated versus Elements Spirits.

17              Counsel, state your appearances at the

18    lectern.

19              MR. BERG:  David Berg for Globefill, with an

20    announcement of ready, Your Honor.

21              THE COURT:  Good morning.

22              MR. BERG:  Good morning.

23              MS. BIVENS:  Good morning, Your Honor.

24              Zenobia Harris Bivens for Globefill.

25              THE COURT:  Good morning.
```

```
 1                  MR. VERA:  Good morning, Your Honor.

 2                  Hernan Vera for the plaintiff as well.

 3                  THE COURT:  Good morning.

 4                  MR. FAY:  And, Your Honor, Michael Fay for

 5     the plaintiff.

 6                  THE COURT:  Good morning.

 7                  All right.  Defense.

 8                  MR. HUMMEL:  Good morning, Your Honor.

 9                  Keith Hummel for Elements Spirits, one of

10     the defendants.

11                  THE COURT:  Good morning.

12                  MR. RAFFERTY:  Good morning, Your Honor.

13                  Tom Rafferty for Elements Spirits as well.

14                  Good morning.

15                  THE COURT:  Good morning.

16                  MS. RETTIG:  Good morning, Your Honor.

17                  Rebecca Rettig for defendant Elements

18     Spirits, as well.

19                  THE COURT:  Good morning.

20                  MR. MILLER:  Good morning, Your Honor.

21                  Jon Miller for defendant Kim Grace -- Kim

22     Brandi.

23                  THE COURT:  Good morning.

24                  So we have prospective jurors seated out in

25     the audience.  And good morning to you as well.  So let
```

1    me explain what we're going to be doing this morning.

2              So I realize that jurors are instructed to

3    report fairly early on Tuesday, so I think I probably

4    saw some of you in line when I arrived here a little

5    after seven.  So what that tells me is that we need a

6    lunch break, so we will be breaking for lunch.  So we're

7    going to have about a two-hour session.

8              So it's now 10:30.  So at 12:30, we will

9    recess for lunch.  You will have an hour and a half.

10             Now, some of you may feel generally feel we

11   don't need an hour and a half.  We generally allow an

12   hour and a half on Tuesday because there are other

13   jurors in the courthouse all trying to maybe eat at the

14   same place, or even if you go outside.  And you can

15   certainly do that.  And if it's beautiful, I encourage

16   you to do that, take a little walk.  You will have

17   enough time.  The places close to the courthouse also

18   may be crowded, and it may take longer to get your

19   lunch.  So the break will be about an hour and a half.

20             Then you will return and we'll continue the

21   jury selection process, and that is at process we are

22   engaging in this morning, trying to select a jury for

23   the case.

24             So before we even start that process, before

25   you meet the attorneys and hear about the nature of the

1    case and hear the names of witnesses who may be

2    testifying, this is a case that we are going to have

3    some days that we will not be in session.  So I want to

4    advise all of you about that.

5            The counsel already know.  But for some of

6    the prospective jurors, you may be available this week

7    but only available this week.  So you may not be able to

8    serve on a case that's going to have some periods of

9    recess.  So I want you to listen, and if you have

10   questions about what day of the week is that or anything

11   like that, I can answer those for you.

12           And I'm just going to ask to see a show of

13   hands, once I give you the schedule, of anyone who

14   thinks it would cause an undue hardship if you were

15   asked to serve on a case, understanding the schedule.

16           One of the other things that you need to

17   know, I am only talking about the period of time that

18   evidence will be presented and closing arguments will be

19   made.  How long it takes the jury to deliberate in any

20   given case is for the jury to decide.  So I don't try to

21   include that in my time estimate.

22           So even after all the evidence is in, you've

23   heard the arguments of the attorneys, the instructions

24   on the law, then the case is given to the jury, you

25   commence deliberating.  So that may consume more time,

1    short amount, a long amount.  But there's no way for me

2    to include that in the time estimate, but I want you to

3    consider what may be going on in your private lives that

4    may create an undue hardship for you if you have to

5    spend additional time.

6             So first, I have the benefit of the calendar

7    and you don't, unfortunately, but I can tell you what I

8    expect will happen this week.

9             I need counsel to just advise me in my order

10   to counsel indicating what days the Court would be in

11   session.  I indicated that I actually do have about two

12   hours on Thursday morning.  It may be that you will --

13   you may need that time because there is a witness that

14   you scheduled maybe for Thursday morning, that witness

15   is only available for Thursday morning and we could

16   complete that witness in two hours.  I don't know if

17   that's the case.

18            But if counsel could advise me, do we need

19   to be in session on Thursday morning to accommodate a

20   witness' schedule?

21            MR. BERG:  Your Honor, we have a witness who

22   is unable to come next week because of the illness of

23   his wife.  And I'm going to have to check and see if we

24   can bring him Thursday instead of Friday, as we had

25   planed.

```
 1              THE COURT:  Okay.
 2              MR. BERG:  And I'll let the Court know as
 3    soon -- and in fact, I can have someone check on that
 4    now, if I might, from the back.
 5              THE COURT:  And do you think that we could
 6    complete that witness' testimony, all of the testimony
 7    that that witness may be providing, within a two-hour
 8    period?
 9              MR. BERG:  No question, Your Honor.
10              THE COURT:  All right.  And I don't know if
11    defendants know who this person is, but counsel can just
12    off the record tell them who it is.  And if they feel
13    that we could complete in two hours, then we will plan
14    on a Thursday morning session.
15              MR. BERG:  Thank you, Your Honor.
16              MR. HUMMEL:  Your Honor, Mr. Berg just
17    whispered the name to me, and we certainly could do that
18    witness in two hours.
19              THE COURT:  All right.  So for the jurors,
20    so we will be in session today.  We will be in session
21    tomorrow.  Tomorrow being Wednesday.
22              We will have at least a two-hour session on
23    Thursday.  There will be no session on Friday of this
24    week.  And Friday happens to be the 17th of March.  No
25    session.
```

1           Then when we get to next week, we will not

2    have a session on Monday.  Generally not in session with

3    jurors on Monday.  So no Monday session.  Monday is the

4    20th.

5           There will be a session on Tuesday, which is

6    the 21st.  We will be in recess on Wednesday, which is

7    the 22nd.  So the jury would not be reporting on that

8    day.  We will be in session on the 23rd, which is next

9    Thursday, and the 24th, which is next Friday.

10          If necessary -- and I don't know that it

11   will be necessary -- we may have presentation of

12   evidence that last week in March, the 28th, which is

13   Tuesday.  The 29th, which is Wednesday.  30th is

14   Thursday.  31st is Friday.

15          So I don't know that we will need all of

16   this time, but those are dates that the jury would have

17   to be available, if you are selected for this case.

18          As I've indicated, if we gave the case to

19   the jury, say, on the 31st of March, the jury's heard

20   all the evidence, heard the arguments, heard the

21   instructions of law, then the jury would commence

22   deliberating maybe that same day, the 31st.

23          If you reached a verdict, then you would be

24   excused.  If you have not reached a verdict, and needed

25   additional time to deliberate, you would be returning on

1    Tuesday, April 4th.  That is the first week in April.

2    And then the jury will have all the time that it needs.

3    I don't have any other days that we would not be

4    available.

5              So that is the proposed schedule at this

6    time.  So, therefore, the first question that I would

7    like to have you answer is if that is the schedule,

8    those are the days that you will be here, those are days

9    that you will not be here, would that schedule cause an

10   undue hardship on anyone?

11             I'm not now talking about hours.  I'm only

12   talking about days.  And of course we're not in session

13   on weekends, nor would we in session on holidays.  But I

14   don't think there are any holidays during this period.

15             So first, do you want me to repeat the days

16   again?  Anybody not quite clear on what these days are?

17   Just raise your hand and I can repeat.

18             Okay.  A couple of people.

19             So again, listen carefully.  So today is the

20   14th of March, it is Tuesday.  We will be in session all

21   day today.

22             Tomorrow, the 15, Wednesday, we will be in

23   session.

24             Thursday, the 16th, at least two hours.  And

25   you may be excused after a two-hour session on Thursday.

```
 1                    No session on Friday of this week,
 2      March 17th.
 3                    The next session would be next Tuesday,
 4      March 21st.
 5                    No session on the 22nd of March, which is
 6      next Wednesday.
 7                    We will be in session on March 23rd and
 8      March 24th.  That's the Thursday and Friday of next
 9      week.
10                    If necessary, in order to complete the
11      presentation of evidence, the session would be Tuesday,
12      March the 28th; Wednesday, March 29th; March 30th;
13      March 31st.
14                    If the case were given to the jury on the
15      31st, then the jury would be deliberating and maybe
16      would go into the first week of April.
17                    As I said, I can't tell you whether that
18      would be necessary, because the case would be yours and
19      you would deliberate as long as you needed to in order
20      to reach a verdict or otherwise be excused.
21                    Everybody understand the days that you will
22      be here and the days that you would not be here?  If
23      there is anybody who doesn't, raise your hand.
24                    Okay.
25                    Now what I would like to see is just a show
```

1    of hands.  I don't need to know at this point why.

2              But is there anyone who believes it would

3    create an undue hardship on you if you were selected as

4    a juror in this case and expected to be here on the days

5    indicated?

6              So I'm going to ask the clerk to do -- keep

7    your hands up, please.  The clerk will count, and also

8    the clerk will tell me how many jurors we have.

9              And counsel may look at the audience too, to

10   the extent that it's important for you to know who

11   thinks it would cause an undue hardship.

12             So the clerk tells me -- so you may put your

13   hands down now.  We only had 20 jurors to report, and 12

14   of those have indicated it would be an undue hardship.

15             The next question I would ask the clerk, do

16   we have additional jurors in the jury assembly room?

17   And you may need to make a call and you may need to

18   inquire as to how many we have.

19             And for counsel, the Court's intent would be

20   to select eight jurors.  So could I ask counsel to just

21   approach sidebar.  I don't need everyone.  I just need a

22   decision maker.

23             (SIDEBAR.)

24             THE COURT:  New space and trying to get

25   accustomed to it.  So 12 persons indicated it would

1   cause an undue hardship, and we only have 20, so that

2   would only leave us with eight.  There is no room for

3   challenges for cause or preponderances.

4          I understand there are 36 additional jurors

5   that could be brought up to the courtroom.  I would ask

6   the same question.  I don't know how many of them we

7   would lose.  So my question of you, I can excuse the 12

8   without questioning them or I can question them

9   individually.  So I just don't know if you have any

10  preference.

11          MR. BERG:  I have no preference.

12          THE COURT:  Anybody?

13          MR. HUMMEL:  I don't have any preference.

14          MR. RAFFERTY:  No preference.

15          THE COURT:  You saw the ones that would be

16  an undue hardship.  Sometimes counsel just wants to see

17  who they are.  For whatever reason that might be, you

18  want to know that.  So I think I will excuse these 12.

19  I will ask the jurors to -- office to send us more.

20          I ask the same question, if it looks like we

21  are going to lose the same number, then I'll have to do

22  it individually, unless you have some other suggestions.

23          MR. BERG:  I have a question.  I can't tell

24  by my chart who's sitting where.  There's a woman

25  sitting to my left, who I thought was number one, but

1    the next name is a man, and there's a woman sitting next

2    to it.  Is there a way for us to tell?

3              THE COURT:  I don't know.

4              MR. BERG:  How can we tell who's sitting

5    where?  We have a list, but we don't know who is sitting

6    where.

7              THE CLERK:  It's just the list.

8              MR. HUMMEL:  Randomly.

9              THE COURT:  The way they are seated in the

10   courtroom has no significance how they would be seated

11   in the box.

12             Is that right, Yolanda.

13             MR. BERG:  At some point.

14             THE COURT:  Of course.

15             THE CLERK:  It will be announced.

16             MR. BERG:  We could take the first 12.

17             THE COURT:  We'll see.

18             My plan would be at this point, without

19   listening to why they believe it would be an undue

20   hardship, I would just be excusing those 12 people and

21   ask the jury office to send more jurors up.

22             I probably ask to send us a bigger panel.

23   They only sent us 20.  I would ask at least 36.

24             MR. MILLER:  Your Honor, with the scattered

25   schedule, I have a problem with the 24th.  If it's a day

```
 1   of trial that -- that I could probably -- relatively
 2   small role, and I don't want to stop our momentum.  I
 3   have post-trial motions down in San Diego, and it's
 4   pretty important to my client that I be there.
 5              THE COURT:  You may not be there that day,
 6   so we'll see.
 7              MR. MILLER:  We'll see.  If it's not -- my
 8   client is not the witness and not closing, I might be
 9   able to bring someone up here to occupy my seat.
10              THE COURT:  I'm not going to include that
11   day.  We may not have a session.
12              MR. MILLER:  If it was anything other than
13   post-trial motions, I have no one there but me.
14              THE COURT:  Okay.  All right.  Thank you.
15              No objection to just excusing those 12 who
16   raised their hands and get some more up here?
17              MR. HUMMEL:  I think there is no objection.
18              MR. BERG:  No objection.
19              THE CLERK:  Walk around.
20              (SIDEBAR CONCLUDED.)
21              THE COURT:  We are back on the record.
22              So the clerk tells me there are 12 of the
23   prospective jurors who have raised their hand, as it
24   would cause an undue hardship for you to work the
25   schedule that I've indicated.  So at this point, I'm
```

1    going to excuse the 12, and I'm not going to ask for

2    reasons why.

3              We will get more jurors from the jury

4    office.  I will make the same inquiry.  If it looks like

5    we're losing too many, then I will have to ask each

6    juror what your reason is.  So I may decide that it's

7    not a basis for the excuse, whatever that reason is.

8    But for these 12 I'm not going to inquire.

9              You will be going back to the jury office,

10   and they will send -- or the jury assembly room -- and

11   they will send additional jurors to this courtroom.  So

12   now I just want to make sure that we don't have more

13   than 12.  So could I ask those on the first row to stand

14   who raised your hand.  Just that first row.

15             Okay.

16             All right.  Second row, please, if you

17   raised your hand please stand.  The first row may be

18   seated.

19             Thank you.

20             Next row, please.

21             Okay.  Was that where all of our jurors were

22   seated, Yolanda, in that section?

23             Okay.

24             All right.  So it looks to me like 12.  Is

25   that the count that the clerk got when they stood?

```
 1              THE CLERK:  I see 13.
 2              THE COURT:  You got 13.  So is there someone
 3    who stood who did not raise your hand initially?
 4              Okay.  Apparently not.
 5              So it would be 13.  So the clerk will get
 6    your names.  You will be going back to the jury assembly
 7    room.  You're not excused from jury duty.  You may be
 8    sent out on another case, and the time for that case may
 9    be even different from this one.  Longer.  Different
10    days.  And you may not be excused from that case.  So I
11    am only excusing you from courtroom, this case, and you
12    will go back to the jury assembly room.  Thank you.
13              So I will ask the clerk get their names, or
14    whatever you need to do.
15              THE CLERK:  Don't leave yet.  Just a moment.
16              THE COURT:  So she's going to make a phone
17    call first before you leave.  And I think she will have
18    to identify you in some way so we'll know who's here and
19    who's not here.
20              So I can just share with you, we had a jury
21    trial the last couple of weeks, and so we had some days
22    in, some days out.  That jury actually liked it.  It
23    permitted people to take a break from listening to
24    evidence, do something else, then come back another day.
25    So it's not necessarily bad, it's just a question as to
```

```
 1   whether you would be available.

 2            Those jurors have been excused.  I think the

 3   clerk has notified the jury office that we need

 4   additional jurors, and they should send us at least 20.

 5            So while we're waiting for those other

 6   jurors, there isn't anything that we can do right now.

 7   So if anybody wishes to stand and stretch, feel free to

 8   do so.  If anyone needs to step out of this room, you

 9   may step out.  We hope the other jurors will report

10   momentarily.

11            THE CLERK:  This Court is in recess.

12            (RECESS TAKEN.)

13            THE CLERK:  Ladies and gentlemen of the new

14   panel, please rise and raise your right hand.

15            (PROSPECTIVE JURORS SWORN.)

16            THE PROSPECTIVE JUROR:  Yes.

17            THE CLERK:  Thank you.

18            THE COURT:  Good morning to those of you who

19   are just joining us.  I will be addressing you

20   momentarily.

21            I want to ask the clerk, how many additional

22   jurors did we get?

23            And then how many from the previous group

24   before we excused?

25            THE CLERK:  Seven.
```

```
 1              THE COURT:  We have 27 total.  For those who
 2    are just joining us -- so this is not intended for those
 3    of you who were already in the courtroom earlier, you've
 4    heard this speech.  So I'm just really talking to the
 5    new jurors.
 6              Without really saying anything about the
 7    case, what I really want you to know is about the
 8    schedule.  And so the questions that you will be
 9    answering is, if you work the schedule based upon the
10    information that I will provide, will it cause an undue
11    hardship for you just because of the schedule?
12              So I'm going to tell you the days when we
13    will not be in session, and I will ask you just to
14    listen, and then you will be able to tell me, This may
15    or may not cause an undue hardship to me.  And the
16    reason that I'm raising the question is because we won't
17    be in session every day.  That means that we will go
18    into future weeks that you may not be available or you
19    may.
20              So we are in session today, and we will
21    remain in session today.  Today is March the 14th.  We
22    will also be in session tomorrow, March the 15th.  We
23    will have a session on Thursday, March the 16th, but
24    probably not all day.  But we will not be in session
25    Friday, March the 17th.  So that is the first day.  No
```

1   session Friday, March the 17th.

2          We will next be in session next Tuesday,

3   which is March the 21st.  We will not have a session on

4   Wednesday, March the 22nd.

5          But we will be in session next Thursday, the

6   23rd, and next Friday the 24th.

7          If necessary, and I don't know that it will

8   be, but for planning, if necessary, we will be in

9   session the last week of March.  March the 28th is

10  Tuesday.  The 29th, the 30th and the 31st.

11         Now, at some point the jurors will have

12  heard all the evidence in the case.  And the argument of

13  the attorneys and the instructions of law.  At that

14  point, we give the case to the jury to commence

15  deliberating.

16         I have not included in that -- deliberation

17  time has not been included in any of the dates that I

18  have given you, because I don't know how long it will

19  take you to deliberate.  That is for the jury to decide

20  once you get the case.

21         So if we were to give the case to the jury

22  on March 31st or even sooner, the jury would commence

23  deliberating.  I don't know how long that would take.

24         So that's something that you need to

25  understand, that I can't tell you when you will be

```
 1    excused from this case.  There is no way for me to know

 2    that.

 3              All I can tell you are the days that we will

 4    be in session or not in session.

 5              So first question I would ask, and that's

 6    for those new jurors who have just joined us, not the

 7    seven who were here earlier.  For those who just joined

 8    us, could I see a show of hands first if you understand

 9    the schedule?  Anybody who didn't hear or you're just

10    unclear, then raise your hand.

11              So we have one person that I think is

12    saying, I don't understand the schedule.

13              THE JUROR:  No, I do.  I missed one date.  I

14    have March 17th and March 22nd off.

15              THE COURT:  Let me repeat.  We will not be

16    in session on March the 17th.  We will not be in session

17    on March the 22nd, which is next Wednesday.  Those are

18    the only dates that --

19              THE PROSPECTIVE JUROR:  Okay.  I got them

20    both.

21              THE COURT:  I think everybody understands

22    when we will be here and when we will not be here.

23    Obviously not here on the weekends.  Not here on

24    holidays, but I don't think we have any holidays within

25    that period.
```

1          So my next question is:  Is there anyone who

2   believes it would cause an undue hardship on you if you

3   were asked to serve, knowing the schedule of the case?

4          And I just want to see hands.  So some

5   examples of undue hardship may be things like:  I have a

6   vacation planned, I have already paid for it.  The

7   ticket is not refundable.  So I would lose money.  That

8   may -- that's just kind of an example of an undue

9   hardship.

10          Now, could I see a show of hands who think

11   it would cause an undue hardship.  And I will just ask

12   the clerk to help me count.

13          THE CLERK:  Eight.

14          THE COURT:  I think we can start.  Some of

15   you might be excused during this process for various

16   reasons.  But at this point, I'm not going to excuse

17   anyone else.  So we are going to start jury selection.

18          At this time, the clerk will call your name.

19   And when your name is called, you are going to occupy

20   the jury box that you see to my left that has the gray

21   chairs.  And the clerk will tell you where the first

22   juror to be selected will be seated.

23          And she will also designate where other

24   jurors may be seated within the box.

25          So for now when your name is called you will

```
 1   take a seat in the jury box.
 2              THE CLERK:  Bruce, Batten, B-A-T-T-E-N. Come
 3   this way.  All the way to the first row.  And go all the
 4   way to the back.
 5              Jennifer Martinez, M-A-R-T-I-N-E-Z.
 6              Sanjay Vasandani, V-A-S-A-N-D-A-N-I.
 7              THE COURT:  Could the clerk spell the name
 8   again, please.
 9              THE CLERK:  Vasandani, V-A-S-A-N-D-A-N-I.
10              Joshua Aaron Massi, M-A-S-S-I.
11              Kevin Van, V-A-N.
12              Rosa Hernandez, H-E-R-N-A-N-D-E-Z.
13              Raymond Gross, G-R-O-S-S.
14              Cindy Benadivez, B-E-N-A-D-I-V-E-Z.
15              THE COURT:  Spell the name, again, please.
16              THE CLERK:  B-E-N-A-D-I-V-E-Z.
17              THE COURT:  So we now have eight prospective
18   jurors in the box.  And I will give some information to
19   all of you.  So my comments are intended for all; those
20   who are in the audience, those who are in the box,
21   because you are all prospective jurors on this case.
22              I will have some questions that I will
23   propound to those who are seated in the box.
24              For those of you who are in the audience,
25   not in the box, you must listen to every question that's
```

```
1    being asked.  You must be prepared to answer that
2    question if asked of you.  Because generally what we
3    find is the first eight who are seated are not
4    necessarily the same eight who will constitute the jury
5    in the case.
6              So some of those who are seated in the box
7    now may be excused for various reasons.  And one of you
8    will replace the one who is excused.
9              So that it is not necessary for me to repeat
10   every question that I have propounded to the eight in
11   the box, I ask that all of you in the audience just
12   listen to the questions.  You have pencil and paper so
13   you may make notes.  So that if you chosen to be seated
14   in the box, you will be able to tell me your response to
15   some of these questions.  So it is important that you
16   listen.
17             We are going to break for lunch and --
18   because I know that you arrived here very early, and you
19   are accustomed to having lunch, then you need to break
20   for lunch.  I will decide just when to do that.  Just
21   trying to be as efficient as I can.  The lunch break
22   will be about an hour and a half.
23             You will return from lunch back to this
24   courtroom and we will continue the jury selection
25   process.
```

```
 1              So first let's start with:  Who are the
 2    attorneys in the case?  Who represents the parties?
 3    Just so that you can see them.  The purpose for that
 4    would be for you to tell me whether you recognize any of
 5    them as someone that you know.  You may have read about
 6    them or just seen them and think you know them.  And I
 7    will be inquiring of the eight in the box as well as in
 8    the audience whether you believe that you know or
 9    recognize any of the lawyers who are going to be
10    representing the parties in the case.
11              I can tell you it is a civil case, and
12    that's why we have seated eight, as opposed to a
13    criminal case where we would seat 12.
14              So I will hear the introductions now.  Just
15    indicate your name.  You'll step to the lectern for that
16    purpose.  Try to make sure that those in the audience
17    see you as well as those in the box.  And you'll
18    indicate the parties that you represent.
19              MR. BERG:  Your Honor, ladies and gentlemen
20    of the panel, my name is David Berg.  And I represent a
21    company called Globefill which is owned by Danny Aykroyd
22    and John Alexander, the two gentlemen here.
23              MS. BIVENS:  Hi, my name is Zenobia Harris
24    Bivens, and I also represent the plaintiffs, Dan Akroyd
25    and John Alexander and Globefill.
```

```
 1                    MR. FAY:  Hi.  My name is Mike Fay.  I also
 2      represent Globefill with my colleagues here.
 3                    MR. VERA:  Good morning, my name is Hernan
 4      Vera.  I also represent the plaintiff Globefill.
 5                    MR. HUMMEL:  Good morning, ladies and
 6      gentlemen.  His name is Keith Hummel, I represent the
 7      defendant Elements Spirits.
 8                    MS. RETTIG:  Good morning, everyone.  My
 9      name is Rebecca Rettig.  I also represent defendant
10      Elements Spirits in this matter.
11                    MR. RAFFERTY:  Good morning, everyone.  My
12      name is Tom Rafferty.  I also represent Elements Spirits
13      in this matter.
14                    MR. MILLER:  Good morning.  My name is John
15      Miller.  I represent the individual defendant Kim
16      Brandi.
17                    MR. HUMMEL:  One more, Your Honor.
18                    MR. DENNING:  Good morning, ladies and
19      gentlemen.  My name is Nathan Denning, and I also
20      represent the defendant Elements Spirits.
21                    THE COURT:  So now you have heard the names
22      of those attorneys who will be representing the parties
23      in the lawsuit.
24                    And the clerk -- when the clerk called the
25      case, and you may not have noticed, the plaintiff in the
```

```
 1    lawsuit is Globefill Incorporated.  And so you have met

 2    those attorneys.  The defendant in the law suit,

 3    Elements Spirits, Inc. and Kim Brandi.  B-R-A-N-D-I.

 4              So those are the parties to this lawsuit.

 5    And I will inquire, any of the prospective jurors think

 6    you recognize any of these attorneys, just the attorneys

 7    who have introduced themselves, as someone that you may

 8    know, you read something about them, you've heard

 9    something about them.

10              First the eight in the box, raise your hand

11    if you recognize them as someone that you know or you

12    think you know something about them.

13              THE COURT:  Okay.  We have one of our

14    prospective jurors.  And if we can give the portable

15    mic.  And I ask the juror to state his name for the

16    record.  Spell the last name.  And then tell us who you

17    recognize.

18              THE PROSPECTIVE JUROR:  My name Bruce

19    Batten, B-A-T-T-E-N.

20              And I recognize some of the plaintiff from

21    this morning when I came into the building.  Then the

22    reason why I'm speaking out is because I heard them make

23    some comments regarding a protestor that was outside the

24    building that I didn't find very appropriate.

25              THE COURT:  So I may ask you further
```

```
 1    questions about that later.
 2              THE PROSPECTIVE JUROR:  Sure.  Thank you.
 3              THE COURT:  Anybody else in the box that you
 4    think you may recognize those lawyers who have
 5    introduced themselves?
 6              How about in the audience?  Anybody think
 7    you recognize any of the lawyers?  You might have seen
 8    them this morning when you entered the building, or you
 9    heard their name someplace associated with something.
10    Or you've just seen them here in the courthouse.  Anyone
11    in the audience?  Raise your hand if that's the case.
12              No hands are raised.
13              THE COURT:  So now I'm going to read to you
14    a statement of the case, it is just a statement that's
15    intend to help you understand the nature of the case so
16    that you can understand why certain questions may be
17    asked.
18              So the plaintiff filed this lawsuit against
19    the defendants for trade dress infringement.  This means
20    that the plaintiff is claiming legal rights in its trade
21    dress, which is a skull-shaped bottle, and that the
22    defendants have violated the plaintiffs' rights in that
23    trade dress.  This is what the plaintiff claims.
24    Specifically, the plaintiff is claiming the defendants
25    are selling their products, products that belong to the
```

defendants in a manner likely to cause confusion as to
the origin or quality of the plaintiffs' or defendants'
goods among consumers.

In other words, one the issues is, the way
that the products are being displayed or sold, is it
likely to cause confusion among consumers?

The defendants deny the plaintiffs' claims
and assert that their bottle is not likely to cause
confusion as to the origin or quality of the plaintiffs
or the defendants' goods among consumers.

That is the statement of the case, that's
not evidence. I have read that statement to you.
Hopefully it helps you understand the nature of this
case and why certain questions may be asked at this
time.

Next, I would ask -- and we'll start with
the plaintiffs -- and the reason we start with the
plaintiffs, is the plaintiff brought the lawsuit, so
they have the burden of proof. So that is a starting
place for us.

The Court would like for counsel to state
the names of those persons who may be called as
witnesses in the case. He's just reading off the list
of names. Or any names that may be mentioned during the
trial.

1          So this person may not be called as a

2    witness, but the name is going to be mentioned.  And the

3    purpose for this is I'll make the same inquiry of you.

4          First, those in the box I'll ask:  Do you

5    recognize any of these names as someone that you may

6    have heard something about, read about or even know?

7    Sometimes names are just common names.  So there might

8    be several people that have that same name, and that

9    person may not be associated with this case in any way.

10          But if you recognize the name, then I would

11    want you to tell me "I recognize that name."  Then I

12    would probably ask you to describe that person that you

13    believe may be associated with that name, or tell me why

14    you know that name or recognize that name.

15          And you will tell me that.  And then I'll be

16    able to tell you it is not the same person or maybe it

17    is the same person.

18          So we'll start with the plaintiff, the

19    plaintiff will read the names of those who you expect

20    will be testifying at trial or their depositions may be

21    used or their names may be referenced, even though they

22    are not going to be appearing here to testify.

23          MS. BIVENS:  Thank you.

24          Dan Aykroyd, Jonathan Hemmi, Christina

25    Capaleni, Elise Glickman, Lucia Crone, George Alvarez,

1    David Brown, Dr. Bruce Issacson, Frederica Cabbo, Grace

2    Kim Brandi.

3              That's it, Your Honor.

4              THE COURT:  So let me inquire first of the

5    12 in the box.  And I will ask counsel:  Did you include

6    the names of persons who may not appear as witness but

7    their depositions may be used or their names may be

8    mentioned by some other witness?  Did you include those

9    names as well?

10              MS. BIVENS:  Excuse me, Your Honor, can you

11    repeat that.

12              THE COURT:  Did you include the names of

13    persons who may not be here as witnesses but their

14    depositions may be used or their names may be

15    referenced?

16              MS. BIVENS:  Gilberto Escarcega.  And also I

17    forgot to mention John Alexander.

18              THE COURT:  Okay.  So let me inquire.  The

19    eight in the box, do any of you recognize any of these

20    names as someone who you might know?

21              We see one.

22              THE PROSPECTIVE JUROR:  Or, Juror No. 1 and

23    Juror No. 3.  So if we can get you the portable mic.

24              So generally I will ask you to respond, or I

25    will question you in the order in which you are seated.

```
 1  So we'll go down first to the first juror to be seated.
 2  Pass the mic all I way down.
 3              And before you respond -- yes, Counsel
 4  has --
 5              MS. BIVENS:  Sorry to interrupt.  Raul
 6  Marmol.
 7              THE COURT:  Okay.  Could you spell the last
 8  name.
 9              MS. BIVENS:  Yes.  R-A-U-L, M-A-R-M-O-L.
10              THE COURT:  So we have now an additional
11  name.
12              Juror No. 1, sir, which name did you
13  recognize as someone who you may know?
14              THE PROSPECTIVE JUROR:  Not necessarily
15  know, but know of Dan Aykroyd.
16              THE COURT:  Okay.  And in what context have
17  you heard or read something about him?
18              THE PROSPECTIVE JUROR:  From TV, movies, et
19  cetera.
20              THE COURT:  And could you tell us how long
21  it's been since you either saw a movie or TV show or
22  heard this name mentioned?
23              THE PROSPECTIVE JUROR:  Probably within the
24  year.
25              THE COURT:  This year 2018 [sic] or --
```

```
1                   THE PROSPECTIVE JUROR:  2016.

2                   THE COURT:  Thank you, sir.  Could we pass

3    the mic down.

4                   THE PROSPECTIVE JUROR:  My answer's

5    generally the same.  Recognizing Dan Aykroyd for the

6    same reasons and in the same time period.

7                   THE COURT:  Thank you.

8                   And now we have Juror No. 4.

9                   THE PROSPECTIVE JUROR:  Same thing.  Through

10   S&L and then recently through a Howard Stern interview.

11                  THE COURT:  So what's S&L?

12                  THE PROSPECTIVE JUROR:  Saturday Night Live.

13                  THE COURT:  And the time period about the

14   same?  2016?

15                  THE PROSPECTIVE JUROR:  Yes.  Most recently

16   for an interview on Howard Stern.

17                  THE COURT:  Anyone else, now that you have

18   heard the response of some of the other jurors that

19   might cause some of you to think, okay, I've heard this

20   name as well.

21                  Just raise your hand if that should be the

22   case.

23                  All right.  We're continuing.

24                  Pass the mic, please.  And state your name

25   for the record, please.
```

```
 1                    THE PROSPECTIVE JUROR:  Rosa Hernandez.
 2    Same reason.  Because I know that he is an actor, and
 3    I've seen movies.
 4                    THE COURT:  Okay.  You've seen him in
 5    movies.  You know he's an actor?
 6                    THE PROSPECTIVE JUROR:  That's it.
 7                    THE COURT:  When do you last believe that
 8    you saw or heard something about him?
 9                    THE PROSPECTIVE JUROR:  Maybe last year.  I
10    think they were doing one of the movies on the --
11                    THE COURT:  2017?  Last year meaning 2017?
12                    THE PROSPECTIVE JUROR:  No.  2016.
13                    THE COURT:  2016.  Thank you.
14                    Anybody else?
15                    THE PROSPECTIVE JUROR:  Yes.  Raymond Gross.
16                    THE COURT:  And how do you recognize that
17    name?
18                    THE PROSPECTIVE JUROR:  Same reason.  Movies
19    and Saturday Night Live.
20                    THE COURT:  And when do you believe you last
21    or heard the name?
22                    THE PROSPECTIVE JUROR:  2016.
23                    THE COURT:  Thank you.  Next, please.
24                    THE PROSPECTIVE JUROR:  Cindy Benavidez.
25    Same, as well.  Movies, shows, whatnot.  Last time I
```

1    heard of him, I believe it was two weeks, the House of

2    Blues.

3           THE COURT:  Was that a television program or

4    you were in attendance?

5           THE PROSPECTIVE JUROR:  No.  It was on TV.

6    He was on there.

7           THE COURT:  About two weeks ago?

8           THE JUROR:  About two weeks ago.

9           THE COURT:  Pass the mic back up.  I think

10    our second juror to be seated decided that she too may

11    recognize the name.  And if we pass anybody who now

12    thinks that you recognize the name, please indicate.

13           THE PROSPECTIVE JUROR:  Same reason.  And I

14    honestly couldn't tell you the last time I saw anything

15    with him, because I hardly watch TV.

16           THE COURT:  But you associate him with

17    movies or some entertainment, media?

18           THE PROSPECTIVE JUROR:  Yes.

19           THE COURT:  How about the audience -- I'm

20    not going to question you individually, I just want to

21    see a show a hands of how many.

22           You may put your hands down.

23           If you are selected to be seated in the box,

24    then that would be the type of question.  I've already

25    asked it.  But you would give me your answer.  And if I

1    were to follow through and ask more questions about it,

2    you would be prepared to do so.

3              So it's helpful to make a note that if you

4    are seated in the box, you want to advise me that you

5    recognize this name.

6              Any other names that were read that you

7    recognize as somebody you might know, you've heard that

8    name before, you associate that name with somebody or

9    something?

10             Those in the box?  No hands.

11             In the audience?  No hands.

12             So I would ask the defendants to do the

13    same.

14             What you are doing is stating the name of

15    witnesses that you expect to be called.  If it is one of

16    the same names that plaintiff read, you don't need to

17    read it again.  But the name may be referenced by

18    someone, even though that person isn't going to be here,

19    or it may be a deposition that's going to be presented.

20             MR. HUMMEL:  Understood, Your Honor.

21             We have some of the same names.  But the

22    unique names that are on my list are:

23             John Kennard.

24             THE COURT:  Spell the lame name, please.

25             MR. HUMMEL:  K-E-N-N-A-R-D.

```
 1                    Phillip Johnson.
 2                    THE COURT:  Spell the last name, please.
 3                    MR. HUMMEL:  That's J-O-H-N-S-O-N.
 4                    And Hal Poret, P-O-R-E-T.
 5                    THE COURT:  Any additional ones?
 6                    MR. HUMMEL:  Two more, Your Honor.
 7                    THE COURT:  Okay.
 8                    MR. HUMMEL:  Ray Ramos.  And Thomas Zeigler.
 9   Z-E-I-G-L-E-R.
10                    THE COURT:  Thank you.  I will inquire.
11   Those seated in the box, recognize any of those names as
12   someone you may know?  Or you may have read something
13   about them or heard that name before?
14                    I see no hands.
15                    How about in the audience?  No hands.
16                    So for defendant Brandi, any additional
17   names?
18                    MR. MILLER:  Yes, Your Honor.  In addition
19   to Kim Brandi, I'm sure we'll be making reference to her
20   son Devon Chu, C-H-U.
21                    THE COURT:  Anybody recognize those two
22   names, Kim Brandi or Chu, Devon Chu as someone that you
23   may know?
24                    In the box?
25                    In the audience?  No.
```

1           So now that we have -- you understand the

2   nature of the case.  You've met at least the lawyers who

3   are going to be involved in the case.  And you've heard

4   some of the names, those who may come to testify as

5   witnesses in the case or their names may be mentioned

6   during the course of the trial.

7           So there are some specific questions.  I'm

8   going to propound those questions to the person seated

9   in the box, prospective jurors.  But I ask that all of

10  you listen, take note, if any of the questions are such

11  that you would need to explain.

12          So one way of saying it would be, if your

13  answer would be yes to any of these questions, then I

14  would want you to share that information with me if you

15  are selected to be seated in the box.

16          First question:  Do you personally know

17  anything about this case?  And it is only based on what

18  you've heard here in the courtroom.

19          I read the statement of the case.  Counsel

20  had read some names to you.

21          So for those in the box, do you personally

22  know anything about the case?  If your answer is yes,

23  then raise your hand, and I will inquire further.

24          No one in the box.

25          Next question:  Do you know plaintiff

```
 1   Globefill Incorporated or the lawyers representing the
 2   plaintiff?  So I have already asked the lawyer question.
 3              Do you know plaintiff Globefill
 4   Incorporated?
 5              Raise your hand if your answer is yes.
 6              No hands.
 7              Do you know defendants Elements Spirits
 8   Inc., Kim Brandi?  That entity and that individual.  Do
 9   you feel that you know them, raise your hand.
10              And so "know" means you've read something
11   about them.  You've heard that name before that you
12   associate with something specific.
13              I see no hands.
14              Have you or do you know anyone who has ever
15   worked for Globefill Incorporated, Elements Spirits Inc.
16   or Kim Brandi?  If yes, raise your hand.
17              No hands.
18              So some of you have indicated that you are
19   familiar with the name of one of the witnesses, Dan
20   Aykroyd.  What I would like to know and have you answer,
21   have you ever met Mr. Aykroyd or attended any events
22   where he was present?  Met him or attended any event
23   where you believe he was present.
24              If yes, raise your hand.
25              No hands are raised.
```

1          Based on what you have seen -- and most of

2     you mentioned movies, television programs, things of

3     that type -- do any of you have an opinion, either

4     positive or negative, about Mr. Aykroyd?

5          Okay.  I'm not going to ask you to share

6     that opinion now.  But I think Juror No. 3 has an

7     opinion.  And No. 4.

8          Anyone else?

9          Whatever your opinion is for those of you

10    who have an opinion, would your opinion affect your

11    ability to serve as an impartial juror in this case?

12    Another way of saying that is, when you heard that name,

13    did you feel that, Oh, I've already made up my mind?  I

14    know how I will decide the case.

15         So the question is, would your opinion for

16    those two individuals who have an opinion, affect your

17    ability to serve as an impartial juror in the case?

18         If your answer is yes, raise your hand.

19    Otherwise, I would assume your answer no.  So no hands

20    are raised, so I assume no.

21         Have you or anyone who is close to you, so

22    that could be a family member, close friends, just

23    someone that you think is close, have you or anyone

24    close to you ever been a party to a lawsuit?  So this

25    would mean they filed a lawsuit, they sued somebody,

```
 1    somebody sued them.  It would include small claims as

 2    well.

 3              You or anyone close to you ever been a party

 4    to a lawsuit answer yes.  Raise your hand.

 5              So Juror No. 4.

 6              THE PROSPECTIVE JUROR:  Yeah.  My dad was

 7    involved in a lawsuit.

 8              THE COURT:  State your name for the record.

 9              THE PROSPECTIVE JUROR:  Josh Massi.

10              THE COURT:  Do you know when this was?

11              THE PROSPECTIVE JUROR:  It was a while ago.

12    Probably over ten years ago.

13              THE COURT:  Do you know the nature of the

14    lawsuit; what kind of lawsuit?

15              THE PROSPECTIVE JUROR:  It was involved with

16    a business that he owned.  I don't know the specifics.

17              THE COURT:  And what was the nature of the

18    business?

19              THE PROSPECTIVE JUROR:  It was a film

20    developing lab.

21              THE COURT:  Do you know if he sued someone

22    or someone sued him?

23              THE PROSPECTIVE JUROR:  He sued someone.

24              THE COURT:  This lawsuit, was it a matter

25    that was discussed at home so that you could overhear
```

1    what those discussions were?

2                    THE PROSPECTIVE JUROR:  No.  I mean, I was

3    away at college, so I didn't hear too much about it.

4                    THE COURT:  Did you attend any of the court

5    proceedings?

6                    THE PROSPECTIVE JUROR:  No.

7                    THE COURT:  Is the case over now?

8                    THE PROSPECTIVE JUROR:  Yes.

9                    THE COURT:  Do you know how it was ended?

10                   THE PROSPECTIVE JUROR:  Yes.

11                   THE COURT:  What do you believe that to be?

12                   THE PROSPECTIVE JUROR:  That he didn't win.

13                   THE COURT:  Do you think it was tried?  Do

14   you think there was a trial; or do you know that?

15                   THE PROSPECTIVE JUROR:  I don't know the

16   specifics.

17                   THE COURT:  And if there was a trial, you

18   didn't attend any of those proceedings?

19                   THE PROSPECTIVE JUROR:  No.

20                   THE COURT:  The fact that your father was

21   involved in a lawsuit, do you believe that would have

22   any affect on your ability to be fair and impartial?

23                   THE PROSPECTIVE JUROR:  No, I don't think

24   so.

25                   THE COURT:  All right.  Thank you.

```
 1                    Anyone else?

 2                    THE PROSPECTIVE JUROR:  Is Relevant, the

 3     company that I work for, is involved in lawsuits.

 4                    THE COURT:  Well, why don't we explore that.

 5                    I said involved.  What I intended to ask is:

 6     Did you have something to do with the lawsuits?  In

 7     other words, was your deposition taken?  Did you go to

 8     court?  Did you testify as a witness?

 9                    But the company that you worked for was

10     involved in the lawsuits?

11                    THE PROSPECTIVE JUROR:  Yes.  Multiple.  I

12     was not directly involved.  My manager was though.

13                    THE COURT:  Name of company?

14                    THE PROSPECTIVE JUROR:  Google.

15                    THE COURT:  And so you believe there have

16     been many lawsuits.

17                    THE PROSPECTIVE JUROR:  Yes.  Including

18     current ones, still ongoing.

19                    THE COURT:  And your manager was involved in

20     some way.

21                    THE PROSPECTIVE JUROR:  Yes.  Involved in

22     depositions.

23                    THE COURT:  Was your manager a party to the

24     lawsuits, if you know?

25                    THE PROSPECTIVE JUROR:  I don't believe so.
```

```
 1                    THE COURT:  But you believe his deposition
 2   was taken?
 3                    THE PROSPECTIVE JUROR:  Yes.
 4                    THE COURT:  Did you discuss any of these
 5   lawsuits so that you know the details of the lawsuit?
 6                    THE PROSPECTIVE JUROR:  No.  The most I know
 7   is what kind of questions -- what kind of questions my
 8   manager was answering for the deposition.
 9                    THE COURT:  But you don't even know the --
10   or do you know the nature the lawsuit?
11                    THE PROSPECTIVE JUROR:  Only vaguely.
12                    THE COURT:  So you believe it was just a
13   business dispute?  Or do you believe it involved, say,
14   intellectual property.  Or do you have any belief?
15                    THE PROSPECTIVE JUROR:  It is quite possible
16   it involved intellectual property.
17                    THE COURT:  And if it did involve
18   intellectual property, do you know what it was?
19                    THE PROSPECTIVE JUROR:  It would be related
20   to YouTube.
21                    THE COURT:  And there are some lawsuits
22   still ongoing?
23                    THE PROSPECTIVE JUROR:  Yes.
24                    THE COURT:  Lawsuits that have been -- in
25   which Google has been involved, have you followed those?
```

```
1    Read about them?  Talked about them.
2                 THE PROSPECTIVE JUROR:  Yes.
3                 THE COURT:  On some of them you know the
4    outcome?
5                 THE PROSPECTIVE JUROR:  Yes.
6                 THE COURT:  But you never testified in any
7    of them?
8                 THE PROSPECTIVE JUROR:  No.
9                 THE COURT:  Your deposition was never taken?
10                THE PROSPECTIVE JUROR:  No.
11                THE COURT:  Did you form some opinions about
12   who should prevail based upon what you heard about these
13   lawsuits?
14                THE PROSPECTIVE JUROR:  Yes.
15                THE COURT:  Was there ever any discussions
16   among others in the workplace about how they were
17   treated by the courts?
18                THE PROSPECTIVE JUROR:  Individual people by
19   the courts?
20                THE COURT:  The company or individuals.
21                THE PROSPECTIVE JUROR:  Yes.
22                THE COURT:  I'll stop there.  I will
23   probably have some additional questions of you later.
24                Anybody else answer those questions?
25                The next question:  Have any of you ever
```

1  purchased or consumed Crystal Head Vodka or KAH Tequila?

2          Have any of you ever purchased or consumed?

3  If so, raise your hand and I can inquire further.

4          No hands raised.

5          Have any of you ever seen Crystal Head Vodka

6  or KAH Tequila displayed in a store, a bar or a

7  restaurant, to your knowledge?  If so, raise your hand.

8          And for those in the audience you don't have

9  to tell me now, but make a note that if you are seated

10  in the box, this is information that you want to share.

11  So I don't have to repeat all these questions again.

12          Have you or anyone you know ever worked in

13  the alcoholic beverage industry?  If yes, raise your

14  hand and I will inquire further.

15          Juror No. 4.  Tell us yourself, somebody

16  else, what is your relationship is.

17          THE PROSPECTIVE JUROR:  My wife worked as a

18  bartender for four years, I believe.

19          THE COURT:  During what time period?  Like,

20  you know, a couple of years ago or...

21          THE PROSPECTIVE JUROR:  Yeah, it was from

22  2011 to 2016, last year.

23          THE COURT:  She worked as a bartender?

24          THE PROSPECTIVE JUROR:  Correct.

25          THE COURT:  So did you have discussions with

```
1    her about either this Crystal Head Vodka or KAH Tequila?

2                    THE PROSPECTIVE JUROR:  No.

3                    THE COURT:  Thank you.

4                    Anybody else?  Apparently not.

5                    Do you or anyone you know own a registered

6    or unregistered trademark or trade dress?

7                    And trade dress is the definition that I

8    read earlier when I indicated statement of the case.

9                    And if you don't remember what that was, in

10   order to answer these questions, just tell me, and I can

11   read it again.

12                   But this question is:  Do you or anyone you

13   know own a registered or unregistered trademark or trade

14   dress?  If yes, raise your hand and I'll inquire

15   further.

16                   Yes, Juror No. 3.

17                   THE PROSPECTIVE JUROR:  Just by my company.

18                   THE COURT:  State your name for the record.

19                   THE PROSPECTIVE JUROR:  Sanjay Vasandani.

20                   Would you like me to spell my last name?

21                   THE COURT:  Yes, please.

22                   THE PROSPECTIVE JUROR:  V-A-S-A-N-D-A-N-I.

23                   THE COURT:  And you know someone who owns a

24   registered or unregistered trademark?

25                   THE PROSPECTIVE JUROR:  The company I worked
```

1    for, yes.

2              THE COURT:  That would be Google?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  What else do you know about

5    trademarks, registered or unregistered or trade dress,

6    other than the fact that you know that they may own

7    some.

8              THE PROSPECTIVE JUROR:  Not too many

9    details.  I always get confused which rules apply

10   between trade dress, trademark, copyright and so forth.

11             THE COURT:  What mark or item do you believe

12   Google may have on -- may have or own that's registered

13   or unregistered?  So is it just the name Google itself?

14   Or do you believe there may be other?

15             THE PROSPECTIVE JUROR:  In addition to

16   the -- basically the product names.  YouTube, Chrome, so

17   forth.  Also names of hardware product lines, Nexus,

18   Pixel, so forth.

19             THE COURT:  Were you involved in the process

20   of selecting those names or registering them for

21   trademark purposes?

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  Anyone else?

24             Thank you, sir.

25             Have you or anyone you know ever been

```
 1   accused of infringement?
 2               So Juror No. 3 may have a response to that.
 3               But anybody other than juror No. 3.
 4               Have you or anyone you know ever been
 5   accused of infringement?
 6               Anybody other than Juror No. 3?
 7               Apparently not.
 8               Juror No. 3, tell us what know about that.
 9               THE JUROR:  We have been -- I don't
10   think anyone in our company has been involved in
11   multiple copyright infringement cases.  Some still
12   ongoing, some with appeals.  Mostly around software
13   companies specifically.
14               THE COURT:  Other than what you just told
15   us, do you know anything more about those lawsuits which
16   Google has been involved?
17               THE PROSPECTIVE JUROR:  Can you clarify.
18               THE COURT:  Do you have any other
19   information other than the fact that you know there have
20   been some lawsuits, there still may be some lawsuits,
21   your manager may have had his deposition taken and you
22   believe that maybe Google been accused of infringing?
23   But other than that, do you have any other information
24   about these lawsuits?
25               THE PROSPECTIVE JUROR:  Nothing other than
```

1    what's already public.

2            THE COURT:  Is there anything that you are

3    aware of as you sit here that you believe could affect

4    your ability to serve as an impartial juror in the case?

5            So I may not have asked a question about it.

6    But you may be sitting here thinking, I do know

7    something that may affect.

8            So Juror No. 1 has his hand up, and I am

9    going to question you separately, sir, about that.  So I

10   won't ask you about it now.

11           THE PROSPECTIVE JUROR:  Okay.

12           THE COURT:  Anybody other than Juror No. 1

13   concerned that there is just something about you or

14   something that you know, you read, you heard, that you

15   are concerned might affect your ability to serve as an

16   impartial juror in this case?

17           Impartiality can be described as, you are

18   predisposed to decide the case in favor of one side or

19   the other.  You don't know anything about the case yet,

20   you've just heard a little bit, and you've already have

21   come to some conclusion?  Anybody have that state of

22   mind?  Thank you.

23           At this time, I am going to ask that each of

24   you stand and answer the individual voir dire questions.

25   So you should have a sheet that the clerk passed out to

```
 1   you.
 2              It starts with your name.  Spell the last
 3   name.  So you will be standing and answering those
 4   questions.
 5              If your question No. 2 says "place of
 6   residence," we are not asking you to disclose your
 7   address.  We just want to know the community in which
 8   you live.
 9              So as most of you know, the jurisdiction of
10   this court goes all the way north to the Monterey County
11   line and south to San Diego, and then obviously west of
12   the ocean.  And then east may include -- go as far as
13   Nevada.  So we want to know just the area where you
14   reside.
15              We'll start with our first juror.  If you
16   stand, you will have the portable mic and you'll answer
17   those questions.
18              THE PROSPECTIVE JUROR:  My name Bruce
19   Batten, B-A-T-T-E-N.  Residence is Chatsworth,
20   California.  Employer name is Benny Mac Incorporated.
21   My current occupation is a business systems analyst.
22              Prior work history would be QB Insurance, in
23   the same occupation as a business systems analyst.
24              THE COURT:  How long have you been in that
25   field?  Business systems analyst?
```

```
 1                THE PROSPECTIVE JUROR:  Several years.
 2                THE COURT:  About how many?  20?
 3                THE PROSPECTIVE JUROR:  20.
 4                THE COURT:  How long have you worked for
 5   your present employer?
 6                THE PROSPECTIVE JUROR:  Close to two years.
 7   Year and a half.
 8                THE COURT:  And then prior to that?
 9                THE PROSPECTIVE JUROR:  Two and a half
10   years.
11                THE COURT:  And then the next employee that
12   you had sounds like it would have been over a four years
13   ago?
14                THE PROSPECTIVE JUROR:  Yes.
15                THE COURT:  And how long did you work for
16   that employer?
17                THE PROSPECTIVE JUROR:  Actually was
18   unemployed for a couple years.
19                THE COURT:  And during the time that you
20   were unemployed, did you -- were you engaged in any
21   particular types of activity, just things that you did
22   during that period?
23                THE PROSPECTIVE JUROR:  It was a long
24   vacation.
25                THE COURT:  Thank you.  You may continue.
```

```
 1                    THE PROSPECTIVE JUROR:  Supervisory role.
 2   Not within the last four years, but maybe 15 years ago.
 3                    THE COURT:  How many people would you have
 4   supervised during that period?
 5                    THE PROSPECTIVE JUROR:  At one time maybe up
 6   to 20.
 7                    THE COURT:  What was your responsibility for
 8   them?  Did you have input or prepared their performance
 9   evaluation?
10                    THE JUROR:  Yes.
11                    THE COURT:  Input or were you the sole or
12   the final decision maker?
13                    THE PROSPECTIVE JUROR:  Pretty close to the
14   final decision maker.
15                    THE COURT:  Did you have the responsibility
16   for hiring and firing?
17                    THE PROSPECTIVE JUROR:  Firing is not sole
18   responsibility but part of it.
19                    THE COURT:  You had input?
20                    THE PROSPECTIVE JUROR:  Yes.
21                    THE COURT:  How about hiring?
22                    THE PROSPECTIVE JUROR:  Hiring, not as much;
23   but yes.  Partial input.
24                    THE COURT:  Would you be one of the persons
25   who may interview those that are --
```

```
 1                    THE PROSPECTIVE JUROR:  Yes.

 2                    THE COURT:  -- being considered for

 3      employment?

 4                    Okay.

 5                    Question No. 7.

 6                    THE PROSPECTIVE JUROR:  High school was the

 7      highest level of education.  Marital status is

 8      separated.

 9                    THE COURT:  Are there any other adults that

10      live in your same household?

11                    THE PROSPECTIVE JUROR:  No.

12                    THE COURT:  Do you have adult children who

13      are employed?

14                    THE PROSPECTIVE JUROR:  No.

15                    THE COURT:  Question No. 11, hobbies, clubs,

16      organizations.

17                    MR. HUMMEL:  I play hockey, recreational

18      hockey.

19                    THE COURT:  Do you presently or have you in

20      the past belonged to any clubs or organizations?

21                    THE PROSPECTIVE JUROR:  No.

22                    THE COURT:  Within your workplace, are there

23      occasions when you have to make decisions with others?

24      In other words, there would be a conversation about some

25      decision that has to be made; there's a group of people,
```

1  they are all having some input and having a discussion

2  and then ultimately take some votes and make a decision?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  And has that been a process that

5  you participated in for most of your career?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Military service?

8          THE PROSPECTIVE JUROR:  None.

9          THE COURT:  Have you ever served as a juror

10  in either a criminal case or a civil case?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  How many occasions, if you

13  recall?

14          THE PROSPECTIVE JUROR:  One.

15          THE COURT:  What was the nature of the case,

16  if you recall?

17          THE PROSPECTIVE JUROR:  I think it was a

18  spousal abuse case.

19          THE COURT:  Do you recall how long you

20  served on that case?

21          THE PROSPECTIVE JUROR:  It was about a day

22  and a half.  And it was settled.

23          THE COURT:  So the jury never had to decide

24  issues?

25          THE PROSPECTIVE JUROR:  We began

1   deliberations but never finished.

2            THE COURT:  So you heard testimony, started

3   deliberating, and then were told that the case had been

4   resolved?

5            THE PROSPECTIVE JUROR:  Yes.

6            THE COURT:  How long ago was it?

7            THE PROSPECTIVE JUROR:  Quite a long time.

8   Probably 20 years.  15, 20 years.

9            THE COURT:  And since you did hear

10  testimony, commence deliberating, how would you describe

11  that experience of being a juror?

12           THE PROSPECTIVE JUROR:  It was interesting

13  initially.  The deliberation was frustrating.

14           THE COURT:  And is that because it was hard

15  to make decisions in a group setting?

16           THE PROSPECTIVE JUROR:  Yes.

17           THE COURT:  Have you ever been a member of

18  the grand jury?

19           THE PROSPECTIVE JUROR:  No.

20           THE COURT:  And other than what you observed

21  or what you have been told since you have been here in

22  the courtroom, do you have any other information about

23  this case?

24           THE PROSPECTIVE JUROR:  No.

25           THE COURT:  And I think you shared with us

```
1    when you came into the courthouse you heard the lawyers

2    saying something.  But other than that, any other

3    nothing about this case?

4              THE PROSPECTIVE JUROR:  Other than that, no.

5              THE COURT:  Have you formed any opinions

6    about the parties or their attorney has which you think

7    would affect your ability to be impartial?

8              THE PROSPECTIVE JUROR:  Yes.  I was really

9    put off by the comments that they made.

10             THE COURT:  All right.  So I'm going to ask

11   you more questions about that.

12             THE PROSPECTIVE JUROR:  Sure.

13             THE COURT:  Thank you.

14             Could we have the next juror, please.

15             THE JUROR:  My name is Jennifer Martinez.

16   M-A-R-T-I-N-E-Z.

17             My place of residence is Oxford, California.

18   My employer is Bright Horizons.  My occupation is an

19   education coordinator.  And I have been employed there

20   16 years.

21             THE COURT:  What is the nature of their

22   business.

23             THE PROSPECTIVE JUROR:  We're the child care

24   center for AMGEN.

25             THE COURT:  You may continue.
```

```
 1                    THE JUROR:  I do currently hold a

 2      supervisory role.

 3                    THE COURT:  How many people would you

 4      supervise?

 5                    THE PROSPECTIVE JUROR:  21.

 6                    THE COURT:  Do you prepare their performance

 7      evaluation?

 8                    THE PROSPECTIVE JUROR:  Yes.

 9                    THE COURT:  Do you have input or are you the

10      final decision maker?

11                    THE PROSPECTIVE JUROR:  Second to the last

12      one, decision maker.

13                    THE COURT:  How long have you served in that

14      capacity.

15                    THE PROSPECTIVE JUROR:  Five years.

16                    THE COURT:  You may continue.

17                    THE PROSPECTIVE JUROR:  My highest level of

18      education is a bachelor's degree.

19                    THE COURT:  What was your concentration or

20      your study at the time?

21                    THE PROSPECTIVE JUROR:  Criminology.  My

22      marital status is married.

23                    THE COURT:  Other adults reside in your

24      household?

25                    THE JUROR:  My mother.
```

1          THE COURT:  Any adult children?

2          THE JUROR:  No.

3          THE COURT:  Hobbies, clubs, organizations?

4          THE PROSPECTIVE JUROR:  Soccer.  And just

5    spend time with my children.  And organization is NAYC,

6    the National Association of Education for Young

7    Children.

8          THE COURT:  Have you ever been a -- strike

9    that.  Have you ever held an office in that

10   organization?

11         THE PROSPECTIVE JUROR:  No.

12         THE COURT:  And do they have meetings and --

13   that you attend, have discussions and vote on things?

14         THE PROSPECTIVE JUROR:  They do have

15   conferences, but I've attended one.

16         THE COURT:  In your workplace, are there

17   times that you have to make decisions along with others

18   so that you would have an issue, you'd be discussing it

19   with other people, maybe take a vote and try to reach a

20   decision?

21         THE PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Are you comfortable with that

23   process?

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  Military service?

```
 1                    THE PROSPECTIVE JUROR:  No.

 2                    THE COURT:  Have you ever served as a juror

 3     in any kind of case?

 4                    THE PROSPECTIVE JUROR:  No.

 5                    THE COURT:  Ever been a member of the grand

 6     jury?

 7                    THE PROSPECTIVE JUROR:  No.

 8                    THE COURT:  Other than what you've heard

 9     since you've been here in the courtroom, do you believe

10     you have any information about this case?

11                    THE PROSPECTIVE JUROR:  No, I don't.

12                    THE COURT:  Have you formed any opinion

13     about the parties or their attornies that would affect

14     your ability to be fair and impartial?

15                    THE PROSPECTIVE JUROR:  No.

16                    THE COURT:  Thank you.  Next, please.

17                    THE PROSPECTIVE JUROR:  My name is Sanjay

18     Vasandani, Last name is V-A-S-A-N-D-A-N-I.

19                    I reside in West Los Angeles.  Employer's

20     name is Google.  Occupation is a software engineer.  I

21     have been in that role for the past six years at Google,

22     and still in the same role before that.

23                    I have not been a people manager, but I have

24     been a technical lead for my team.

25                    THE COURT:  How large is the team?
```

```
 1                    THE PROSPECTIVE JUROR:  I would say about

 2      five people.

 3                    THE COURT:  And do you have the

 4      responsibility for performance evaluation for those

 5      five?

 6                    THE PROSPECTIVE JUROR:  We do group

 7      performance evaluations.  It is all done by peer review,

 8      yes.

 9                    THE COURT:  So you would have some input?

10                    THE JUROR:  Yes.

11                    THE COURT:  You may continue.

12                    THE PROSPECTIVE JUROR:  Highest level of

13      education is bachelor of sciences.  I am married.  The

14      other adult residing in my household, my wife, who is an

15      artist working in TV animation.  No adult children.  I

16      am not in a formal club or organizations right now.

17      Hobbies include Porsche photography, tabletop video

18      gaming.

19                    THE COURT:  Have you ever been in occasion

20      when you belonged to an organization that has regular

21      meetings.  You attended those meetings.  You voted on

22      things?

23                    THE PROSPECTIVE JUROR:  No.

24                    THE COURT:  All right.  You may continue.

25                    THE PROSPECTIVE JUROR:  No military service.
```

```
 1   I have not served as a juror in a criminal, civil case,

 2   nor on a grand jury.

 3                The last two questions.  I don't believe I

 4   have any other information about the case.  And I don't

 5   think I've -- I don't believe I formed any opinions as

 6   of yet that would affect my ability to be impartial.

 7                THE COURT:  All right.  Thank you.  Next,

 8   please.

 9                THE PROSPECTIVE JUROR:  Josh Massi,

10   M-A-S-S-I.  Place of residence, Thousand Oaks,

11   California.  Employer is Wells Fargo.  And I'm a sales

12   consultant.

13                THE COURT:  How long have you worked for

14   them?

15                THE PROSPECTIVE JUROR:  Eight years.

16                And then any supervisory roles, not with

17   Wells Fargo.

18                THE COURT:  Prior to your employment with

19   Wells Fargo --

20                THE PROSPECTIVE JUROR:  Yes.

21                THE COURT:  -- did you supervise?

22                THE PROSPECTIVE JUROR:  Yes.

23                THE COURT:  How many persons.

24                THE PROSPECTIVE JUROR:  It was about 15.

25                THE COURT:  Were you responsible for their
```

1    performance evaluation?

2                    THE JUROR:  Yes.

3                    THE COURT:  All right.  You may continue.

4                    THE PROSPECTIVE JUROR:  Okay.  Education is

5    M.B.A.  I'm married.  Yes, there are other adults

6    residing in my house.  My wife and my sister-in-law.

7                    THE COURT:  Either of them employed outside

8    of the home?

9                    THE PROSPECTIVE JUROR:  Yes.

10                    THE COURT:  What are their occupations?

11                    THE PROSPECTIVE JUROR:  One -- well, one

12   is -- works for Wells Fargo as well.

13                    THE COURT:  And what is her job at Wells

14   Fargo?

15                    THE PROSPECTIVE JUROR:  She is a teller.

16                    THE COURT:  And the other?

17                    THE PROSPECTIVE JUROR:  My wife is stay at

18   home and a student.

19                    THE COURT:  What is she studying.

20                    THE PROSPECTIVE JUROR:  She is studying

21   teaching.

22                    THE COURT:  You may continue.

23                    THE PROSPECTIVE JUROR:  I do not have any

24   adult children.

25                    Hobbies.  Hiking, golf, anything outside.

1     No military service.

2               THE COURT:  Ever been a member of a club or

3     organization that held meetings, you attended those

4     meetings and voted on things?

5               THE PROSPECTIVE JUROR:  No.

6               THE COURT:  For purposes of this question, I

7     should indicate to everyone, that could be a union, it

8     could be a church or religious group.  It could be the

9     P.T.A..  It is just some group where you attend their

10    meetings.  They have discussions about things.  You have

11    to vote on things.  So that's how broad that question

12    is.

13              With that explanation, your answer is still

14    no?

15              THE PROSPECTIVE JUROR:  Correct.

16              THE COURT:  You may continue.

17              THE PROSPECTIVE JUROR:  Military service,

18    none.

19              Yes, I have served as a juror before.

20              THE COURT:  How long ago?  How many cases?

21              THE PROSPECTIVE JUROR:  One case.  Two years

22    ago.  It was a criminal case.

23              THE COURT:  Were you a deliberating juror?

24              THE PROSPECTIVE JUROR:  I actually dropped

25    out right before deliberation.

```
 1                    THE COURT:  So you heard evidence but did
 2     not deliberate?
 3                    THE PROSPECTIVE JUROR:  Correct.
 4                    THE COURT:  How long did you listen to the
 5     evidence?
 6                    THE PROSPECTIVE JUROR:  Four weeks.
 7                    THE COURT:  How would you describe that
 8     experience?
 9                    THE PROSPECTIVE JUROR:  Interesting at
10     first.
11                    THE COURT:  Why did you drop out?
12                    THE PROSPECTIVE JUROR:  My mom got sick.
13                    THE COURT:  Interesting at first.  How would
14     you describe after that first?
15                    THE PROSPECTIVE JUROR:  Long.  And ready for
16     it to be over.
17                    THE COURT:  What was the nature of the
18     offense?
19                    THE PROSPECTIVE JUROR:  It was a murder.
20                    THE COURT:  Willing to serve again if
21     selected to serve?
22                    THE PROSPECTIVE JUROR:  Yeah.
23                    THE COURT:  Okay.  Ever been a member of the
24     grand jury?
25                    THE PROSPECTIVE JUROR:  No.
```

1          THE COURT:  The last two questions:  Do you

2   have any information about the case other than what you

3   have heard here in the courtroom?

4          THE PROSPECTIVE JUROR:  No.

5          THE COURT:  Have you formed any opinions

6   about the parties or their attorneys that would affect

7   your ability to be impartial?

8          THE PROSPECTIVE JUROR:  No, I don't believe

9   so.

10         THE COURT:  So I'm going to stop here.  I

11  did promise that we would break for lunch.  And so it is

12  almost 12:30.  We will be in recess for an hour and a

13  half.  So your return time is 2:00 o'clock.  You will

14  come back to this courtroom.

15         For those of you seated in the audience, you

16  will just sit where you are sitting now.  For those of

17  you in the box, you will sit in the seats that you

18  presently occupying.

19         Just an admonishment:  Don't talk about the

20  case, anyone involved in the case, anything that has to

21  do with the subject of this case.

22         I will be giving you more admonishments

23  later once we get the jury selected.  And then there are

24  a couple of you that I would ask to stay.  I can ask you

25  a few additional questions.  So it would be Juror No. 1,

```
 1   Juror No. 3, Juror No. 4.  All of the others, including
 2   the audience, enjoy your lunch.
 3              (PROSPECTIVE JURORS EXCUSED FOR LUNCH.)
 4              THE COURT:  All right.  I will start with
 5   Juror No. 1.  I will ask you to come to sidebar.  So
 6   we'll be talking outside the presence of the others.
 7   And I invite counsel to the sidebar.
 8              (SIDEBAR.)
 9              THE COURT:  State your name, sir.
10              THE WITNESS:  Bruce Batten.
11              THE COURT:  And you overheard something as
12   you were entering the courthouse.  Could you tell me
13   what you heard and who you think may have been involved?
14              THE PROSPECTIVE JUROR:  When I was entering
15   into the building.
16              THE COURT:  Keep your voice soft as you can.
17   We are on the record.
18              THE PROSPECTIVE JUROR:  When I was entering
19   into the building there was a protestor outside the
20   front and he was protesting against one of the judges.
21   And I was in front of the line of the plaintiff group.
22   And a comment was made in a joking fashion that I did
23   not find very funny, regarding the gentleman and the
24   method in which he was protesting, as well as a comment
25   that was made about another protestor, and that was at
```

```
 1   another court.
 2               It was very off-putting to me.  And I found
 3   it very arrogant.
 4               THE COURT:  And could you identify who made
 5   the statement?
 6               THE PROSPECTIVE JUROR:  It was this
 7   gentlemen right here.
 8               MR. BERG:  Me.
 9               THE COURT:  You believe that this would
10   affect your ability to be fair.
11               THE JUROR:  I felt very strongly about it.
12   And once I got into the building and I sat down, and I
13   getting something to eat, I hoped that I don't have to
14   be in the room for that case.
15               THE COURT:  Okay.  So realizing that the
16   gentleman is the attorney for the plaintiff, one of the
17   attorneys for the plaintiff in the case, so he is not
18   actually involved in the case, but, yes, he may be
19   asking questions of witnesses and commenting on things,
20   you feel that would affect your ability to be fair and
21   impartial?
22               THE PROSPECTIVE JUROR:  Yeah.  I'm pretty
23   strongly opinionated about stuff like that.  It has
24   definitely shaken me.  And I already knew once I walked
25   in and saw them and it was this case -- I was already
```

1    feeling a little bit of anxiety about the whole

2    situation.

3              And to be honest, I would have liked to have

4    served but I just -- it really put me off.  And it is

5    shaken me right now.  I just don't -- I didn't like it.

6              THE COURT:  Okay.  Thank you.  If either

7    counsel have any additional questions, you may ask

8    through the Court.

9              MR. BERG:  Oh, yes.

10             THE COURT:  Tell me what that question is.

11             MR. BERG:  Yes.  Did the gentleman see the

12   sign which the protestor was calling Judge Gee a thief?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  So you saw the sign?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  And still whatever comments were

17   made, you still believe that if you were selected to

18   serve on this case, you couldn't be fair and impartial?

19             THE PROSPECTIVE JUROR:  Yes, I do.

20             THE COURT:  Okay.

21             MR. BERG:  And first let me ask through Your

22   Honor, this is not just something that you made up as

23   you walked in the courtroom.  You really feel this

24   deeply?

25             THE PROSPECTIVE JUROR:  Yeah, I do.

1          MR. BERG:  Apparently, I'm not --

2          THE COURT:  My sense is he feels deeply

3     about what he heard and he has indicated he thinks it

4     would affect his ability to be fair and impartial.

5          All right.  Any questions from anybody else?

6          MR. HUMMEL:  Not from us, Your Honor.

7          THE COURT:  The Court would be inclined to

8     excuse the juror the at this point.  Thank you, sir, for

9     sharing that with us.  You will go back to the jury

10    assembly room.

11         THE JUROR:  Right now?

12         THE COURT:  No, no.  You can take your

13    lunch.

14         THE PROSPECTIVE JUROR:  All right.

15         MR. BERG:  May I thank the juror for his

16    candor.

17         THE COURT:  Thank you, sir.

18         (OPEN COURT)

19         THE COURT:  Our next juror, Juror No. 3.

20         State your name for the record.

21         THE PROSPECTIVE JUROR:  Sanjay Vasandani,

22    V-A-S-A-N-D-A-N-I.

23         THE COURT:  So you expressed some concerns

24    during my questioning.  Let's see if you have an --

25         MR. BERG:  I didn't hear.

```
 1              THE JUROR:  No.  First plaintiff Dan
 2   Aykroyd.
 3              THE COURT:  You have an opinion about him?
 4   Can you just tell us what the opinion is.
 5              THE PROSPECTIVE JUROR:  Just be a fan.
 6   So --
 7              THE COURT:  Do you think that would
 8   influence your decision if he were called as a witness
 9   in the case, and you had to decide --
10              THE PROSPECTIVE JUROR:  No, I'd believe him
11   or not believe him just the same as somebody else,
12   anyone different who I think -- living in L.A. it comes
13   with the territory.
14              THE COURT:  So I don't have any additional
15   questions.  Wait just a moment.  I will see if there are
16   any questions first.
17              MR. HUMMEL:  I don't have anything.
18              THE COURT:  Any questions propounded?
19              MR. BERG:  I have no questions.
20              THE PROSPECTIVE JUROR:  I did recall now a
21   specific trademark in the case, related to Microsoft
22   making their own YouTube and using the YouTube name and
23   logo not being official product and misrepresenting
24   that.  I just recalled that.
25              THE COURT:  Again, your involvement in that?
```

```
 1                    THE PROSPECTIVE JUROR:  I'm not directly
 2       involved.  I just knew about it.
 3                    THE COURT:  Any further inquiry?
 4                    MR. HUMMEL:  Your Honor, you could ask the
 5       juror, please, to just clarify who was the plaintiff and
 6       the defendant, because I just missed it.
 7                    THE COURT:  Who's being sued?  Was Google
 8       suing or Google being sued?
 9                    THE PROSPECTIVE JUROR:  It was Google being
10       sued.
11                    THE COURT:  Google.
12                    THE PROSPECTIVE JUROR:  I don't know whether
13       it went to lawsuit or settled before it went to trial.
14                    THE COURT:  Do you know if it is resolved
15       now?
16                    THE PROSPECTIVE JUROR:  It is resolved, yes.
17                    THE COURT:  How long ago, do you remember,
18       if you even remember, when this lawsuit was on?
19                    THE PROSPECTIVE JUROR:  I want to say three,
20       four years ago.
21                    THE COURT:  Okay.
22                    THE PROSPECTIVE JUROR:  I did have some
23       internal details that I knew about that were not made
24       public.  But, again, I was not directly involved.
25                    THE COURT:  Okay.  Were those details such
```

1    that you could make them public now or you should not?

2              THE PROSPECTIVE JUROR:  Still should not

3    make public.

4              THE COURT:  All right.  Thank you.

5              Any other inquiry?

6              MR. BERG:  No.

7              MR. HUMMEL:  No.

8              THE COURT:  Thank you.  You can go to lunch

9    now.

10             THE COURT:  Juror 4.  Please identify

11   yourself.

12             She does not know your voices.

13             MR. HUMMEL:  I just realized.

14             MR. BERG:  Where is the microphone?

15             MR. HUMMEL:  Here.

16             THE COURT:  State your name for the record.

17             THE PROSPECTIVE JUROR:  Josh Massi,

18   M-A-S-S-I.

19             THE COURT:  I think you had an opinion about

20   Mr. Aykroyd?

21             THE PROSPECTIVE JUROR:  Aykroyd.

22             THE COURT:  What is that opinion?

23             THE PROSPECTIVE JUROR:  A positive one.

24   Just been a fan of him over the years.

25             THE COURT:  And so if he's called to testify

```
 1    as a witness in the case, there is some testimony about
 2    him, and your job will be to decide which witnesses you
 3    believe, who you don't believe, how much weight should
 4    be given to their testimony, do you think that
 5    decisionmaking by you would be unduly influenced because
 6    you have a positive opinion about him?
 7              THE PROSPECTIVE JUROR:  I mean, I think
 8    naturally you kind of trust someone who you have a
 9    positive opinion more than just taking them for their
10    word.  I just think that's natural.
11              THE COURT:  Do you know anything about him
12    other than --
13              THE PROSPECTIVE JUROR:  Personally, no, I
14    don't know anything personal about him.
15              THE COURT:  Again, it is just television
16    programs that he appeared on.
17              THE PROSPECTIVE JUROR:  Yeah.
18              THE COURT:  Movies he might have appeared
19    in.
20              THE PROSPECTIVE JUROR:  I listen to some
21    interviews of him.  So you kind of -- I feel like you
22    kind of get an idea who the person is.  Again, that's
23    all through just the media.
24              THE COURT:  Interviews of him.  Can you tell
25    us any more about that, like when --
```

```
 1                THE PROSPECTIVE JUROR:  He was on Howard
 2   Stern.  I think it was sometime last year that I heard
 3   him.
 4                THE COURT:  What would that interview
 5   consist of, just more about his career or --
 6                THE PROSPECTIVE JUROR:  Yeah.  Just about
 7   his career.
 8                THE COURT:  Okay.  Any other questions that
 9   counsel would like for me to request?
10                MR. HUMMEL:  Keith Hummel, just one.  Would
11   you ask Mr. Massi if it would changes his opinion or
12   affect his opinion if he understood that Mr. Aykroyd was
13   an owner of the plaintiff Globefill?
14                THE COURT:  So is that to suggest that that
15   would be the purpose for his being called, that he has
16   an ownership interest, but that he is not likely to be
17   testifying about things that have to do with the real
18   issue in the case?
19                MR. HUMMEL:  I think both, Your Honor.
20   Keith Hummel.
21                THE COURT:  He may be testifying that he was
22   an owner of a company.
23                THE PROSPECTIVE JUROR:  Okay.
24                THE COURT:  That's probably not in dispute.
25                MR. HUMMEL:  Correct.
```

```
 1            MR. BERG:  Yes.

 2            THE COURT:  He also may be testifying about

 3    the very trade dress that's in issue in the case.  I

 4    don't know.  If there will be disputed facts there or

 5    not.  But there could be.  If his testimony was one way

 6    and then the other witnesses testified different from

 7    him, you don't know who the other witnesses are.  You

 8    don't know anything about them.  Would what you know

 9    about him is what you've seen on TV or something?

10            THE PROSPECTIVE JUROR:  Yeah.

11            THE COURT:  Are you thinking that you would

12    be influenced because you have seen him on TV and heard

13    what he said?

14            THE PROSPECTIVE JUROR:  I mean, that is the

15    tough question.  All I know is I have a positive opinion

16    of the man.  Do I know basically what he says is going

17    to influence me one way or the other?  I don't know.

18    The answer to that question, to be honest with you, I

19    don't think so.

20            THE COURT:  You have a positive opinion.

21    Does that mean that you would always believe everything

22    he said?

23            THE PROSPECTIVE JUROR:  No.  It doesn't mean

24    I would believe everything he said.

25            THE COURT:  Nor does it mean you would never
```

1    believe anything he said.

2              THE JUROR:  You're correct.

3              THE COURT:  Keep an open mind whether or not

4    you believe him or not believe him based upon what you

5    might hear in this case.

6              THE PROSPECTIVE JUROR:  I have an open mind.

7    I want them to know I have a very positive opinion of

8    him that could potentially -- I don't see that would

9    because I don't know the man.  I don't know it would

10   influence me or not.  I don't know so I don't know.

11             THE COURT:  Inquire?

12             MR. MILLER:  John Miller as to whether the

13   Crystal Head Vodka was discussed on the Howard Stern

14   interview.

15             THE PROSPECTIVE JUROR:  To be honest with

16   you, like what his history is, I thought he remembered

17   him saying about a case that he couldn't discuss it.

18   But I don't remember specifics, so I don't know.  I

19   don't remember him mentioning that.

20             THE COURT:  How long ago was the interview?

21             THE PROSPECTIVE JUROR:  I believe 2016.  I

22   might have heard a reply later in the year, because it

23   wasn't too long ago that I heard it.

24             MR. MILLER:  But there was a discussion?

25             John Miller again.  There was discussion

```
1    about a legal cause?
2              THE COURT:  Was there a discussion about an
3    case or was there a mention that there was a case.  But
4    he couldn't talk about the detail?
5              THE PROSPECTIVE JUROR:  I couldn't tell you
6    the answer.  It was couple months ago, two hours, hour
7    and a half interview, if it was -- I thought I
8    remembered him saying something about a case.  If he did
9    though, it wasn't in any detail.  So I don't know.
10             THE COURT:  You recall if any names -- who
11   else was involved in the case?
12             MR. MILLER:  Was there mention of any
13   outcomes or frustration or anything with respect to the
14   case?
15             THE COURT:  I can let you answer that
16   question.
17             THE PROSPECTIVE JUROR:  I don't recall.
18             THE COURT:  Anything else?
19             MR. HUMMEL:  Keith Hummel, nothing further.
20             MR. BERG:  David Berg.  Nothing further for
21   me.
22             THE COURT:  Okay.  You can go to lunch.
23   Thank you.
24             THE PROSPECTIVE JUROR:  Thank you.
25             THE COURT:  We are going to recess now.  You
```

```
 1    can go to lunch.
 2              Other matters that the court will need to
 3    address with you at some point?  I don't think any of
 4    them affect jury selection.  So what I'm hoping to do
 5    today is at least get the jury.
 6              If you can identify for me any issues you
 7    raised, ex parte applications things that the Court
 8    hasn't addressed, which might affect opening statements.
 9    So if we can get the jury selected and we are going to
10    -- be ready for opening statements, so if there is an
11    issue that's outstanding and you think that might have
12    some affect on your opening you would identify that for
13    me.
14              We would probably take a break anyway.
15    After the jury gets selected, the Court would show them
16    where our jury room is located and answer any other
17    questions they may have.  All before opening.
18              So there would be time for you to raise this
19    issue with the Court.
20              My understanding is that the technology
21    question that you raised has been resolved?
22              MR. HUMMEL:  Yes, Your Honor.
23              MR. BERG:  Yes, Your Honor.
24              THE COURT:  Okay.  All right.  Unless
25    there's something else, let's go to lunch.
```

```
1              MR. BERG:  Just a very quick question, in
2    the communication I received from the Court, I think it
3    is -- we would be in session five hours today.  Is that
4    correct, is it or --
5              THE COURT:  Today it will be until we get
6    the jury.  Unless I reached a time that I feel like we
7    just need to let everybody leave.  But then the Court
8    would have sessions with counsel afterwards.
9              So even when we execuse the jury, if there
10   are things that we need to talk about that you are
11   concerned, they may come up tomorrow or something that
12   the Court hasn't addressed, so you may be staying even
13   after the jury leaves.  So typically, I would let the
14   jurors go.  We have changed time now, so I'm always
15   concerned whether or not it is dark outside.  Around
16   5:00, 5:30.  I would usually excuse the jury anyway.
17   But there may be issues that counsel wishes to raise
18   with the Court, and then we would stay later.
19             MR. BERG:  There will issues that affect
20   opening.  Keith -- Mr. Hummel and I worked out a great
21   deal of it, but there are some limiting issues for
22   opening.
23             THE COURT:  It is not going to be very long.
24   But anyway, we will have discussion before you to make
25   your opening.  Generally I don't permit long opening
```

```
1    statements, so we can talk about that too.
2              MR. BERG:  Can you give us an idea how long
3    you do permit?
4              THE COURT:  Usually 15 or 20 minutes.
5    That's it.
6              MR. BERG:  Well, okay.
7              THE COURT:  That's it.
8              MR. BERG:  Thank you, Your Honor.
9              (END OF SIDE BAR.)
10             (OPEN COURT.)
11             THE COURT:  I think we can be in recess.
12             (RECESS TAKEN.)
13             THE CLERK:  Please rise.  This Court's now
14   in recess.
15             (OPEN COURT.)
16             THE COURT:  So we'll continue with the
17   jurors having an opportunity to respond to the
18   questions, the individual voir dire questions.
19             And so I think we are on Juror No. 4.
20             So we'll need to get you the mic.
21             Again, your name.
22             PROSPECTIVE JUROR:  My name is Kevin Van,
23   V-A-N. I live in West Covina.
24             I work for a company named Moog, M-O-O-G.
25   I'm an engineer, for 16 years.  What we do is we make
```

```
 1    spacecraft mechanism.  And I have six people working for
 2    me, so I kind of like supervisor.  I have a BS in
 3    engineering.  Married.  My wife live with me.  She is a
 4    nurse.  I don't have adult kid.
 5              My hobbies are fishing and basketball,
 6    playing basketball.  I am not in the service.  I have
 7    not served any jury.  No on grand jury also.  I have no
 8    info. on this case.  And 16, also no.
 9              THE COURT:  And 16 is:  Have you formed any
10    opinions about the parties or their attorney that would
11    affect your ability to be fair and impartial.
12              And you say no.
13              PROSPECTIVE JUROR:  Correct.
14              THE COURT:  Let me follow up and ask you a
15    few questions.  So those people that you supervise, are
16    you responsible for their performance evaluations?
17              PROSPECTIVE JUROR:  I give input to my boss.
18              THE COURT:  Have you at any time belonged to
19    a group that met, discussed issues and took votes on
20    things?  It may be in the workplace, it may be outside
21    of the workplace.
22              PROSPECTIVE JUROR:  No.
23              THE COURT:  Within the job, do you meet,
24    say, with these people that you supervise?  Or do you
25    meet with others in the workplace to try to make
```

```
 1   decisions about things that are important to the work?
 2              PROSPECTIVE JUROR:  Yes.  I meet with
 3   managers, supervisors.  Same level as mine.  We talk
 4   among ourselves.
 5              THE COURT:  And then you either make a
 6   recommendation to somebody else or you come to a
 7   decision?
 8              PROSPECTIVE JUROR:  That's correct.  I make
 9   the recommendation.
10              THE COURT:  Are you comfortable with that
11   process?
12              PROSPECTIVE JUROR:  Sometimes no; sometimes
13   yes.
14              THE COURT:  Thank you, sir.
15              Next, please.
16              PROSPECTIVE JUROR:  My name is Rosa
17   Hernandez, H-E-R-N-A-N-D-E-Z.  I live now they call it
18   Balboa.  But it was West Van Nuys before.  I am retired.
19   My last --
20              THE COURT:  How long you been retired?
21              PROSPECTIVE JUROR:  A year.  Less than a
22   year.
23              THE COURT:  How many years did you work for
24   the company?
25              PROSPECTIVE JUROR:  Last company, around
```

1  14 years.

2            THE COURT:  What was your job there?

3            PROSPECTIVE JUROR:  I was senior payroll

4  coordinator.

5            THE COURT:  And did you supervise others?

6            PROSPECTIVE JUROR:  No.

7            THE COURT:  You may continue.

8            PROSPECTIVE JUROR:  I have three years of

9  chemical engineering which I didn't finish.  I'm

10  married.  I live with my husband.  My son, he is a

11  paralegal.  I don't know what company that he work for.

12  And I belong to American Payroll Association.  And never

13  been in military.  And I never serve as a juror.  And I

14  never been a member of the grand jury.

15            I don't have any information about this

16  case.  And I don't have any opinion that would affect my

17  ability to be impartial.

18            THE COURT:  And tell me again the

19  organization that you belong to.

20            PROSPECTIVE JUROR:  Well, it is an

21  organization for the -- because now I'm a certified

22  payroll professional.  And usually what it does is you

23  have to have classes to update, you know, for position

24  that I had before.

25            THE COURT:  You are retired now.  Do you

```
 1    still participate with that group or organization?

 2              PROSPECTIVE JUROR:  Yes, I still do.

 3              THE COURT:  So what's your role now?

 4              PROSPECTIVE JUROR:  Nothing.  Just to keep

 5    myself, you know, with knowledge in payroll.  And state

 6    and federal.

 7              THE COURT:  Are you taking classes

 8    currently?

 9              PROSPECTIVE JUROR:  No.

10              Not the last few months.

11              THE COURT:  And do you meet with the former

12    coworkers, those who were still working at the place

13    where you used to work?  Do you get together with them

14    periodically?

15              PROSPECTIVE JUROR:  Actually, I usually see

16    my old boss, because we move from Texas to California

17    and she's retired too.  So kind of keep in contact.

18              THE COURT:  So during the time that you were

19    working before retirement --

20              PROSPECTIVE JUROR:  Yes.

21              THE COURT:  -- did you ever have the

22    experience of having to meet with others say in a group

23    setting, talk about issues that may affect your work and

24    make some decisions that were work related?

25              THE WITNESS:  Well, not to make decisions,
```

```
 1   but to give input.
 2              THE COURT:  Outside the work, were you
 3   involved in a group where you did meet and make
 4   decisions about something, planning a trip or event or
 5   activity of some kind?
 6              THE WITNESS:  No.
 7              THE COURT:  Haven't had that experience?
 8              PROSPECTIVE JUROR:  No.  Only with my
 9   husband to go on vacation.
10              THE COURT:  Your son is a paralegal?
11              PROSPECTIVE JUROR:  Yes.
12              THE COURT:  Does he live here in
13   Los Angeles?
14              PROSPECTIVE JUROR:  Yes, he does.
15              THE COURT:  Works here as well?
16              PROSPECTIVE JUROR:  Yes.
17              THE COURT:  You don't know the name of the
18   company for which he works?
19              PROSPECTIVE JUROR:  No.
20              THE COURT:  Do you think it is a law firm or
21   do you think it is a company?
22              PROSPECTIVE JUROR:  No, no, no.  I know it
23   is not law firm because it is always involved like kind
24   of films entertainment all that.  I think we work
25   with -- I don't know.
```

```
1              THE COURT:  Thank you.
2              PROSPECTIVE JUROR:  Yes.
3              THE COURT:  Next, please.
4              PROSPECTIVE JUROR:  Hi, my name is Raymond
5    Gross, G-R-O-S-S.
6              I live in south Los Angeles.  I am currently
7    retired -- I'm retired from the City of Los Angeles.
8              THE COURT:  How long have you been retired?
9              PROSPECTIVE JUROR:  Six years.  And --
10             THE COURT:  What was your work before
11   retirement?
12             PROSPECTIVE JUROR:  Park and building
13   maintenance.
14             THE COURT:  How long did you work for the
15   city in that capacity?
16             PROSPECTIVE JUROR:  35 years.  Highest level
17   of education, high school.  Marital status, single.
18             THE COURT:  Did you ever supervise others
19   before retirement?
20             PROSPECTIVE JUROR:  Yes.  I was a weekend
21   supervisor.
22             THE COURT:  Home people would you have
23   supervised?
24             PROSPECTIVE JUROR:  Seven.
25             THE COURT:  Were you responsible for their
```

```
 1   performance evaluations?

 2             PROSPECTIVE JUROR:  Yes.

 3             THE COURT:  All right.  You may continue.

 4             PROSPECTIVE JUROR:  I have one adult son at

 5   home.  He is a student.  And he works part-time for

 6   Courtyard Marriott.  And I have an adult daughter who

 7   lives outside the home.  And she is a probation officer

 8   for Clark County Nevada.  My hobbies, I just do a lot of

 9   walking.  No military service.

10             THE COURT:  Any clubs or organizations that

11   you may have been active in the past or present?

12             PROSPECTIVE JUROR:  Yeah, youth football and

13   basketball.

14             THE COURT:  So when you are involved in

15   those activities, are there times or have there been

16   times that decisions had to be made and they were made

17   by the group, you met, you talked about things, you

18   decided things?

19             PROSPECTIVE JUROR:  Yes.  With other coaches

20   and some parents.

21             THE COURT:  And are you comfortable with

22   that process, kind of making a group decision?

23             PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Thank you.  You may continue,

25   sir.
```

1          PROSPECTIVE JUROR:  No military service.  I

2    served as a juror on three cases; one civil and two

3    criminal.

4          THE COURT:  How long ago -- or when was the

5    last service?

6          PROSPECTIVE JUROR:  The last service was

7    2011.

8          THE COURT:  Were you ever one of the jurors

9    who went into the jury room to deliberates?

10          PROSPECTIVE JUROR:  Yes.  On all three

11    cases.

12          THE COURT:  And I don't want to know what

13    the verdict was, but I do want to know, was a verdict

14    reached?

15          PROSPECTIVE JUROR:  On two cases, yes.

16          THE COURT:  Were you ever the foreperson of

17    the jury?

18          PROSPECTIVE JUROR:  No.

19          THE COURT:  And how would you describe that

20    process of serving as a juror?

21          PROSPECTIVE JUROR:  It was an experience,

22    good experience.

23          The grand jury, no.  And --

24          THE COURT:  Know anything about the facts of

25    the case other than what you heard here in the

1    courtroom?

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  Have you formed any opinions

4    about the parties or their attorneys that would affect

5    your ability to be impartial?

6              PROSPECTIVE JUROR:  No.

7              THE COURT:  Thank you, sir.

8              Next.  Juror No. 8.

9              PROSPECTIVE JUROR:  Hi.  My name is Cindy

10   Benavidez, B-E-N-A-V-I-D-E-Z.  Place of residence is San

11   Pedro.

12             Employer's name is Rudys.  I'm a waitress.

13   I've been a waitress for almost a year.  Previous to

14   that, I was a kindergarten teacher.

15             THE COURT:  How long did you serve as a

16   kindergarten teacher?

17             PROSPECTIVE JUROR:  For about ten years.  I

18   have served as the role of a supervisor for about seven

19   to ten employees.

20             THE COURT:  Were you responsible for their

21   evaluations?

22             PROSPECTIVE JUROR:  No, I was not.

23             THE COURT:  So did you have input?

24             PROSPECTIVE JUROR:  I did.  I did have some

25   input.

```
 1                    THE COURT:  Thank you.  You may continue.
 2                    PROSPECTIVE JUROR:  The highest education
 3     level I had was some extension courses in college.  I'm
 4     single.  There is one other adult in my household.
 5                    THE COURT:  What's that adult's occupation?
 6                    PROSPECTIVE JUROR:  Longshoreman.
 7                    THE COURT:  You may continue.
 8                    PROSPECTIVE JUROR:  I do not have any adult
 9     children.  I enjoy, as far as hobbies, gardening, a
10     little bit of cooking.  I do not belong to any
11     organizations or clubs.
12                    THE COURT:  Have you in the past?
13                    PROSPECTIVE JUROR:  I have not, no.
14                    THE COURT:  Have you ever been in involved
15     in a situation where you were called upon to make a
16     decision with a group?  So other people were involved --
17                    PROSPECTIVE JUROR:  Yes.
18                    THE COURT:  -- you discussed things, you had
19     to come to some conclusions?
20                    PROSPECTIVE JUROR:  I believe so, yes.
21                    THE COURT:  Are you comfortable with that
22     process?
23                    PROSPECTIVE JUROR:  Yes.
24                    THE COURT:  All right.  You may continue.
25                    PROSPECTIVE JUROR:  I have not been in the
```

1  military.  I have not served as a juror nor in a grand

2  jury.  And I do not have any facts regarding this case.

3  And no to No. 16 as well.

4          THE COURT:  Thank you.  At this time we do

5  need to seat another juror that will take the place of

6  the juror that was excused, identified as Juror No. 1.

7          So if the clerk would select the name,

8  please.

9          THE CLERK:  Margarita Martinez,

10  M-A-R-T-I-N-E-Z.

11          THE COURT:  So Ms. Martinez, you may remain

12  standing and answer the questions on the individual voir

13  dire form, please.

14          PROSPECTIVE JUROR:  Okay.  My name is

15  Margarita Martinez, M-A-R-T-I-N-E-Z.  My place of

16  residency is Montebello, California.  I am employed

17  Express, Inc.  I am a service associate.

18          THE COURT:  How long have you worked for

19  them?

20          PROSPECTIVE JUROR:  For about three months.

21          THE COURT:  Before that, were you employed?

22          PROSPECTIVE JUROR:  Yes.  I worked at Target

23  for one year.

24          THE COURT:  Before Target?

25          PROSPECTIVE JUROR:  I have been going to

```
1    school.
2              THE COURT:  What were you studying?
3              PROSPECTIVE JUROR:  Right now I'm pursuing a
4    degree in business administration, management.
5              THE COURT:  All right.  You may continue.
6              PROSPECTIVE JUROR:  I have not worked in a
7    supervisor capacity.  My highest level of education, I'm
8    still pursuing my degree in business.  I am single.
9    There are adults.  I live with my parents.  He is -- my
10   dad is self-employed as a construction worker.  My mom
11   is retired.
12             THE COURT:  What was your mom's work before
13   retirement?
14             PROSPECTIVE JUROR:  She used to work at a
15   factor.  I'm not sure what name.
16             My sister also lives with us.  She works at
17   a law firm here in downtown.  I'm not familiar with the
18   name.
19             THE COURT:  Let me just explore that with
20   you.  How long has she worked for the law firm?
21             PROSPECTIVE JUROR:  She has been working
22   there for about two years, I believe.
23             THE COURT:  Do you know what her job is
24   there?
25             PROSPECTIVE JUROR:  She works with
```

```
 1    immigration.  I'm not sure exactly what role she worked

 2    there.

 3                 THE COURT:  You may continue.

 4                 PROSPECTIVE JUROR:  There are no adult

 5    children.  My hobbies would be playing softball.  I have

 6    never been part of a club.  But I have been in an

 7    organization in high school.

 8                 THE COURT:  During those years, did that

 9    organization meet, discuss things and vote on things?

10                 PROSPECTIVE JUROR:  Yes.  Just our public

11    opinion on immigration.

12                 THE COURT:  Are you comfortable with that

13    process?

14                 PROSPECTIVE JUROR:  Yes.

15                 THE COURT:  You did meet with them and have

16    discussions and maybe take a position?

17                 PROSPECTIVE JUROR:  Yes.

18                 THE COURT:  Okay.

19                 PROSPECTIVE JUROR:  I have no military

20    status.  I'm not a member of a jury.  Never been.  I

21    have no other information or facts about this case.  And

22    I have no opinions for number 16.

23                 THE COURT:  I asked general questions of the

24    other members of the panel.  Some of you may have

25    made -- taken notes, and you may have done that.  Is
```

```
 1    there any additional information that you need to share

 2    based upon other questions that were asked?

 3                PROSPECTIVE JUROR:  No additional

 4    information.

 5                THE COURT:  You don't know any of the

 6    parties or you don't recognize --

 7                PROSPECTIVE JUROR:  No.

 8                THE COURT:  -- any of the names of any of

 9    these companies?

10                PROSPECTIVE JUROR:  No.

11                THE COURT:  The witness list that was read

12    to you or maybe persons mentioned during the trial, did

13    you recognize any of those names?

14                PROSPECTIVE JUROR:  Just one of them.  But

15    I'm not familiar with the face.

16                THE COURT:  What was the name that you

17    recognized?

18                PROSPECTIVE JUROR:  I don't remember his

19    name.

20                THE COURT:  Why are you familiar with that

21    person?

22                PROSPECTIVE JUROR:  Because he was -- I seen

23    him once on TV.  But I'm not familiar --

24                THE COURT:  How long ago would you have seen

25    that person on TV?
```

```
 1                    PROSPECTIVE JUROR:  This was probably about
 2     three months ago.
 3                    THE COURT:  Do you remember anything
 4     specific about what you might have seen?
 5                    Was this person an actor in a movie?  Was
 6     the person being interviewed by somebody else?
 7                    PROSPECTIVE JUROR:  It was an actor in a
 8     movie.
 9                    THE COURT:  Do you remember the movie?
10                    PROSPECTIVE JUROR:  No, I do not.
11                    THE COURT:  All right.  Thank you.  Any of
12     the other questions I asked:  Have you ever been a party
13     to a lawsuit?
14                    PROSPECTIVE JUROR:  No, no.
15                    THE COURT:  All right.  Thank you.
16                    So I'll see counsel at sidebar.  You might
17     want to bring with you your proposed voir dire
18     questions, if there are additional questions that you
19     wish the Court to have.
20                    MR. HUMMEL:  Your Honor, there was -- I
21     spoke to the clerk, but -- sorry.  This is Keith Hummel.
22     I wanted to revisit Juror No. 4.  We had just before the
23     break.  He was the fellow who had expressed some fandom
24     of Dan Aykroyd and listened to an interview with Howard
25     Stern.  During the break, it concerned me that he had
```

1    said already that he would be more likely to believe

2    what Mr. Aykroyd would have said.

3              We went back to go back and look at the

4    transcript.  There was actually a rather extensive

5    discussion with Mr. Aykroyd about Crystal Head Vodka,

6    about the creation of the vodka.  He mentioned Mr.

7    Alexander and the bottle.

8              THE COURT:  On TV or radio?

9              MR. HUMMEL:  On the radio.  We would like to

10   move to strike him for cause.

11             THE COURT:  Or do we want to ask him more?

12             MR. HUMMEL:  We can question him more about

13   what we believes, Your Honor, even if he doesn't

14   remember the details of the interview sitting here

15   today, when he starts hearing the evidence, he is going

16   to hear that evidence in the prism of what he heard from

17   that interview.

18             So at this point, I don't think there's much

19   to be done to rehabilitate him.  He already heard fact

20   there was Crystal Head about Mr. Aykroyd's story, about

21   the fact that he has to sue others to enforce others his

22   trademark.  He heard essentially the lawsuit and the

23   fact that there are lawsuits prior to walking in the

24   courtroom.

25             THE COURT:  I don't know if that is the

```
 1   case.  Certainly we need to ask some more additional
 2   questions.  I think what you are reporting, you are
 3   aware of that interview that he said he heard.
 4              MR. HUMMEL:  Yes, Your Honor.
 5              THE COURT:  And you believe based upon what
 6   you know in that interview, they did cover some of these
 7   subjects?
 8              MR. HUMMEL:  Yes, I have a transcript.
 9              THE COURT:  But what you want to know about
10   this juror is did he hear any of that.
11              MR. MILLER:  He did mention this morning
12   that there may have been some discussion about the
13   vodka.
14              THE COURT:  Right.  I think we know.
15              MR. MILLER:  We know he heard it.
16              THE COURT:  Unless plaintiff counsel
17   believes he should be excused, I don't want to spend
18   time on something --
19              MR. BERG:  I'm sorry.  Didn't he express he
20   had an open mind about this, and he couldn't remember?
21   Maybe they said something.
22              THE COURT:  I would be inclined to question
23   him more about what he remembers from that interview.
24              MR. HUMMEL:  Yes, Your Honor.
25              THE COURT:  It might have been a part of the
```

```
1   interview.  It doesn't mean that he remembers it now,

2   and would be considering it in deciding.  I think I just

3   need more information and this is not the time to

4   exercise challenges for cause.  You can mention it any

5   time.

6           MR. HUMMEL:  I apologize.

7           THE COURT:  You would like to have

8   additional questions?

9           You would like to have the Court -- why

10  don't you identify the subject matter of this.

11          MR. HUMMEL:  Sure.  It was an interview that

12  Mr. Aykroyd gave with Howard Stern where Mr. Aykroyd

13  talks about the creation of the vodka, the story about

14  how he created the vodka, about the creation of the

15  bottle to whole hole the Crystal Head Vodka.  I can read

16  at the end Mr. Stern said "great design" a lot of times.

17  You have to sue people, right?  You have a good idea to

18  put in the school.

19          Dan Aykroyd, yeah.

20          Howard Stern, people keep trying to take

21  that idea, don't they?

22          Dan Aykroyd, they do, they do.

23          Quality of our beverage is so far superior

24  than anything they can try to imitate us, we feel very

25  secure.
```

```
 1                    Yeah, yeah, yeah.

 2                    Howard Stern said, I feel very secure for

 3  you.  Yeah.  Yeah.

 4                    THE COURT:  Okay.

 5                    MR. HUMMEL:  People who tend to listen to

 6  Howard Stern are avid fans of Howard Stern's

 7  endorsements, there's a lot of things for people to

 8  listen to him.

 9                    THE COURT:  Maybe a reason for peremptory.

10  Let's ask him again.

11                    MR. BERG:  We have an issue --

12                    THE COURT:  Unless takes --

13                    MR. BERG:  We would before we strike a jury

14  number.

15                    THE COURT:  Four per side.

16                    MR. BERG:  In our objection, we are going to

17  bring case law in this.

18                    THE COURT:  You don't need to case law.

19  Tell me what the position is.

20                    MR. BERG:  There are line submitted joint

21  jury questions we have a binding agreement.

22                    THE COURT:  I'm not sure what you are

23  talking about.

24                    MR. BERG:  Oh, I'm sorry.  Elements and

25  Ms. Brandi are aligned in this case.  And for them to
```

```
 1  get --
 2              THE COURT:  So what?
 3              MR. BERG:  I think it prejudices us.
 4              THE COURT:  Why?  If you have four, they
 5  have four.
 6              MR. BERG:  Oh, total four?
 7              THE COURT:  Total four.
 8              MR. BERG:  Then I withdraw my questions.
 9              MR. MILLER:  Put your case law in your
10  pocket.
11              THE COURT:  Don't spend time we don't need
12  to spend.
13              THE COURT:  Your Honor, would you ask Juror
14  No. 3.  It is Juror No. 3.
15              MR. HUMMEL:  4.
16              THE COURT:  Ask Juror No. 4 to come back.
17              MR. HUMMEL:  May I raise one other thing?
18  Mr. Berg, you might want to listen.  There was another
19  news item that was placed on the Crystal Head Vodka last
20  week which mentioned the lawsuits and which mentioned
21  the reversal and which mentioned explicitly that the
22  reveasal was based on misconduct by an attorney -- it
23  was tequila and prior counsel.  I brought it to
24  Mr. Berg's attention.  He had it immediately taken down.
25  I confirmed it was taken down.
```

```
 1                    THE COURT:  Let's wait a minute.
 2                    MR. HUMMEL:  For us to raise it to see if
 3       they have visited the website.
 4                    THE COURT:  Sir, state your name.
 5                    PROSPECTIVE JUROR:  Josh Massi.
 6                    THE COURT:  I want to ask you about the
 7       interview that you have recalled, and you mentioned that
 8       you do remember an interview between Howard Stern and
 9       Mr. Aykroyd.
10                    Trying to figure out if you know, now that
11       you had a little break, can you remember anything more
12       about that interview, the subjects that might have been
13       directed at that interview that you shared with us
14       before.
15                    PROSPECTIVE JUROR:  No.  I mean, he was
16       talking about his career.  If anyone's heard Howard
17       Stern that's kind of how it goes, you know.
18                    THE COURT:  Do you recall whether there was
19       any discussion about vodka or tequila on that interview?
20                    PROSPECTIVE JUROR:  No, as I mentioned, the
21       only thing I can vaguely remember --
22                    THE COURT:  Keep your voice a little bit
23       soft.
24                    PROSPECTIVE JUROR:  I can vaguely remember
25       is talking about some kind of -- some kind of litigation
```

1    he is involved in.  I don't remember the specifics or

2    anything.

3                    THE COURT:  Do you remember if there was any

4    mention of the bottle description, description of the

5    bottle in which the vodka or alcoholic beverage might

6    have been in?

7                    PROSPECTIVE JUROR:  Not that I can remember.

8                    THE COURT:  Do you remember that there was

9    some recollection to a lawsuit, a lawsuit or lawsuits

10   generally?

11                   PROSPECTIVE JUROR:  I mean, I listen to a

12   lot of his interviews.  So I can't be specific.  I

13   can -- I thought I remembered it.  So when I saw him, I

14   kind of -- it jogged my memory, but I could be wrong.

15                   THE COURT:  Have you observed or listened to

16   any other interviews of Mr. Aykroyd?

17                   PROSPECTIVE JUROR:  Nothing that comes to

18   mind.

19                   THE COURT:  Was there a radio interview or

20   television interview?

21                   PROSPECTIVE JUROR:  Yes, radio.

22                   THE COURT:  Do you remember which station it

23   was on?

24                   PROSPECTIVE JUROR:  Yes, sir.  Howard 100.

25                   THE COURT:  Is that something that you

1    regularly listen to?

2              PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Were you in the car driving at

4    the time?

5              PROSPECTIVE JUROR:  Yes.

6              THE COURT:  And so is that typically

7    entertainment that you would --

8              PROSPECTIVE JUROR:  Uh-huh, listen to.

9              THE COURT:  -- listen to while you are

10   driving?

11             PROSPECTIVE JUROR:  Yep.

12             THE COURT:  Can you tell us anything more

13   about your memory of this interview other than what you

14   already told us?

15             PROSPECTIVE JUROR:  Nothing specific.  Other

16   than, you know, like I said before, he came off, you

17   know, he seemed like a real likable guy.  I really liked

18   him, listening to the interview.  That's all I can

19   really say.

20             THE COURT:  All right.  Any additional

21   questions that either counsel would like for the Court

22   to inquire?

23             MR. HUMMEL:  No, Your Honor.

24             MR. MILLER:  I would ask this, if he heard

25   the entire interview.

```
 1              THE COURT:  Do you know, sir, how long you
 2   listened to the interview?
 3              PROSPECTIVE JUROR:  I don't know.  I
 4   probably listened to pretty close to the whole thing.  I
 5   have a long commute.  So it was probably around
 6   45 minutes to an hour that I was listening.  If I were
 7   to guess.
 8              THE COURT:  So is your commute about
 9   45 minutes to an hour?
10              PROSPECTIVE JUROR:  On a good day.
11              THE COURT:  Do you remember that you turned
12   it on as soon as got into the car?
13              PROSPECTIVE JUROR:  Yes.
14              THE COURT:  Do you remember whether the
15   interview was taking place?
16              PROSPECTIVE JUROR:  I heard the beginning of
17   it, so I can't remember if I listened to the full thing
18   or not.
19              THE COURT:  And do you think you heard the
20   end?
21              PROSPECTIVE JUROR:  I don't know.
22              THE COURT:  All right.  I don't have
23   anything else.  But either counsel have something else?
24              MR. HUMMEL:  Not from me, Your Honor.
25              THE COURT:  No.  All right.  You may go back
```

1    to the jury box.

2              THE COURT:  So, as I said, this is not time

3    for exercise challenges for cause.  But if there is

4    something you want to put on the record now, while it is

5    fresh in your mind about this particular juror, you may

6    do so.

7              MR. HUMMEL:  Yeah, Your Honor, I think that.

8              THE COURT:  Not too loud.

9              MR. HUMMEL:  People telling me to speak up.

10             So, Your Honor, the problem I have here is

11   that, you know, as he is reflecting on this he was

12   remembering more from the first time we spoke to him.

13   And I think, you know, we have a situation where we have

14   the juror in the box who at least has some preknowledge

15   about this case and facts of this case.

16             And as he is going to hear the testimony

17   from Mr. Aykroyd, from Mr. Alexander, and other facts of

18   this case, he is going to remember more of this

19   interview.  And I am concerned that we have a juror

20   that's not going to come to this case with a full clean

21   slate.  He is going to come with some bias, some

22   knowledge of the case; and, therefore, I think we should

23   strike him for cause.

24             THE COURT:  You made your argument.

25   Anything else to be placed on the record?  As I said, we

1    are not exercising challenges of any type at this point.

2    Fresh in your minds, put it on record.

3              MR. MILLER:  I understand.  John Miller.

4    The reason we started talking to Juror No. 4 was because

5    he raised his hand.  And seven out of eight jurors knew

6    who Aykroyd was.  He raised his hand and said, I formed

7    an opinion.

8              THE COURT:  Because the Court made that

9    inquiry.

10             MR. MILLER:  That is how it started.  He

11   listened and specifically championed Mr. Aykroyd's

12   rights to protect his rights of the copyright on the

13   skull we'll argue later.

14             THE COURT:  We may not argue later.  But you

15   put on the record what you recall and the point you

16   wanted to make.  So we are at that point if there are

17   additional questions that either side wishes to have the

18   Court propound to the jurors, identify them.

19             MR. BERG:  Both sides asked for a question.

20             THE COURT:  Where would you find it?

21             MR. BERG:  Look to the defense.  No. 2.

22             THE COURT:   Number 2.

23             MR. BERG:  Yes, ma'am.  Both sides asked a

24   sense of that question.

25             THE COURT:  Just because both sides agreed

```
1    does not mean the Court agrees.
2              MR. BERG:  No, no.  That's right.
3              THE COURT:  I can ask that.
4              MR. BERG:  All right.  And --
5              THE COURT:  So I have both sides proposed
6    voir dire questions with me now.
7              So if there is another question that you
8    would like to have me ask, if you identify it by whether
9    it is plaintiff or defendant and its number.
10             MR. BERG:  Your Honor, counsel, in No. 9 of
11   the plaintiff proposed questions.
12             THE COURT:  Let me get that.
13             MR. BERG:  Yes, ma'am.
14             THE COURT:  If you don't think that is the
15   question that the Court needs to ask, they will be
16   instructed they have to follow these instructions.
17             MR. BERG:  Okay.
18             THE COURT:  Any others?
19             MR. BERG:  None from the plaintiffs.
20             THE COURT:  How about from the defense, any
21   additional questions?
22             MR. HUMMEL:  No, Your Honor.
23             THE COURT:  No.
24             MR. HUMMEL:  Thank you.
25             THE COURT:  I do have one additional
```

1    question.  So we'll go back on the record for that

2    question.

3               And the question is this:  Do any of you

4    find the lawful consumption of alcoholic beverages to be

5    against your personal or moral beliefs?

6               The question is:  Do any of you find the

7    lawful consumption of alcoholic beverages to be against

8    your personal or moral beliefs?

9               If your answer is yes to that question, just

10   raise your hand.  And I can inquire further.

11              We have one juror.  So I will inquire of the

12   juror at sidebar.

13              Anybody else that's on the panel?

14              THE COURT:  It would be Juror No. 5.  If you

15   will come to sidebar, sir.

16              (SIDEBAR.)

17              THE COURT:  Just state your name for the

18   record, please.

19              PROSPECTIVE JUROR:  Kevin Van.

20              THE COURT:  Spell your last name.

21              PROSPECTIVE JUROR:  Van, V-A-N.

22              THE COURT:  Mr. Van, you heard the question.

23   It is against your personal or moral beliefs?

24              PROSPECTIVE JUROR:  I have two uncles that's

25   an alcoholic.

```
 1                    THE COURT:  You have to -- court reporter
 2     can hear you.
 3                    PROSPECTIVE JUROR:  I have two uncle one of
 4     them alcoholic always giving me and my dad trouble.  He
 5     get drunk all the time.  My second is kind of half
 6     alcoholic and same thing, they get home direction and
 7     start talking bad of family.
 8                    I grew up, I don't drink, I don't smoke.  I
 9     grew up alcohol is nothing but bad in my opinion.
10                    THE COURT:  Let me just explore your answer.
11     So the question was the lawful consumption of alcoholic
12     beverages is that against your personal or moral
13     beliefs?
14                    PROSPECTIVE JUROR:  More personal.
15                    THE COURT:  Sorry.
16                    PROSPECTIVE JUROR:  More like personal.
17     That I believe.
18                    THE COURT:  Personal beliefs.
19                    PROSPECTIVE JUROR:  Yes.  So what is that
20     personal belief?
21                    PROSPECTIVE JUROR:  Believe once you consume
22     alcohol you no longer control yourself, and you can
23     get -- you know, do anything.  I witness two of my
24     uncle, you know, what's physical abusive or verbally I
25     seen both in my uncle.
```

```
 1                    THE COURT:  So I think what you're
 2      explaining from your personal experience that you've
 3      seen people --
 4                    PROSPECTIVE JUROR:  Correct.
 5                    THE COURT:  -- that you think have consumed
 6      alcohol or too much alcohol?
 7                    PROSPECTIVE JUROR:  I seen my friend get
 8      drunk over the weekend.  Next thing they are divorced.
 9                    THE COURT:  Let me ask the question this
10      way:  What would be your feeling about people who are
11      responsible, say, for selling alcohol?  So let's just
12      take a liquor store, for instance, that you might have
13      in your neighborhood or any neighborhood.  Do you have
14      any thoughts about --
15                    PROSPECTIVE JUROR:  I did.
16                    THE COURT:  Wait just a moment.  Let me
17      finish.
18                    Do you have negative thoughts about people
19      who own liquor stores?  Let start with ownership first.
20                    PROSPECTIVE JUROR:  I grew up in
21      Los Angeles.
22                    THE COURT:  Wait.  I want to ask you
23      specific question.  So the owner of a liquor store,
24      what's your thought or belief or concern about that
25      person who owns a liquor store?
```

```
 1              PROSPECTIVE JUROR:  I seen kids under age

 2   buy liquor in the liquor store, and you know, obviously

 3   the owner violated the law, you know.  Seen kids go in

 4   and out with liquor.  So -- shouldn't be liquor store

 5   owner.

 6              THE COURT:  That was the next question I was

 7   going to ask.  If you were the person that would have

 8   control over this, would you outlaw liquor stores?

 9              PROSPECTIVE JUROR:  I would enforce more

10   penalty.  I don't know what the current penalties is.

11   But I would be a lot more stricter.

12              THE COURT:  Stricter when you feel they have

13   violated the law, such as selling alcohol to minors; is

14   that what you are referring to?

15              PROSPECTIVE JUROR:  Yes.  Plus that I go to

16   liquor store, I get, you know, chips and all that.  I

17   see like 500 liquor display right in the front.  That

18   bug me too.

19              THE COURT:  What do you mean right in front?

20              PROSPECTIVE JUROR:  Alcohol.  Liquor, the

21   bottle.

22              THE COURT:  The liquor contained in the

23   bottles in the store?

24              PROSPECTIVE JUROR:  Correct.

25              THE COURT:  I think what you are saying you
```

```
 1   may go to the store to buy something else and others
 2   might go to the store to buy something else.
 3                 Wait just a moment.
 4                 When you walk in the store, you are
 5   confronted with these containers of alcoholic beverages?
 6                 PROSPECTIVE JUROR:  First.  Then I saw --
 7                 THE COURT:  Wait.  And so how do you feel
 8   about that?
 9                 PROSPECTIVE JUROR:  I feel it is too much.
10                 THE COURT:  So how would you control that?
11   What would you do if you were in charge and you could
12   control that?  What would you do?
13                 PROSPECTIVE JUROR:  You know, I don't know.
14   You know, it is a freedom country.  I felt like I guess
15   they have the right to do all that.  It is just my
16   personally walk in the whole wall is alcohol.
17                 THE COURT:  Okay.  Let me ask this question:
18   If you heard evidence in this case that some party in
19   the case -- or parties in the case actually are
20   responsible in some way for alcoholic beverages sold in
21   containers, containers may be the issue in this case,
22   not the beverage itself.  Would you be inclined to find
23   in favor or against that person or persons that you
24   thought may be responsible for alcoholic beverages being
25   disseminated?
```

1          PROSPECTIVE JUROR:  Yes.  I would say yes.

2          THE COURT:  So if you heard that they both

3    are engaged in this business, what would your position

4    be there?

5          PROSPECTIVE JUROR:  Who that party to say,

6    take responsibility for that.  In fact it happened right

7    at my house too.  My back house.  They have party and

8    sell unlimited alcohol.  They throw over my fence by

9    10:00 o'clock helicopters and they get busted.  But to

10   me those people should be in jail, in my opinion.

11         THE COURT:  Do you know that this case is

12   not about who sells alcohol or selling alcohol?

13         PROSPECTIVE JUROR:  Correct.

14         THE COURT:  The case is going to be more

15   about the container in which the alcohol is sold.

16         PROSPECTIVE JUROR:  Right.

17         THE COURT:  You understand that?

18         PROSPECTIVE JUROR:  You're correct.

19         THE COURT:  Assuming that's correct, that's

20   what the case is about, how would the sale of alcohol

21   become a part of your considerations in deciding the

22   issues in the case, if the case is not about selling

23   alcohol, but more about the container in which the

24   alcohol is sold?  Can you separate the selling of

25   alcohol from the issues in this case?

```
 1                    PROSPECTIVE JUROR:  If could give you
 2   percentage, probably 15 percent no.
 3                    THE COURT:  Okay.  Thank you, sir.
 4                    Anybody else have any questions that you
 5   would like for me to propound?
 6                    MR. HUMMEL:  Your Honor, Keith Hummel.
 7                    THE COURT:  Uh-huh.
 8                    MR. HUMMEL:  The only question whether
 9   Mr. Van has any particular stronger feelings about
10   certain types of liquor or alcohol than others?
11                    THE COURT:  Okay, I'll ask that.  Sir, is it
12   just the selling or consumption of any alcoholic
13   beverage?  Or is there a specific type of alcohol
14   beverage that you object to?
15                    PROSPECTIVE JUROR:  I don't drink, so
16   honestly I don't know.  But I know my uncle, he drinks
17   Budweiser.  I guess that's beer.  And he drinks liquor.
18   He calls cognac.  I have no idea what it is.
19                    THE COURT:  Let me try to ask that question
20   again.  Is it the fact that alcohol beverages are sold
21   and consumed?  Or is your belief, based on a particular
22   type of alcohol, be it beer or whiskey?
23                    PROSPECTIVE JUROR:  No, I don't think it
24   matter.  Alcohol is alcohol in my opinion.
25                    THE COURT:  Doesn't matter what type?
```

```
 1                    Any other inquiry?
 2                    MS. BIVENS:  Yes, we would like to know how
 3       he would feel about people who manufacture alcohol as
 4       opposed to selling it.  And that's the first question.
 5                    The second one is people who advertise or
 6       market alcohol as opposed to selling it.
 7                    THE COURT:  Okay.  So I'll try to make that
 8       inquiry.  Lots of people involved in maybe the alcohol
 9       business, some may sell alcohol, some may advertise
10       alcohol, some may manufacture alcohol, so you have
11       expressed you don't drink and you're opposed to people
12       who do, if I understand what you are saying.
13                    PROSPECTIVE JUROR:  Correct.
14                    THE COURT:  Is your opposition to those who
15       manufacture it, those who sell it, those who advertise
16       it?  Who are you objecting to?
17                    PROSPECTIVE JUROR:  Tough question.  Like I
18       say, you ask me 15 percent, starting from making it.
19                    THE COURT:  I think I'm not understanding
20       your answer.  Is it all of them --
21                    PROSPECTIVE JUROR:  Yes.
22                    THE COURT:  -- or some of them?
23                    PROSPECTIVE JUROR:  All.  Engineering root
24       cause.  The root cause is making it.  And sale.  It is
25       all the same to me.
```

```
 1              THE COURT:  Thank you.

 2              Any other inquiry?

 3              Sir, you may go back to the box.  Thank you.

 4              So we ask have a discussion fresh in your

 5   mind.  As I said, we are not at the for cause.  But you

 6   may want to put on the record whatever the argument

 7   would be when it is time to exercise peremptory for

 8   cause.

 9              So plaintiff have anything that you wish to

10   put on the record?

11              MR. BERG:  No, Your Honor.  That was

12   interesting to what he had to say.  Changed my --

13              THE COURT:  What is your feeling on him now?

14              MR. BERG:  I would not exercise a challenge.

15              THE COURT:  He is not one that you think

16   should be excused at this point based on his responses?

17              MR. BERG:  I do not.  I do not.

18              THE COURT:  Based on responses given.

19              MR. HUMMEL:  Based on responses, I don't

20   think he strike for cause.

21              THE COURT:  No one feels differently.  Okay.

22              (OPEN COURT.)

23              THE COURT:  We can go back on the record at

24   this time.  I asked all the questions I intend to ask of

25   the jurors at this point.
```

1          And counsel have identified one area of

2     inquiry and asked that question too.  Unless counsel has

3     additional questions that you would like for me to

4     propound of the jury we would be at a point of

5     exercising for cause.

6          Plaintiff have any follow-up questions that

7     you wish me to propound to any of the jurors?

8          And if so, if it is a written question, you

9     can identify it by just giving me the number, and I can

10    probably find it.

11         MR. BERG:  Your Honor, should we bring the

12    question to the bench?

13         THE COURT:  I don't think so.  If you just

14    tell me the number of the question, wherever it appears.

15    You don't have to identify who propounded the question.

16    I can probably find it.

17         MR. BERG:  It was not in our list of

18    proposed questions.

19         THE COURT:  There are additional questions?

20         MR. BERG:  Yes, ma'am.

21         THE COURT:  Okay.  You come to sidebar.

22         (SIDEBAR.)

23         THE COURT:  So I actually thought we were

24    past this point.  So I did ask, are there any follow-up

25    questions, any additional questions.  And so the one

1    that you identified, was that question No. 2 that I did

2    ask.  So I just want to be clear, I have asked all the

3    questions that I intend to ask at this point.  So if

4    there are any additional questions, that's what I want

5    to know.

6              MR. BERG:  Yes.  I had, Your Honor.  First

7    of all, I don't mean to delay the Court.

8              THE COURT:  No.  It is fine.

9              MR. BERG:  Ms. Martinez said she was in an

10   organization in high school.  I just would like to know

11   what the organization is.

12             THE COURT:  Which juror are we talking

13   about?

14             MR. BERG:  The number No. 1.

15             THE COURT:  And you want to know about her

16   high school organization?

17             MR. BERG:  Yes, ma'am.  And she said they --

18             THE COURT:  Okay.

19             MR. BERG:  And she said she is pursuing a

20   business management degree.  I wanted to know a little

21   more about her education, because I didn't hear that

22   there had been anything preceded that.  And I wanted to

23   know about her educational background.

24             THE COURT:  What do you want to know about

25   her education?  She is pursuing a degree in business

```
 1   administration or business management.  You want to know
 2   did she go to high school?
 3               MR. BERG:  Yes, ma'am.  I just want to know
 4   the background.
 5               THE COURT:  Okay.
 6               MR. BERG:  That is all for me.
 7               MR. HUMMEL:  Nothing for me.
 8               THE COURT:  No follow-up?
 9               MR. MILLER:  No.
10               (SIDEBAR CONCLUDED.)
11               THE COURT:  We can go back on the record.
12   So the question that I have is for our last juror to be
13   seated, who is now sitting in the seat of No. 1.  So I
14   would like to explore about what you are pursuing now
15   educationally and what your other education that you
16   already have.
17               So if we can pass the mic down.  My
18   understanding is that you are a student now; is that
19   correct?
20               PROSPECTIVE JUROR:  Yes, that's correct.
21               THE COURT:  And you are studying business
22   administration or business management?
23               PROSPECTIVE JUROR:  Business management.
24               THE COURT:  What degree are you expecting to
25   receive once you complete your studies?
```

1              PROSPECTIVE JUROR:  Right now, bachelor

2    degree.

3              THE COURT:  Okay.  Where are you in

4    relationship to the time you will complete that degree?

5              PROSPECTIVE JUROR:  This is my second year.

6    So about two years and a half to be done.

7              THE COURT:  What is your prior education

8    before pursuing that bachelor's degree?

9              PROSPECTIVE JUROR:  Prior education would be

10   high school diploma.

11             THE COURT:  High school diploma.  And now

12   you are working on a bachelor degree that is a four-year

13   program.  Correct?

14             PROSPECTIVE JUROR:  Yes, that's correct.

15             THE COURT:  And did you indicate that you

16   belonged to an organization in high school.

17             PROSPECTIVE JUROR:  Yes.  It was more like a

18   club.

19             THE COURT:  What kind of club?  Like a

20   social club or academic club?

21             PROSPECTIVE JUROR:  It was a social club.

22             THE COURT:  Did that organization have

23   meetings, discuss things that the group wanted to do,

24   take votes on things?

25             PROSPECTIVE JUROR:  Yes.  It was an

1    organization over immigrants and protesting and so

2    forth.

3                 THE COURT:  That was a high school

4    organization that you participated in, correct?

5                 PROSPECTIVE JUROR:  Yes.

6                 THE COURT:  So how many years have you been

7    out of high school?

8                 PROSPECTIVE JUROR:  This will be two years.

9                 THE COURT:  Do you still belong to that

10   organization or some other organization that's similar?

11                PROSPECTIVE JUROR:  No, not any more.

12                THE COURT:  What was the purpose for that

13   organization, the primary purpose?

14                PROSPECTIVE JUROR:  The primary purpose -- I

15   just wanted to be involved in the organization around

16   that time in high school.

17                THE COURT:  The focus of that organization

18   was immigration?

19                PROSPECTIVE JUROR:  Yes.

20                THE COURT:  Immigration rights?

21                PROSPECTIVE JUROR:  Yes.

22                THE COURT:  You wanted to be a part of that?

23                PROSPECTIVE JUROR:  Yes.

24                THE COURT:  Since high school, you have not

25   joined any club or organization like that one or any

1   other one?

2            PROSPECTIVE JUROR:  No, not anymore.

3            THE COURT:  The Court has made inquiry.  So

4   again I will ask:  Are there any additional questions

5   that either side wishes me to propound to the jury

6   before we exercise peremptories for cause -- or

7   challenges for cause?

8            MS. BIVENS:  No, Your Honor.

9            THE COURT:  Okay.  Thank you.  Now, we are

10  ready for counsel to come to sidebar and have a

11  discussion about which, if any, jurors should be

12  excused.

13            (SIDEBAR.)

14            THE COURT:  For cause plaintiff.

15            MR. BERG:  Pass.

16            THE COURT:  Pass.

17            Defendant.

18            MR. HUMMEL:  Keith Hummel.  Juror No. 4,

19  Mr. Massi, for the reasons previously stated.

20            THE COURT:  Other.

21            MR. MILLER:  I join.

22            THE COURT:  And plaintiff wish to be heard

23  on that?

24            MR. BERG:  Just very briefly, Your Honor.

25  He never changed the belief he could keep an open mind

1    even after you discussed the subject matter.  Just

2    doesn't -- from a radio show he does not remember.  The

3    mention of litigation may not have anything to do

4    anything with this.

5              THE COURT:  I understand that what defense

6    counsel is concerned about.  He may not remember now,

7    but when he listens to testimony and sees the witnesses,

8    he may then remember.

9              So we had this just in the last jury just

10   last two weeks ago, I guess.  It was a juror who thought

11   he recognized the name of somebody but wasn't sure.  And

12   then later he said no, no, it is not the same person.

13   So he was not on the panel.  In the jury box hearing

14   testimony, not deliberating and then decided he actually

15   did recognize a person that he thought he had recognized

16   earlier.  And I ultimately excused him after questioning

17   him because he felt that he could not be fair and

18   impartial.

19             Now that he had seen the individual, he had

20   heard the testimony.

21             So here what we are talking about is some

22   interview that took place, and he is maybe not

23   remembering all the details.  But if that subject matter

24   is likely to come up at trial, and I don't know if it

25   will be, then he is likely to remember more.  So we may

1  find ourselves back here discussing same juror again.  I

2  think that's --

3           MR. HUMMEL:  Exactly.

4           THE COURT:  We don't know what will happen.

5  Maybe counsel, just for this record, how would that --

6  strike that.

7           Would the subject of this interview come up?

8           MR. HUMMEL:  I don't know if the -- Keith

9  Hummel.  I don't know if the subject of the interview

10  would come up or not.  Obviously it is something that

11  Mr. Aykroyd can be cross-examined with.  It may well be

12  a subject of testimony and Mr. Aykroyd takes the stand.

13           You've already seen that PROSPECTIVE JUROR

14  started to remember more about this interview from the

15  first time you spoke to him, from the second time he

16  spoke to him.  I am concerned that he already has said

17  that he would be predisposed the first time we spoke to

18  him to believe something that Mr. Aykroyd may have said.

19           I am concerned of a cumulative effect of

20  fandom of Mr. Aykroyd and products may have influenced

21  his mind so he doesn't approach this case with a clean

22  slate, which is frankly prejudicial to my client.

23           THE COURT:  I vaguely remember this

24  witnesses testimony last time I don't remember him being

25  on the stand very long.  I don't remember the area of

1    examination.  Would it be plaintiff counsel calling him

2    as a witness.

3              MR. BERG:  I'll call Mr. Aykroyd.

4              THE COURT:  Yes.  What was the subject just

5    generally of your examination of him.

6              MR. BERG:  The general subject matter would

7    be the work that was put into promoting and bringing

8    Crystal Head Vodka to the market and promoting it.

9    There would be no specific reference anything of said in

10   the interview and anyone could cross-examine on him

11   helpful to us.

12             THE COURT:  How long do you estimate your

13   examination of him will be?

14             MR. BERG:  We are putting him on toward the

15   end.  So I think it will be shortened by -- because the

16   story will have been told.  Maybe -- I don't want to be

17   held to this -- 40 minutes to an hour, maybe.  But I do

18   believe it will be very much circumscribed by all the

19   testimony before.

20             THE COURT:  So will his testimony -- that he

21   is responsible in any way for the creation of the varied

22   design?

23             MR. BERG:  He contributed to the design.

24   John Alexander, our first witness, is the artist whose

25   idea it was he contributed by saying, Let's make it this

```
 1   way or that way.  But the -- his real contribution was
 2   business, business acumen, finding the right
 3   manufacturer.
 4                THE COURT:  Anything else?
 5                MR. HUMMEL:  May I be heard?
 6                THE COURT:  Yes.
 7                MR. HUMMEL:  Dan Aykroyd is the driving
 8   force behind Crystal Head Vodka and Cloverfield
 9   (phonetic).
10                Mr. Berg just said that he doubts anybody
11   would cross-examine Mr. Aykroyd with that interview
12   because it would be helpful to them.  That's precisely
13   my concern.  That's precisely my concern that this
14   witness has already heard the interview that Mr. Berg
15   says helps him.  And as we go through this trial, he is
16   going to remember more and more of it.  He already has a
17   positive attitude toward Mr. Aykroyd.  He is already
18   inclined to believe him.  That's precisely the prejudice
19   I would like to void.  Strike the witness.
20                THE COURT:  Court does not find good cause
21   has been shown so we will not excuse him for cause.
22                We are now at the point you would be using
23   the peremptory.  So the plaintiffs has the first
24   peremptory.  There are four peremptory per side.  The
25   defendant will exercise there jointly.  So that's where
```

1   we are.

2              MR. BERG:  Your Honor, if I may inquire.

3   May we have few moments to consider?

4              THE COURT:  Sure.  We will sit here and do

5   that.

6              MR. BERG:  Thank you.

7              May we approach, Your Honor?

8              THE COURT:  I don't think you need to

9   approach the lectern to --

10             MR. BERG:  To hand in our strike.

11             THE COURT:  Why don't you approach.

12             MR. BERG:  Do you --

13             THE COURT:  Wait just a minute.

14             MR. BERG:  Oh, sorry.

15             THE COURT:  So I will let you come back up

16  because I'm not sure we are on the same page.

17             So one method is that all the peremptories

18  would be exercised at the same time, and counsel would

19  write down the persons that you want excused.  And they

20  would be excused.  And evidently that's what plaintiff's

21  counsel thinks we are doing.  My thought was you would

22  each exercise them individually.

23             MR. HUMMEL:  Yes.

24             THE COURT:  I don't mind doing it either

25  way.  But my thought was that we would just do it

```
1    individually.  So you won't be exercising all your

2    strikes now.  You would exercise one, and then to the

3    defense, and back to the plaintiff, and back to the

4    defense.

5              MR. HUMMEL:  That's what I understand Your

6    Honor to be doing.

7              MR. BERG:  David Berg.  I understood -- I

8    didn't know we would do that aloud or --

9              THE COURT:  You just do it aloud and step to

10   the lectern and ask the Court to thank and excuse

11   whoever you wish to excuse.  But it is just one.

12             MR. BERG:  Thank you.

13              (OPEN COURT.)

14             THE COURT:  Plaintiff's counsel.

15             MR. BERG:  David Berg for plaintiff strikes

16   No. 8.

17             THE COURT:  Ms. Benavidez.  Yes.  The Court

18   thanks you for being willing to serve as a juror in the

19   case.  That means you are being excused from this case.

20             I will still instruct you to report to the

21   jury room for further instructions.  Thank you for being

22   willing to serve.

23             THE COURT:  At this time, the clerk would

24   call the name of another prospective juror in the seat

25   of No. 8.
```

```
 1              THE CLERK:  Bruce Gordon, G-O-R-D-O-N.
 2              THE COURT:  Mr. Gordon, we are going to get
 3    the mic to you.  And why don't we start with the
 4    individual voir dire questions so that you answer those
 5    first.
 6              PROSPECTIVE JUROR:  Yes, Bruce Gordon.
 7    G-O-R-D-O-N.
 8              Place of residence, Summerland, California.
 9    My employer's name is Continental Advance Light Art
10    Solutions.  I am a software engineer.  Before that I was
11    in school.  I did work for UC Santa Cruz for about
12    six months as a grader before that, during that time.  I
13    have not served in a supervisor capacity.  My highest
14    level of formal education is a bachelor's degree.  My
15    marital status is single.  There is one other adult in
16    my household.  He is a self-employed writer.
17              I have no adult children.  I have in the
18    past been part of a community service organization
19    called the Rotaract Club of Santa Cruz County.  We did
20    meet to have votes, usually on the way to direct our
21    community service.  I do not have any military service,
22    I have never served as a juror in a criminal or civil
23    case, nor as a member of a grand jury.  I don't have any
24    information on the case nor any formed opinions on the
25    case.
```

```
 1              THE COURT:  So your degree is in what?

 2              PROSPECTIVE JUROR:  Computer engineering.

 3              THE COURT:  And, sir, I asked some general

 4   questions just of all the prospective jurors.  Were

 5   there any questions that I asked on which you might have

 6   written down, taken a note or something?  Or as you

 7   remember those questions, you need to share your answers

 8   so that we can better understand?

 9              PROSPECTIVE JUROR:  As far as familiarity

10   with names, I have the same familiarity with the name

11   Dan Aykroyd has been intimated by other members of the

12   panel.  I know the name in the capacity of a known

13   actor.  And I have no specific recollection of it.  I

14   don't even remember how long it's been since I heard the

15   name.  And I have no formed opinions.

16              THE COURT:  So if he should testify as a

17   witness in the case, and if it is your responsibility as

18   a juror to judge credibility of witnesses; in other

19   words, whether I believe what the witness said, whether

20   I disbelieve, I believe some of it, I don't believe all

21   of it, could you use the same standard, whatever

22   standard you choose, to reflect on belief or not belief

23   and how much weight it should be given to their

24   testimony, use that same standard for all the witnesses

25   who testify regardless of their occupations?
```

```
1              PROSPECTIVE JUROR:  Yes.

2              THE COURT:  And, sir, have you ever been a

3    party to a lawsuit?

4              PROSPECTIVE JUROR:  No.

5              THE COURT:  And I assume that you don't

6    recognize the entities that have been identified as

7    being the plaintiffs and defendants in the case?

8              PROSPECTIVE JUROR:  No.

9              THE COURT:  Nor the defendant, Kim Brandi?

10             PROSPECTIVE JUROR:  No.

11             THE COURT:  And you didn't recognize any of

12   the lawyers as anyone that you might know?

13             PROSPECTIVE JUROR:  No.

14             THE COURT:  Do you have any belief or

15   opinion on the consummation of alcohol?

16             PROSPECTIVE JUROR:  No.

17             THE COURT:  Or the manufacture of alcohol or

18   the selling of alcohol?

19             PROSPECTIVE JUROR:  No.

20             THE COURT:  Have you ever purchased or

21   consumed Crystal Head Vodka or KAH Tequila?

22             PROSPECTIVE JUROR:  No.

23             THE COURT:  Have you seen those displayed in

24   any store that you can recall?

25             PROSPECTIVE JUROR:  No.
```

1                    THE COURT:  Have you or anyone that you know

2     owned a registered or unregistered trademark or trade

3     dress?

4                    PROSPECTIVE JUROR:  No.

5                    THE COURT:  Have you or anyone you know ever

6     been accused of an infringement?

7                    PROSPECTIVE JUROR:  No, not that I'm aware

8     of.

9                    THE COURT:  All right.  Thank you, sir.

10                    Any additional follow-up questions that

11     plaintiffs' counsel would like to have the Court

12     propound to Juror No. 8?

13                    MR. BERG:  No further questions from us.

14                    THE COURT:  Any additional questions

15     defendants' have?

16                    MR. HUMMEL:  No, Your Honor.

17                    MR. MILLER:  No, Your Honor.

18                    THE COURT:  All right.  The peremptory is

19     with the defense.

20                    MR. HUMMEL:  Keith Hummel for Elements also

21     speaking on behalf of Mr. Miller for Ms. Brandi.  We

22     would ask the Court to excuse and thank Mr. Massi, Juror

23     No. 4.

24                    THE COURT:  Mr. Massi, thank you for being

25     willing to serve in the case.  You are excused at this

1    time.   And you will report back to the jury office.

2              The clerk will select a name of a

3    prospective juror to be seated.

4              THE CLERK:  Andrea Gomez Oxman, G-O-M-E-Z,

5    O-X-M-A-N.

6              PROSPECTIVE JUROR:  My name is Andrea Gomez

7    Oxman.

8              THE COURT:  Good afternoon.

9              PROSPECTIVE JUROR:  Good afternoon.

10             THE COURT:  So we'll start with the

11   individual voir dire questions.

12             PROSPECTIVE JUROR:  So Andrea Gomez Oxman.

13   Last name is G-O-M-E-Z, O-X-M-A-N.  Not hyphenated.

14   Place of residence, Manhattan Beach.  My employer name

15   is the law office Maureen Ashad in Torrance.  I'm an

16   attorney.  I have been working as an attorney for the

17   last ten years.

18             Prior to my current position, I was the

19   managing attorney at the Rocky Mountain Immigrant

20   Advocacy network.  It's a nonprofit organization that

21   works with low income immigrants, in Colorado.

22             I have worked in a supervisory capacity.

23   I'm currently a supervisor.  I have been a supervisor

24   probably for the last five years.  I have a JD, a double

25   bachelor's in science.  And I started a master's.  I'm

```
 1   married.  I have no adult -- oh, yeah.  There is an
 2   adult residing in my household, my husband, although he
 3   travels a lot.  He is the CEO of a technology start-up
 4   that sells wine.
 5            I belong to the American Immigration Lawyers
 6   Association, the Los Angeles County Bar Association, the
 7   Parent Teacher Organization at my daughter's school.  I
 8   have not served in the military.  I have not served as a
 9   juror, although I would love to.  I've never been a
10   member of the grand jury.  I don't have -- well,
11   actually, I do have some information.  Some of the other
12   questions that you asked.
13            THE COURT:  So let me stop you for a moment.
14   Now are you responding to the question that says, Other
15   than what you were told here today, do you have any
16   information about the facts of this case?
17            Is your answer yes?
18            PROSPECTIVE JUROR:  No.
19            THE COURT:  And then the last question, have
20   you formed any opinions about the parties or the
21   attorneys that would affect your ability to be
22   impartial?
23            PROSPECTIVE JUROR:  I have not.
24            THE COURT:  There's additional information
25   that you wish to share with the Court just based upon
```

```
 1    other questions that were asked?

 2                  PROSPECTIVE JUROR:  Yes.

 3                  THE COURT:  Why don't you share.

 4                  PROSPECTIVE JUROR:  Yes.  With regards to

 5    whether we recognize Dan Aykroyd, I do.  But preferably

 6    I don't remember even the last movie that I have

 7    watched.  Like I said, my husband is in the food and

 8    wine industry.  And he sells wine.  So we do have quite

 9    a few trade dresses, both personally as well as -- that

10    are part of the company.  And I'm on the licensing

11    through the ABC Board.

12                  I own skull vodka.  In fact, it's on my

13    shelf right now.  It was given to me as a gift.

14                  We have been a party to the lawsuit, both

15    regarding trade infringement as well as other lawsuits.

16    And as an attorney, I represent clients in Court.  I was

17    a criminal defense attorney, and now I'm an immigration

18    attorney primarily doing removal defense.

19                  Yes, work in the alcohol industry.  I was a

20    bartender in college.  My husband owns a wine company.

21    I have lots of -- I have a few friends who own wine and

22    spirits company as well.

23                  And with regard to the ability to serve as

24    impartial juror, I think the dates that I mentioned

25    would cause a hardship for me.  I am also a mom, and the
```

```
 1   dates that you mentioned cause a problem for me because
 2   it is days that I don't have child care.
 3               THE COURT:  Why don't we take the last one.
 4   So I'm going to ask you to come to sidebar so I can
 5   explore that question with you before asking any other
 6   questions.
 7               (SIDEBAR.)
 8               THE COURT:  Just state your name for the
 9   record.  The mic is here so the court reporter can hear
10   you.
11               PROSPECTIVE JUROR:  Andrea Gomez Oxman.
12               THE COURT:  So the time commitment to the
13   case, how old are your children?  How many children?
14               PROSPECTIVE JUROR:  Sure.  I have two
15   children.  One is just over a year old, a year and two
16   weeks.  And a seven year old.  And I only work part-time
17   two days a week.  And the rest of the time I am the
18   primary caretaker.  And during the time that you said
19   Court will be in session, my husband will be away most
20   of the week next week, so --
21               THE COURT:  So is it next week that causes
22   you concern that we would be in session Tuesday,
23   Thursday, and Friday?  So those are days that your
24   husband will not be --
25               PROSPECTIVE JUROR:  He'll be out of town
```

```
 1   most of the week next week.  He is out of town today,
 2   but I do have child care today.  I don't have child care
 3   tomorrow.
 4              THE COURT:  Who assists you with the
 5   children when your husband is not in town and you are
 6   working.
 7              PROSPECTIVE JUROR:  I have a nanny.
 8              THE COURT:  And the nanny only comes --
 9              PROSPECTIVE JUROR:  She works for another
10   family so she comes on Tuesdays and Thursdays.  From
11   time to time I can find a babysitter, but I have not
12   planned that far in advance.
13              THE COURT:  So you wouldn't have child care
14   to cover you tomorrow if you were selected for this?
15              PROSPECTIVE JUROR:  Possibly.  I would have
16   to find child care.
17              THE COURT:  Is that something that you think
18   you could do and willing to do, that is find child care?
19              PROSPECTIVE JUROR:  It would be difficult.
20              THE COURT:  Have you been in this position
21   on previous occasions when you were working, your
22   husband was away, and you had to provide for the
23   children, how did you manage that?
24              PROSPECTIVE JUROR:  I just went back two
25   weeks ago when my son turned one.  I was on maternity
```

```
 1    leave for a year.  Before that managing attorney
 2    position where my job was flexible and maternity on
 3    that.  So trying to balance.
 4              THE COURT:  As I understand it, you do not
 5    have a regular person that assists you in the home with
 6    the children other than the nanny that is shared with
 7    another family?
 8              PROSPECTIVE JUROR:  Correct.
 9              THE COURT:  Certain days the nanny is at
10    your house and other days with the other family?
11              PROSPECTIVE JUROR:  Correct.
12              THE COURT:  And tomorrow, Wednesday, one of
13    the days she would not be available to you?
14              PROSPECTIVE JUROR:  Correct.
15              THE COURT:  And then if we looked next week,
16    schedule days next week, that the nanny wouldn't be
17    available to you, your husband is not available, and you
18    don't have child care?
19              PROSPECTIVE JUROR:  Correct.
20              THE COURT:  I would be willing to agree to
21    excuse PROSPECTIVE JUROR.
22              MR. HUMMEL:  I agree, Your Honor.
23              MR. BERG:  I agree, Your Honor.
24              THE COURT:  Thank you for being willing.
25              (SIDEBAR CONCLUDED.)
```

```
 1                  (OPEN COURT.)

 2                  THE COURT:  So the Court would thank and

 3       excuse our present Juror No. 4.

 4                  I would ask the clerk to select a name to be

 5       seated in that seat.

 6                  THE CLERK:  Luke Vincent Sisak, S-I-S-A-K.

 7                  THE COURT:  So, sir, if you will stand and

 8       answer the individual board there are questions first.

 9                  PROSPECTIVE JUROR:  Good afternoon, Your

10       Honor.  My name is Luke Sisak, S-I-S-A-K.  I live in

11       West Los Angeles.  I'm employed by the Los Angeles

12       County District Attorney's Office.  I am a deputy DA.

13       I've worked there for ten years, though I do on a varied

14       part-time basis also teach self-defense.  I supervise

15       law clerks semester to semester.  I do have significant

16       input on that ultimate decisionmaking on hiring them or

17       not.  I have a JD.  I actually went to school with the

18       last juror, oddly enough.

19                  I live alone.  I am unmarried and always

20       have been.  No kids.  My only current organization is

21       the Association of Deputy District Attorneys, which is

22       my union.  There are meetings.  I do not go, though I do

23       vote.  There have been others in the past but none I'm

24       currently a member of.  Never served in the military or

25       on any kind of jury.  No further information.  And have
```

```
 1    formed no opinions.

 2              THE COURT:  How about the general questions

 3    that the Court asked earlier?  Are there any of them

 4    that you need to answer them so we can understand your

 5    response?

 6              PROSPECTIVE JUROR:  Yes, Your Honor, thank

 7    you.  I do recognize Mr. Aykroyd.  Probably have heard

 8    his name in the last nine months.  It won't affect my

 9    ability to be fair.  I personally have been party to a

10    lawsuit as has my mother in a separate suit.  Hers was

11    regarding family inheriting a very small amount of real

12    estate and fighting over it.  I don't know exactly how

13    it turned out.  It was in Rhode Island.  That's all I

14    know.  Mine was a federal case here in this district for

15    vindictive prosecution.  I was a personally name

16    defendant as well as the elected DA, the elected

17    sheriff, Commissioner Antonovich, alleging a variety of

18    conspiracy to essentially frame a defendant who I tried.

19    The case was dismissed.  And his conviction was

20    eventually upheld on both state and federal appeals.  I

21    have definitely drunk Crystal Head Vodka.  I believe I

22    have purchased it.  And I've certainly seen it

23    displayed.  I have seen tequila in a bottle shaped like

24    a skull displayed.  I don't know the name of it so it

25    may or may not be the tequila at issue.
```

```
 1              I during college and law school was a
 2  bartender.  That's at least ten years in the past.  I
 3  have a number of friends who are or were bartenders or
 4  servers, and a friend who for years worked for Miller
 5  Brewing in supply chain.  But he has been out of that
 6  for a couple years now.  And I believe that is it.
 7              THE COURT:  All right.  Thank you, sir.
 8              PROSPECTIVE JUROR:  Thank you, Your Honor.
 9              THE COURT:  I will first ask if there are
10  follow-up questions that either side would like to have
11  the Court propound to the jury?
12              Plaintiff have any additional questions?
13              MR. BERG:  No, Your Honor.
14              THE COURT:  Defense?  Any additional
15  inquiries?
16              MR. HUMMEL:  Not for Elements.
17              THE COURT:  The peremptory is with the
18  plaintiff.
19              MR. BERG:  Your Honor, for the plaintiff we
20  would strike No. 7, Mr. Gross, and thank him for his
21  service.
22              THE COURT:  Sir, you are excused at this
23  time.  Thank you for being willing to serve.  You will
24  go back to the jury office and receive instruction
25  there.
```

```
1                    PROSPECTIVE JUROR:  Okay.

2                    THE COURT:  And the clerk will select the

3     name of another juror to replace Juror No. 7.

4                    THE CLERK:  Lugo Viramontes,

5     V-I-R-A-M-O-N-T-E-S.

6                    PROSPECTIVE JUROR:  Good afternoon.

7                    THE COURT:  Good afternoon.

8                    PROSPECTIVE JUROR:  My name is Lugo

9     Viramontes.  Last name V-I-R-A-M-O-N-T-E-S.  I live in

10    Montebello, California.  My employer's name is

11    Residential Bank Corp.  And I am self-employed as a

12    mortgage consultant.

13                   THE COURT:  How long have you worked for

14    the bank?

15                   PROSPECTIVE JUROR:  I been there for

16    11 months and --

17                   THE COURT:  And before that?

18                   PROSPECTIVE JUROR:  Before that, I was with

19    another company named Jim Mortgage.  And I was them for

20    over six years.

21                   THE COURT:  What are your duties and

22    responsibilities when you were working for the mortgage

23    company?

24                   PROSPECTIVE JUROR:  We are self-employed, so

25    we are just, you know, helping clients refinance or
```

1  purchase homes.

2          THE COURT:  You may continue, sir.

3          PROSPECTIVE JUROR:  Highest level of

4  education is high school.  I'm single, marital status.

5  As far as adults, I do have an adult child.  But he goes

6  to school.  He goes to East Los Angeles College.

7          THE COURT:  And does he reside in your

8  household?

9          PROSPECTIVE JUROR:  Yes, he does.

10          THE COURT:  All right.  You may continue.

11          PROSPECTIVE JUROR:  As far as hobbies,

12  basketball.  No club or organizations that I'm currently

13  in.  Not in the military service or ever been there.

14  And not have served in the criminal or civil case.  And

15  have not been a member of a grand jury.  And 15 and 16,

16  no.

17          THE COURT:  And, sir, the general question

18  that I ask of the other members of panel, are there any

19  of those questions that you need to share in your

20  answer?

21          PROSPECTIVE JUROR:  I did -- unfortunately,

22  I didn't write anything down.

23          THE COURT:  Do you remember any of them that

24  you thought at the time that you heard it --

25          PROSPECTIVE JUROR:  No.

```
 1              THE COURT:  -- that's a question that I'd
 2   have to answer yes?
 3              PROSPECTIVE JUROR:  No.
 4              THE COURT:  Have you ever been a party to a
 5   lawsuit?
 6              PROSPECTIVE JUROR:  No.
 7              THE COURT:  I didn't ask this question, but
 8   I will now:  Have you ever had your deposition taken?
 9              And so all the jurors can understand, a
10   deposition is a process where one might be questioned
11   about something of which they may be knowledgeable where
12   there is a lawsuit pending.  It is done outside of
13   court.  There is a court reporter generally present.
14   The person is under oath.  And sometimes that testimony
15   may be used at trial.
16              So with that explanation, have you ever had
17   your deposition taken?
18              PROSPECTIVE JUROR:  Yes.
19              THE COURT:  Sir, approximately when and on
20   how many occasions?
21              PROSPECTIVE JUROR:  It was one occasion
22   about 15 years ago.
23              THE COURT:  Were you examined, if you can
24   recall, by attorneys on both sides of the case?
25              PROSPECTIVE JUROR:  Yes.
```

1          THE COURT:  And how would you describe just

2     the conduct or the demeanor of those lawyers,

3     professional, unprofessional; what did you think?

4          PROSPECTIVE JUROR:  They were professional.

5          THE COURT:  Sir, I asked some question about

6     copyright -- strike that.

7          Trademarks.  Do you know anyone who owns a

8     registered or unregistered trademark or trade dress?

9          PROSPECTIVE JUROR:  No.

10          THE COURT:  Have you ever worked in the

11     alcoholic industry?

12          PROSPECTIVE JUROR:  No, I haven't.

13          THE COURT:  Have you ever seen Crystal Head

14     Vodka or KAH Tequila displayed in a restaurant or bar,

15     to your knowledge?

16          PROSPECTIVE JUROR:  I might have.  But I did

17     not recognize it as a skull head vodka or tequila.

18     Probably seen it once or twice.

19          THE COURT:  Have you ever purchased or

20     consumed Crystal Head Vodka or KAH Tequila?

21          PROSPECTIVE JUROR:  No, I haven't.

22          THE COURT:  Do you recognize any of the

23     names of those who may testify as witnesses in the case

24     or they may be mentioned during the course of the trial?

25          PROSPECTIVE JUROR:  Yes.  Just Dan Aykroyd.

1          THE COURT:  So why do you recognize that

2     name?

3          PROSPECTIVE JUROR:  From movies that I seen

4     him in.

5          THE COURT:  And can you remember now the

6     last movie that you might have seen him in?  If you

7     can't, that's fine.  Do you remember the last --

8          PROSPECTIVE JUROR:  Yeah.  Ghost Busters,

9     top of my head.

10          THE COURT:  The fact that he is an

11     entertainer or you may have seen him in a movie, do you

12     believe that would influence your decision here just

13     because of his occupation as you make decisions based

14     upon the evidence that's presented?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  And the companies, the plaintiff

17     and defendant in this lawsuit, did you recognize those

18     names as any entities that you might know or individuals

19     that you might know?

20          PROSPECTIVE JUROR:  No, I do not.

21          THE COURT:  And the lawyers in the case,

22     they introduced themselves.  You recognize any of them

23     as someone that you might know?

24          PROSPECTIVE JUROR:  No.

25          THE COURT:  Do you feel you could be fair

```
 1   and impartial to both sides if you were selected to
 2   serve as a juror in the case?
 3               PROSPECTIVE JUROR:  Yes.
 4               THE COURT:  All right.  Thank you, sir.
 5               Are there follow-up questions that
 6   plaintiffs' counsel would like me to ask?
 7               MS. BIVENS:  Yes, Your Honor.
 8               THE COURT:  What is the question, if you can
 9   identify it by number?  Or if you just want to tell me
10   what it is.
11               MS. BIVENS:  I'll just tell you.  If juror
12   number --
13               THE COURT:  I'm only talking about the last
14   juror to be seated.
15               MS. BIVENS:  7.
16               THE COURT:  Juror No. 7.
17               MS. BIVENS:  Has he ever supervised anybody,
18   and does he have any certifications related to his
19   current employment?
20               THE COURT:  Sir, have you ever worked in the
21   capacity of a supervisor?
22               PROSPECTIVE JUROR:  Yes, I have.  Probably
23   just managed five people.  Not in the last five years.
24               THE COURT:  And when you managed those five
25   people, how long ago was that?
```

```
 1                    PROSPECTIVE JUROR:  Over five years ago.

 2                    THE COURT:  And what was your role in

 3     managing?  Did you have input into their performance

 4     evaluations?

 5                    PROSPECTIVE JUROR:  Yes.

 6                    THE COURT:  Did you have any input before

 7     they were hired?

 8                    PROSPECTIVE JUROR:  No.

 9                    THE COURT:  Did you participate in any of

10     the interviews?

11                    PROSPECTIVE JUROR:  No.

12                    THE COURT:  And if you felt that they should

13     no longer continue working in that capacity, if that

14     situation ever occurred, did you have any input there?

15                    PROSPECTIVE JUROR:  No.

16                    THE COURT:  Sir, do you hold any

17     certifications or licenses based on the type of work

18     that you do now or that you have done in the past?

19                    PROSPECTIVE JUROR:  No.

20                    THE COURT:  So I understand that you are

21     assisting people in trying to buy homes?

22                    PROSPECTIVE JUROR:  Yes.

23                    THE COURT:  So do you describe yourself as

24     an agent or broker or --

25                    PROSPECTIVE JUROR:  No.  I work for
```

```
 1   Residential Bank Corp. who they hold the license.  And I
 2   just work under them.
 3               THE COURT:  Could you just explain typically
 4   what would happen?  Someone comes in, they want
 5   financing so they can buy a home.
 6               PROSPECTIVE JUROR:  We take an application,
 7   and we process the loan internally.
 8               THE COURT:  What would your role be?  Would
 9   you be interviewing that person?
10               PROSPECTIVE JUROR:  Yes, interviewing.
11               THE COURT:  Would you be looking over the
12   financial information that's been provided?
13               PROSPECTIVE JUROR:  Yes.
14               THE COURT:  Thank you, sir.
15               Any additional questions either from the
16   plaintiff or the defendant?
17               MR. HUMMEL:  Not from our side, Your Honor.
18               THE COURT:  Plaintiff had something more?
19               MS. BIVENS:  Yes, Your Honor.  I would like
20   to know if his employment involved any federal
21   regulations or is it governed by any rules?
22               THE COURT:  So, sir, the company that you
23   work for, does that company hold some type of a license?
24               PROSPECTIVE JUROR:  Oh, yes, they did.  They
25   have an MLS license.
```

1          THE COURT:  And what does that stand for?

2          PROSPECTIVE JUROR:  For National

3    Association -- I can't think about it right now.  I'm

4    nervous.

5          THE COURT:  Are there any regulations that

6    you are aware of that you have to consider when you are

7    either passing upon whether one qualifies for a loan --

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  -- or assisting them in any

10   other way?

11         PROSPECTIVE JUROR:  Yes.

12         THE COURT:  What are these regulations that

13   you are usually aware of and implementing as you assist?

14         PROSPECTIVE JUROR:  You know, ethics and

15   rules, you know, whatever.  A lot of rules and

16   regulations, ethics.  And I can't think of any right

17   now.

18         THE COURT:  But are those regulations things

19   that you have a copy of on your desk?

20         PROSPECTIVE JUROR:  Yes.

21         THE COURT:  You may consult them from time

22   to time?

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  I think you said you do assist

25   in evaluating financial background of persons who wish

```
1   to buy homes?

2             PROSPECTIVE JUROR:  Yes.

3             THE COURT:  Are there forms that you fill

4   out for that purpose?

5             PROSPECTIVE JUROR:  Yes, there are.

6             THE COURT:  Do those forms identify some

7   regulations that you have to consider when you are

8   filling out the forms?

9             PROSPECTIVE JUROR:  Yes.

10            THE COURT:  And then you would consult those

11  regulations?

12            PROSPECTIVE JUROR:  Yes.

13            THE COURT:  Thank you, sir.

14            Is there more inquiry?

15            MS. BIVENS:  No, Your Honor.

16            THE COURT:  Anything from the defense?

17            MR. HUMMEL:  No, I don't have any.

18            THE COURT:  You may be seated, sir.

19            So the peremptory is with the defense.

20            I should ask:  Both sides pass for cause as

21  to this juror?  Pass for cause.

22            MR. BERG:  No challenge for cause.

23            THE COURT:  Pass for cause.

24            MR. HUMMEL:  Pass for cause.

25            THE COURT:  Pass for cause, thank you.  So
```

```
 1   peremptory is with the defense.
 2              MR. HUMMEL:  Keith Hummel, Your Honor.  The
 3   defense side would ask that you excuse and thank Juror
 4   No. 3, Mr. Vasandani.
 5              THE COURT:  You are excused at this time.
 6   We appreciate your willingness to serve.  And you'll
 7   report back to the jury office for further instruction.
 8              THE CLERK:  Richard Allen Flier, F-L-I-E-R.
 9              THE COURT:  Sir, would you state your name
10   for the record.
11              PROSPECTIVE JUROR:  Hi.  It's Richard Allen
12   Flier, Jr.
13              THE COURT:  If you could answer the
14   questions on the individual voir dire.
15              PROSPECTIVE JUROR:  Of course.  Gave you my
16   name.  I live in Hollywood.  My employer's name is
17   Digital Domain.  And that's a large visual effect
18   company for feature film and commercials.  I handle
19   business development and have handled commercials there.
20   I have been there for the last six years.  So working
21   with -- I manage people.  Supervisor capacity.  Small
22   teams, probably around five to ten.  I have a BA.  I am
23   married.  There is one other adult besides me in my
24   house, that is my wife.  No adult children.  I do not
25   belong to any organizations.  No military service.  I
```

```
1    have served as a juror, not on a grand jury.  And --
2    yeah.
3              THE COURT:  Let's me follow up a bit.  So
4    does your spouse work outside the home?
5              PROSPECTIVE JUROR:  She is not working
6    currently.
7              THE COURT:  And on how many occasions have
8    you served as a juror.
9              PROSPECTIVE JUROR:  Just one.
10             THE COURT:  How long ago was it?
11             PROSPECTIVE JUROR:  I would say it was about
12   eight years ago.
13             THE COURT:  Were you one of the deliberating
14   jurors?
15             PROSPECTIVE JUROR:  I was.
16             THE COURT:  Did the jury reach a verdict?
17             PROSPECTIVE JUROR:  They did.
18             THE COURT:  What was the nature of the case
19   if you can recall?
20             PROSPECTIVE JUROR:  It was a drunk driving
21   case.
22             THE COURT:  How would you describe the
23   experience of being a juror?
24             PROSPECTIVE JUROR:  Part of it was
25   rewarding.  The case was a confusing and difficult case.
```

1   And in some cases unnecessary.  But we did it.

2          THE COURT:  Sir, the general questions that

3   I ask of members of the panel, are there any that you

4   need to share your answers so we could better

5   understand?

6          PROSPECTIVE JUROR:  Aside from knowing one

7   of the names, Dan Aykroyd, which will not affect my

8   opinions, I am familiar with both brands, and their

9   packaging systems, and know what they look like.  I own

10  the tequila.  Couple times over now.  Other than that,

11  nothing.

12         THE COURT:  Sir, how is it that you are

13  familiar with the packaging of both brands?

14         PROSPECTIVE JUROR:  I have seen them many

15  times when purchasing liquor or at retail.

16         THE COURT:  And have you seen any of the

17  television, radio coverage, movies in which the witness

18  that you've identified that you have at least heard that

19  name might have been a part of?

20         PROSPECTIVE JUROR:  Yes, of course.

21         THE COURT:  And what can you recall in terms

22  of the last time that you either heard or saw something

23  about this witness?

24         PROSPECTIVE JUROR:  A couple weeks ago I

25  introduced my children to the Ghost Busters in a

1   marathon session.  Very rewarding.

2                  THE COURT:  How much time?

3                  PROSPECTIVE JUROR:  They watched it twice

4   each.  I can only handle twice -- I mean one each.

5                  THE COURT:  And the fact that you watched

6   that movie, and saw someone who may be a witness in the

7   case, are you concerned at all that that may influence

8   your ability to decide --

9                  PROSPECTIVE JUROR:  I don't think so.

10                 THE COURT:  -- any of the issues?

11                 PROSPECTIVE JUROR:  I don't think so.

12                 THE COURT:  Do you think you could be fair

13  and impartial to both sides?

14                 PROSPECTIVE JUROR:  I think so.

15                 THE COURT:  Do you think you could use the

16  same standard in evaluating the testimony of all

17  witnesses, whatever that standard may be for you,

18  regardless of their occupations?

19                 PROSPECTIVE JUROR:  Yes.

20                 THE COURT:  All right.  Thank you.

21                 PROSPECTIVE JUROR:  I do have a professional

22  hardship in schedule -- a potential hardship that I

23  would like to discuss.

24                 THE COURT:  Why don't you come so we can

25  discuss that.

```
 1                    (SIDEBAR.)

 2              THE COURT:  Use the mic.  So just state your

 3  name.

 4              PROSPECTIVE JUROR:  Richard A. Flier.

 5              THE COURT:  Sir, tell me about the hardship.

 6              PROSPECTIVE JUROR:  The hardship is my

 7  company does not compensate for jury duty.  So during

 8  the schedule that you listed I will not be compensated

 9  for any days that I miss.

10              THE COURT:  So they don't compensate for any

11  amount?

12              PROSPECTIVE JUROR:  Zero.  Not one.

13              THE COURT:  Any other hardship?

14              PROSPECTIVE JUROR:  The schedule -- how you

15  describe it might run over to three, four, weeks.

16              THE COURT:  I don't think I mentioned week.

17  I said it could go -- it could go into April.  But that

18  would probably be because the jury is still

19  deliberating.

20              PROSPECTIVE JUROR:  Understood.

21              THE COURT:  That's just something that's

22  possible.

23              PROSPECTIVE JUROR:  My job is mostly out of

24  country in Asia.  I have to be in Asia in April.  First

25  week of April.
```

```
 1                    THE COURT:  Leaving.

 2                    PROSPECTIVE JUROR:  April 2nd.

 3                    THE COURT:  How long would you be gone?

 4                    PROSPECTIVE JUROR:  Potentially a full

 5    month.

 6                    THE COURT:  All right.  Anything else?

 7                    PROSPECTIVE JUROR:  That's it.

 8                    THE COURT:  Okay.  Unless there is some

 9    inquiry.

10                    MR. CASTORIA:  No inquiry.

11                    THE COURT:  Plaintiff counsel have

12    something?

13                    MR. BERG:  Just a couple questions.

14                    PROSPECTIVE JUROR:  Sure.

15                    THE COURT:  Direct those to the clerk.

16                    MR. BERG:  Of course.  He mentioned --

17    Mr. Flier mentioned that he would be in Asia during

18    April.  Does he know the exact dates?  And has it been

19    preplanned?

20                    THE COURT:  I think he said he expects to

21    travel on April 2nd.

22                    PROSPECTIVE JUROR:  1st or 2nd.

23                    THE COURT:  And it is a business trip?

24                    PROSPECTIVE JUROR:  My company is based out

25    of Hong Kong.  And most of my work is out of Asia.  I
```

```
1    can --

2               THE COURT:  Except the fact that it is

3    business related, and is it something that you could

4    change?

5               PROSPECTIVE JUROR:  It is out of my control,

6    the dates.  It is for an event.

7               THE COURT:  If this jury was still

8    deliberating still on April 1st, you would be at that

9    point asking that the case be continued until May or

10   that you be excused?

11              PROSPECTIVE JUROR:  Correct.

12              THE COURT:  Thank you.  You may go back to

13   the box.

14              THE COURT:  I wouldn't excuse for the

15   hardship because we have too many jurors, even law

16   firms, that don't pay for jury service or restrict the

17   amount of pay.  I just don't know if it is realistic to

18   think that we would be either presenting evidence in

19   April or if we complete the case by the end of March.

20   Is it realistic to think the jury could even be

21   deliberating in April?  Just wondering if you had any

22   concerns about that?

23              MR. HUMMEL:  I don't know.  I can't conceive

24   of us doing anything in April in this case.  That would

25   be remarkable.
```

```
 1                  THE COURT:  Okay.
 2                  MR. MILLER:  I agree with that.
 3                  THE COURT:  Sorry.
 4                  MR. BERG:  We agree with that.
 5                  THE COURT:  Yes.  I usually try to give more
 6     time than less time because I just don't want to have
 7     jurors asking to leave.  So okay.  I won't excuse him at
 8     this point.
 9                  MR. HUMMEL:  Okay.  Your Honor.
10                  MS. BIVENS:  Thank you, Your Honor.
11                  (SIDEBAR CONCLUDED.)
12                  THE COURT:  So we can go back on the record.
13                  I don't know if that was the air
14     conditioning going off or just the noise that I heard.
15     But at least it is indication to me that it is time to
16     have a short break.
17                  So we'll be in recess just for about
18     15 minutes.
19                  Just so you can stretch your legs, take care
20     of personal needs, and then report back to the courtroom
21     no later than 4:15.
22                  Jurors are excused for 15 minutes.
23                  THE CLERK:  Please rise.  This Court is in
24     recess.
25                  THE COURT:  Just before counsel take your
```

```
 1   break, just wanted to address, you each have two

 2   additional challenges per side.  I am hoping that we

 3   will get the jury selected today.  If we accomplish

 4   that, I don't know that we would have time for opening

 5   statements today.  But if not, we would do that first

 6   thing tomorrow morning.

 7            But this morning when we -- or around noon

 8   when we recessed for lunch there was some question as to

 9   how long you would have.

10            So if I did not impose a time limit, then

11   this is the time to do so, if necessary.  So I would

12   just ask both sides:  How much time was plaintiff hoping

13   to have for your opening?

14            MR. BERG:  What I was hoping to have, Your

15   Honor?

16            THE COURT:  Yes.

17            MR. BERG:  The 20 minutes you said we could

18   have.

19            THE COURT:  For the defense, do you think

20   you could make your opening within 20 minutes?

21            MR. HUMMEL:  I believe that collectively for

22   both of us, I think we can do 20 minutes.

23            THE COURT:  Do you have any preference -- so

24   if the jury returns and we're able to administer the

25   oath, we have our panel.  There would be time left for
```

```
 1    the opening.  But any preference you prefer doing it
 2    first thing tomorrow morning or does it matter?  We can
 3    do it either way.
 4                 MR. BERG:  I would prefer to do it tomorrow
 5    morning when we are fresh and they are too, Your Honor.
 6                 MR. MILLER:  They've been here since 7:00.
 7    They've put in nine hours already.
 8                 THE COURT:  It is likely that what we will
 9    do is get the jury, admonish them, excuse them, and then
10    I will discuss with counsel any outstanding matters that
11    need to be addressed.
12                 So take your break now so we have about
13    15 minutes.
14                 (BREAK TAKEN.)
15
16
17
18
19
20
21
22
23
24
25
```